# EXHIBIT A

<u>LICENSE AGREEMENT</u>

This Agreement is effective February 1, 1975, by and between Norman H. Nie and C. Hadlai Hull (hereinafter referred to as LICENSOR) and SPSS, Inc., an Illinois corporation (hereinafter referred to as LICENSEE).

WHEREAS, LICENSOR has adopted and used the words SPSS and STATISTICAL PACKAGE FOR THE SOCIAL SCIENCES as trademarks and service marks for computer programs and computer programming services; and

WHEREAS, LICENSOR is the owner of the marks SPSS and STATISTICAL PACKAGE FOR THE SOCIAL SCIENCES; and

WHEREAS, LICENSEE is desirous of using said marks for computer programs and computer programming services, and for its trade name;

NOW, THEREFORE, in consideration of one dollar paid by LICENSEE to LICENSOR and of the mutual covenants contained herein, and other valuable considerations, it is agreed as follows:

1.  LICENSOR hereby grants to LICENSEE the exclusive right and license to use the words SPSS and STATISTICAL PACKAGE FOR THE SOCIAL SCIENCES, hereinafter referred to as the LICENSED MARKS, as trademarks and service marks for computer programs and computer programming services throughout the entire world, including the right to grant non-exclusive sublicenses, subject to the terms of this Agreement.

2.   LICENSOR hereby grants to LICENSEE the exclusive right and license to use any of the LICENSED MARKS as a trade name for the business of producing and distributing computer programs and computer programming services and hereby ratifies the adoption of LICENSEE's trade name, subject to the terms of this Agreement.

3.   The nature of each of the goods and services on which the LICENSED MARKS are to be used by LICENSEE or any sublicensees shall have the approval of the LICENSOR.

4.   LICENSOR will furnish or direct the LICENSEE and any sublicensee in the standards of quality for each of the goods and services on which the LICENSED MARKS are marked, and LICENSEE agrees to meet standards of quality so established by the LICENSOR and to insure that any sublicensee meets the same standards of quality.  The LICENSOR shall be the sole judge of whether or not the LICENSEE and any sublicensee has met or is meeting the standards of quality so established.

5.   LICENSEE agrees to allow LICENSOR's authorized agent at any and all times during regular business hours to enter the LICENSEE's premises where the goods and services are being manufactured and carried out to inspect the same, and to secure similar provisions from any sublicensee.

6.   LICENSEE shall obtain the approval of LICENSOR with respect to all signs, labels, packaging material, advertising or the like bearing the LICENSED MARKS prior to the use thereof, and shall secure similar provisions from any sublicensee.

7.   LICENSEE agrees not to use a mark identical with or confusingly similar to the LICENSED MARKS except as permitted by the license herein granted, and to secure similar provisions from a sublicensee.

8.   If LICENSEE violates any provisions of this Agreement, LICENSOR may terminate the exclusive license granted herein, or if any sublicensee violates any provisions of this Agreement, LICENSOR may terminate, through LICENSEE if desired, the non-exclusive sublicense granted that sublicensee, by giving notice in writing to the LICENSEE of the violation. In the event that LICENSEE or its sublicensees do not correct or eliminate the violation within ninety (90) days from the date of receipt of said notice, the exclusive license or the non-exclusive sublicense respectively shall terminate at the end of said ninety (90) days.

9.   This Agreement shall terminate automatically, at the option of LICENSOR, in the event of receivership or bankruptcy of the LICENSEE.  LICENSEE shall secure a similar provision from any of its sublicensees.

10.   In the event of termination of this Agreement, LICENSEE agrees to discontinue immediately all use of the LICENSED MARKS and to deliver to LICENSOR, free of any charge, all signs, labels, packaging material, advertising or the like bearing the LICENSED MARKS that are then in the possession of LICENSEE, and LICENSEE shall secure similar provisions from

any sublicensee. LICENSEE further agrees to discontinue the use or any confusingly similar use of the LICENSED MARKS in LICENSEE's trade name.

11. LICENSEE agrees that nothing herein shall give the LICENSEE or any sublicensee any right, title or interest in or to the LICENSED MARKS (except the right to use the LICENSED MARKS in accordance with this Agreement), that the LICENSED MARKS are the sole property of the LICENSOR, and that any and all uses by the LICENSEE and the sublicensees of the LICENSED MARKS shall inure to the benefit of the LICENSOR. This paragraph shall survive the termination of this Agreement.

12. This Agreement is personal and may not be assigned by LICENSEE without the written consent of the LICENSOR.

13. This Agreement shall be construed in accordance with the laws of the state of Illinois.

IN WITNESS WHEREOF, the parties have signed this Agreement on the date(s) indicated below.

Date  30 Sept  76        _____
                         NORMAN H. NIE

Date  30 SEP 76          _____
                         C. HADLAI HULL

                         SPSS, INC.

Date  30 Sept 76    By   _____

ATTEST:
_____

# EXHIBIT B

SPSS, Inc.
Special Meeting of the Board of Directors
September 14, 1977

A special meeting of the Board of Directors of
SPSS, Inc. was held in Suite 1234 at 111 East Wacker Drive,
Chicago, Illinois on September 14, 1977 at 12:00 noon.
Notice of the meeting was waived by all of the directors
as evidenced by the signatures to these minutes, thereby
approving same.

Present were all of the directors; namely,
Norman H. Nie, C. Hadlai Hull, and Patrick Bova.

The salaries of the officers of the corporation
were approved and ratified by the directors, as follows:

RESOLVED, the President, Norman H. Nie,
shall receive a salary of $15,000 annually
beginning September 27, 1975.  In addition,
the President shall receive the sum of $5,000
for July and August 1975, the sum of $12,168
for October 1975 through June 1976, the sum of
$6,000 for July and August 1976, the sum of
$12,550 for October 1976 through June 1977,
and the sum of $6,000 for July and August 1977.
In addition, the President shall receive $5,000
for teaching seminars for the corporation in
April 1976.  Payment of any portion thereof
may be made to the University of Chicago and/or
the National Opinion Research Center to reimburse
the same for corresponding compensation paid
directly to the President based on release time
for activities concerning the corporation.

FURTHER RESOLVED, that the Vice President,
C. Hadlai Hull, shall receive as salary $45,000
annually beginning July 5, 1976.

FURTHER RESOLVED, that the Treasurer,
A. Wylie Crawford, shall receive as salary
$20,000 annually beginning August 18, 1975
through January 31, 1976, $22,000 annually
beginning February 1, 1976 through March 26,
1977, and $23,450 annually beginning March 27,
1977.

To provide additional compensation for employees
other than the president and vice president, a bonus system
was approved, and the following resolution was unanimously
adopted:

SPSS 001295

Page 2
Special Meeting of the Board of Directors
September 14, 1977

RESOLVED, that the President and Vice
President of the corporation shall have the
authority to authorize bonus payments for
other employees, including other officers
of the corporation, in accordance with their
performance as determined by the President
and Vice President.

Also approved was the following resolution:

RESOLVED, that the corporation shall pay
one-half of the tuition of the lab school at the
University of Chicago for children of the Vice
President.

The Chairman also stated that new outside legal
counsel to represent the corporation had been appointed
and that the registered agent and registered office of the
corporation should be changed to correspond with the new
outside legal counsel, and the following resolution was
unanimously adopted:

RESOLVED, that the appointment of the
initial registered agent of the corporation is
revoked and the corporation hereby appoints
Ronald L. Wanke as the new registered agent of
the corporation and changes the registered office
of the corporation to be 20 North Wacker Drive,
Chicago, Illinois, and the appropriate officers
and directors are authorized to execute any
necessary Certificate of Change of Registered
Agent and Registered Office of the State of Illinois.

The Chairman discussed a proposed License Agreement
effective February 1, 1975 between Norman H. Nie and
C. Hadlai Hull and SPSS, Inc. concerning the use of certain
trademarks, which License Agreement is attached as Exhibit A.
Upon motion duly made and seconded, the following resolution
was unanimously adopted:

RESOLVED, that the License Agreement effective
February 1, 1975 concerning trademarks, attached as
Exhibit A, is hereby approved and ratified and the
officers of the corporation are authorized to
execute the License Agreement on behalf of the
corporation and the corporation hereby ratifies
prior execution of the License Agreement on behalf
of the corporation.

Page 3
Special Meeting of the Board of Directors
September 14, 1977


        There being no other or further business to come
before the meeting, on motion duly made and seconded the
meeting was adjourned.


                        APPROVED:


                        _____
                                NORMAN H. NIE

                        _____
                                C. HADLAI HULL

                        _____
                                PATRICK BOVA

SPSS 001297

Case 1:08-cv-00066    Document 34-2    Filed 05/27/2008    Page 10 of 24
Exhibit A to Minutes of September 14,
1977 Special Meeting of the Board of
Directors of SPSS, Inc.

## LICENSE AGREEMENT

This Agreement is effective February 1, 1975, by and between Norman H. Nie and C. Hadlai Hull (hereinafter referred to as LICENSOR) and SPSS, Inc., an Illinois corporation (hereinafter referred to as LICENSEE).

WHEREAS, LICENSOR has adopted and used the words SPSS and STATISTICAL PACKAGE FOR THE SOCIAL SCIENCES as trademarks and service marks for computer programs and computer programming services; and

WHEREAS, LICENSOR is the owner of the marks SPSS and STATISTICAL PACKAGE FOR THE SOCIAL SCIENCES; and

WHEREAS, LICENSEE is desirous of using said marks for computer programs and computer programming services, and for its trade name;

NOW, THEREFORE, in consideration of one dollar paid by LICENSEE to LICENSOR and of the mutual covenants contained herein, and other valuable considerations, it is agreed as follows:

1. LICENSOR hereby grants to LICENSEE the exclusive right and license to use the words SPSS and STATISTICAL PACKAGE FOR THE SOCIAL SCIENCES, hereinafter referred to as the LICENSED MARKS, as trademarks and service marks for computer programs and computer programming services throughout the entire world, including the right to grant non-exclusive sublicenses, subject to the terms of this Agreement.

2.   LICENSOR hereby grants to LICENSEE the exclusive right and license to use any of the LICENSED MARKS as a trade name for the business of producing and distributing computer programs and computer programming services and hereby ratifies the adoption of LICENSEE's trade name, subject to the terms of this Agreement.

3.   The nature of each of the goods and services on which the LICENSED MARKS are to be used by LICENSEE or any sublicensees shall have the approval of the LICENSOR.

4.   LICENSOR will furnish or direct the LICENSEE and any sublicensee in the standards of quality for each of the goods and services on which the LICENSED MARKS are marked, and LICENSEE agrees to meet standards of quality so established by the LICENSOR and to insure that any sublicensee meets the same standards of quality.  The LICENSOR shall be the sole judge of whether or not the LICENSEE and any sublicensee has met or is meeting the standards of quality so established.

5.   LICENSEE agrees to allow LICENSOR's authorized agent at any and all times during regular business hours to enter the LICENSEE's premises where the goods and services are being manufactured and carried out to inspect the same, and to secure similar provisions from any sublicensee.

6.   LICENSEE shall obtain the approval of LICENSOR with respect to all signs, labels, packaging material, advertising or the like bearing the LICENSED MARKS prior to the use thereof, and shall secure similar provisions from any sublicensee.

7.   LICENSEE agrees not to use a mark identical with or confusingly similar to the LICENSED MARKS except as permitted by the license herein granted, and to secure similar provisions from a sublicensee.

8.   If LICENSEE violates any provisions of this Agreement, LICENSOR may terminate the exclusive license granted herein, or if any sublicensee violates any provisions of this Agreement, LICENSOR may terminate, through LICENSEE if desired, the non-exclusive sublicense granted that sublicensee, by giving notice in writing to the LICENSEE of the violation. In the event that LICENSEE or its sublicensees do not correct or eliminate the violation within ninety (90) days from the date of receipt of said notice, the exclusive license or the non-exclusive sublicense respectively shall terminate at the end of said ninety (90) days.

9.   This Agreement shall terminate automatically, at the option of LICENSOR, in the event of receivership or bankruptcy of the LICENSEE.  LICENSEE shall secure a similar provision from any of its sublicensees.

10.  In the event of termination of this Agreement, LICENSEE agrees to discontinue immediately all use of the LICENSED MARKS and to deliver to LICENSOR, free of any charge, all signs, labels, packaging material, advertising or the like bearing the LICENSED MARKS that are then in the possession of LICENSEE, and LICENSEE shall secure similar provisions from

any sublicensee.  LICENSEE further agrees to discontinue the use or any confusingly similar use of the LICENSED MARKS in LICENSEE's trade name.

11.  LICENSEE agrees that nothing herein shall give the LICENSEE or any sublicensee any right, title or interest in or to the LICENSED MARKS (except the right to use the LICENSED MARKS in accordance with this Agreement), that the LICENSED MARKS are the sole property of the LICENSOR, and that any and all uses by the LICENSEE and the sublicensees of the LICENSED MARKS shall inure to the benefit of the LICENSOR.  This paragraph shall survive the termination of this Agreement.

12.  This Agreement is personal and may not be assigned by LICENSEE without the written consent of the LICENSOR.

13.  This Agreement shall be construed in accordance with the laws of the state of Illinois.

IN WITNESS WHEREOF, the parties have signed this Agreement on the date(s) indicated below.

Date  30 Sept 76

_____
NORMAN H. NIE

Date  30 SEP 76

_____
C. HADLAI HULL

SPSS, INC.

Date  30 Sept 76

By _____
Patri Born

ATTEST,

_____

# EXHIBIT C

Int. Cl.: 9

Prior U.S. Cl.: 21

# United States Patent Office

Reg. No. 1,089,094
Registered Apr. 11, 1978

## TRADEMARK
Principal Register

## SPSS

Norman H. Nie and C. Hadlai Hull (joint applicants)
6030 S. Ellis Ave.
Chicago, Ill.  60637

For: PRE-RECORDED COMPUTER PROGRAMS IN THE FORM OF MACHINE-READABLE MAGNETIC TAPES AND RELATED DOCUMENTATION, in CLASS 9 (U.S. CL. 21).

First use at least as early as June 1968; in commerce at least as early as July 1968.

Ser. No. 102,463, filed Oct. 7, 1976.

J. D. SAMS, Examiner

# EXHIBIT D

Int. Cl.: 9

Prior U.S. Cls.: 21, 23, 26, 36 and 38

## United States Patent and Trademark Office

Reg. No. 2,864,243
Registered July 20, 2004

## TRADEMARK
### PRINCIPAL REGISTER

## SPSS

HULL, C. HADLAI (UNITED STATES INDIVI-DUAL)
233 S. WACKER DRIVE 11TH FLOOR
CHICAGO, IL 60611 AND
NIE, NORMAN H. (UNITED STATES INDIVIDUAL)
233 S. WACKER DRIVE 11TH FLOOR
CHICAGO, IL 60611

FOR: COMPUTER SOFTWARE RECORDED ON CD-ROM USED FOR STATISTICAL AND DATA ANALYSIS AND SCIENTIFIC GRAPHING OF STA-TISTICS AND INSTRUCTIONAL MANUALS SOLD AS A UNIT, IN CLASS 9 (U.S. CLS. 21, 23, 26, 36 AND 38).

FIRST USE 6-0-1968; IN COMMERCE 6-0-1968.

SER. NO. 76-472,826, FILED 12-6-2002.

HEATHER THOMPSON, EXAMINING ATTORNEY

# EXHIBIT E

## ASSIGNMENT

THIS ASSIGNMENT (this "Assignment") is made this 8Th day of MAY 2008 between C. Hadlai Hull ("Assignor") and Norman H. Nie ("Assignee").

WHEREAS, Assignor is the joint owner of all right, title, and interest in and to the U.S. trademark registration and marks: SPSS (Registration No. 2,864,243), SPSS (Registration No. Registration No. 1,089,094), STATISTICAL PACKAGE FOR THE SOCIAL SCIENCES (Common Law) (collectively, the "Marks");

WHEREAS, Assignor is a party to a License Agreement effective February 1, 1975 between Assignor, Assignee and SPSS Inc., a copy of which is attached as Exhibit A to this Assignment (the "License Agreement");

WHEREAS, Assignor desires to assign to Assignee, and Assignee desires to acquire from Assignor, all of Assignor's right, title and interest in, to and under the Marks, together with the goodwill of the business associated with the Marks, and all of Assignor's rights and obligations under the License Agreement;

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Assignor does hereby sell, assign, transfer and set over to Assignee, his successors, legal representatives and assigns, all of Assignor's right, title and interest in, to and under the Marks together with the goodwill of the business associated with the Marks and registrations thereof, including any rights under common law, and including the Marks alone or in combination with other words, figures, designs or indicia, including any right, title and interest as service marks, trademarks and trade names and all common law rights connected therewith, together with the goodwill of the business with respect to which the Marks or any such other marks or names have been used and/or registered and all claims, proceeds and

causes of action relating to past, present or future infringement of the Marks or said other marks or names.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Assignor does hereby sell, assign, transfer and set over to Assignee, his successors, legal representatives and assigns, all of Assignor's rights and obligations under the License Agreement.

Assignor hereby requests the Commissioner of Patents and Trademarks to record Assignee, as assignee and owner of any and all of Assignor's rights in the Marks and to issue to Assignee any and all trademark registrations and service mark registrations resulting from any trademark applications and service mark applications, or any renewals of said registrations.

Assignor agrees to execute and deliver at a future date, for no additional consideration, any additional documents that Assignee reasonably determines are required and that Assignor can reasonably provide, subject to reimbursement of Assignor's out-of-pocket expenses, to reflect Assignee's ownership of the Marks anywhere in the world.

Assignor will provide reasonable assistance, subject to reimbursement of Assignor's out-of-pocket expenses, in obtaining or providing any further documents which may be required to confirm chain of title thereto.

In consideration of the execution and delivery of this Assignment by the Assignor, the Assignee hereby agrees to indemnify, exonerate and hold the Assignor free and harmless from and against any and all actions, causes of action, suits, losses, liabilities, damages and expenses, including attorneys' fees and expenses (collectively, the "Indemnified Liabilities"), incurred by the Assignor as a result of, or arising out of, or relating to any one or more of the following: (i) the execution, delivery, performance or enforcement of this Assignment (except with respect to

2

Assignee's enforcement of Assignor's obligations under this Assignment); (ii) any claims against Assignor in the matter of *SPSS Inc. v. Norman H. Nie and C. Hadlai Hull*, Case No. 08 C 66, pending in the United States District Court for the Northern District of Illinois ("08 C 66 Case"); and (iii) any claims against Assignor in any litigation other than the 08 C 66 Case arising out of or related to the Marks or the License Agreement.

This Assignment may be signed in counterparts, each of which shall be deemed an original, but together shall constitute a single instrument.

C. Hadlai Hull ("Assignor")

Dated: ___12 May___, 2008

Norman H. Nie ("Assignee")

Dated: _____, 2008

3

# EXHIBIT F

## **TRADEMARK ASSIGNMENT**

THIS TRADEMARK ASSIGNMENT is dated as of this _____ day of May, 2007.

WHEREAS, Norman H. Nie and C. Hadlai Hull, of 233 S. Wacker Drive, Chicago, Illinois 60606 (hereinafter collectively "Assignors") are the owners of the trademark SPSS, registered in, among other places, the United States Patent & Trademark Office and bearing Registration No. 2,864,243 (hereinafter "Mark I"), the validity of which Mark I and its registration have been maintained by or through Assignors and which Mark I is presently valid and subsisting, and of the trademark STATISTICAL PACKAGE FOR THE SOCIAL SCIENCES , which mark is currently not registered in the U.S. Patent & Trademark Office (hereinafter "Mark II) (Mark I and Mark II are sometimes collectively referred to herein as the "Marks");

WHEREAS, Assignors have licensed the Marks exclusively to SPSS Inc., a Delaware corporation, of 233 S. Wacker Drive, Chicago, Illinois 60606 (hereinafter "Assignee") pursuant to that certain License Agreement dates as of February 1, 1975;

WHEREAS, Assignee has been using the Marks in a manner and to the extent authorized and approved by Assignor as a licensee of Assignor continually since the date of the License Agreement;

WHEREAS, Assignee now wishes to acquire full ownership of the Marks and the Registration of Mark I, together with the good will symbolized and generated through use of the Marks, and

WHEREAS, Assignors desire to sell the Marks, the Registration of Mark I and the good will generated through use of the Marks, to Assignees for the consideration recited herein,

NOW, THEREFORE, for the sum of $10.00 in hand paid, and for other good and valuable consideration, the receipt and sufficiency of which are hereby mutually acknowledged,

Assignor hereby sells, assigns and transfers to Assignee all right, title and interest in and to the Marks, together with the good will of the business symbolized and generated by the Marks, and the Registration of Mark I.  This Assignment is binding upon Assignors, their agents, successors, assigns, estates and all other persons or entities that may in any manner assert any claim of interest of any kind in or to the Marks or either of them through Assignors.

_____

Norman H. Nie

_____

C. Hadlai Hull

- 2 -