IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SPSS Inc., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case No. 08 C 66 |
| Norman H. Nie and C. Hadlai Hull, | ) |
| | ) Judge John W. Darrah |
| Defendants. | ) |
| | ) Magistrate Judge Arlander Keys |
| _____ | ) |
| | ) |
| Norman H. Nie, | ) |
| | ) |
| Counterplaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| SPSS, Inc., | ) |
| | ) |
| Counterdefendant. | ) |

**PLAINTIFF/COUNTERDEFENDANT SPSS INC.'S
MOTION FOR PROTECTIVE ORDER**

Pursuant to Fed. R. Civ. P. 26(c), plaintiff/counterdefendant SPSS Inc. ("SPSS"), by and through its attorneys, hereby moves this Court for entry of a protective order limiting the scope of additional Rule 30(b)(6) depositions of SPSS by defendant/counterplaintiff Norman H. Nie and defendant C. Hadlai Hull.  In support thereof, SPSS states as follows:

**I.      Background.**

1.      This case arises out of the claim made by the former chairman of SPSS's board of directors, Norman H. Nie, that he has the unfettered power to control all aspects of SPSS's marketing and product quality determinations by virtue of a 1976 license agreement that has lain dormant for over 30 years.  This agreement was executed when SPSS was a small, privately-held

company owned by defendants and long before SPSS went public in 1993. At that time, the trademark "SPSS" was registered in their names, and the license agreement gave SPSS an exclusive and perpetual right to use that trademark.

2.  However, neither defendant attempted to assert any rights under the license agreement for the next 30 years. Tellingly, even though Mr. Nie was on the board of directors and was one of the two selling shareholders in connection with the 1993 IPO, he did not even disclose the existence of the license agreement, much less assert the sweeping powers that he now claims he has under it. Mr. Nie made millions of dollars from the IPO, a transaction that could not have gone forward had the shareholders been informed of Mr. Nie's claim that he has exclusive control over SPSS's marketing and product quality.

3.  It was not until October 2007 that Mr. Nie first attempted to assert alleged rights under the license agreement (in fact, he claims in pleadings that he had forgotten about the agreement until around that time). This took place after SPSS sought an assignment of any residual rights defendants might have had under the dormant license agreement because questions had been raised by lenders and underwriters with respect to SPSS's trademarks. It tendered an assignment agreement to Mr. Nie as a simple administrative matter.

4.  After initially indicating that he would sign the assignment agreement, Mr. Nie reversed field, declining to sign and then trying, for the first time in 30 years, to assert rights under it. Mr. Nie's sudden assertions of rights under the license agreement were sweeping. He claimed that he had the exclusive power to control essential functions of SPSS – product quality and marketing – even though it was a public company. He further claimed that his purported rights were worth $20 million. Mr. Nie's assertion that he could wrest control of SPSS from its

current management and his monetary claim led SPSS to file a series of Form 8Ks with the SEC where it disclosed the new and remarkable positions being taken by Mr. Nie.

5.      In this lawsuit, SPSS seeks a declaratory judgment that defendants are estopped from asserting any rights they might once have had under the license agreement – before the company went public and before 30 years passed without any assertion of any rights under it – and that SPSS be deemed to have an irrevocable, assignable, and exclusive license to use the trademarks at issue.[1]

**II.     The Rule 30(b)(6) Deposition Notice and the Parties' Discussions.**

6.      When a corporation such as SPSS has objections to the scope of a Rule 30(b)(6) deposition notice, the proper procedure is for the corporation to state its objections and seek to resolve them with the noticing party prior to the deposition. *See New World Network Ltd. v. M/V Norwegian Sea*, 2007 WL 1068124, at *4 (S.D. Fla. Apr. 6, 2007) ("the better procedure to follow for the proper operation of Rule [30(b)(6)] is for a corporate deponent to object to the designation topics that are believed to be improper and give notice to the requesting party of those objections, so that they can either be resolved in advance or otherwise."). After proper consultation, "[t]he requesting party has the obligation to reconsider its position, narrow the scope of the topic, or otherwise stand on its position and seek to compel additional answers if necessary . . . ." *Id.* SPSS complied with this procedure, but defendants did not.

7.      The Rule 30(b)(6) Notice of Deposition identifies thirteen topics for examination. Exhibit A. SPSS issued its objections and responses and designated Anthony Ciro, SPSS's Associate General Counsel, as SPSS's Rule 30(b)(6) witness for many, but not all, of the listed

---

[1]     Defendants answered SPSS's complaint and filed a counterclaim against SPSS alleging trademark infringement by SPSS. SPSS answered defendants' counterclaim, denying that it infringed the trademarks at issue. Defendant Nie has filed an amended counterclaim against SPSS, to which SPSS will timely answer.

3

topics for examination. Exhibit B. In particular, SPSS objected to designating a witness on Topic Nos. 8 ("The enforceability of the License Agreement."), 9 ("SPSS's decision to request a trademark assignment from Defendants.") and 13 ("SPSS's actual or contemplated preparation and filing of Form 8-K's concerning the License Agreement, the Trademark Assignment, this lawsuit and/or Defendants' counterclaim."). SPSS did not designate Mr. Ciro or anyone else to testify on those topics.

8. Counsel for SPSS and defendants participated in two lengthy Rule 37 conferences by telephone on April 29, 2008 and May 1, 2008 to discuss the scope of defendants' proposed Rule 30(b)(6) deposition of SPSS, among other matters. These conference calls were attended by William Berndt and Jennifer Waters for Defendants and by Edward Williams and Thomas Panoff for SPSS. Topic Nos. 8, 9 and 13 were specifically discussed.

9. After these two comprehensive Rule 37 conferences, counsel exchanged detailed correspondence regarding, among other matters, the scope of defendants' proposed Rule 30(b)(6) deposition of SPSS, including a May 8, 2008 letter from William Berndt to Edward Williams, Exhibit C, and a May 14, 2008 letter from Thomas Panoff to William Berndt. Exhibit D.

10. In Mr. Berndt's May 8 letter, he noted that the parties were "unable to come to an agreement to overcome [SPSS's] *continued objection* to Topic number 13 and it is, therefore, ripe for review by the Court." (emphasis added). As for Topic Nos. 8 and 9, defendants did not even mention them or SPSS's objections. Defendants never sought the Court's adjudication of the "ripe" dispute regarding Topic No. 13, or any issues that they may have had with respect to Topic Nos. 8 and 9 but did not raise in their letter. Defendants had ample opportunity to seek the Court's review of any such issues – indeed, the parties were before this Court on another issue relating to the very same Rule 30(b)(6) deposition on May 27, 2008.

4

11. Against this backdrop of extensive discussions and correspondence, Mr. Williams sent a letter to Mr. Berndt on May 29, 2008 confirming the scope of the Rule 30(b)(6) deposition. Exhibit E. This letter addressed each of the 13 topics. With respect to Topic Nos. 8, 9 and 13, Mr. Williams stated that "SPSS has stood on its objections, and Mr. Ciro will not testify on these topics. You have not challenged SPSS's objections to Topic Nos. 8 and 9. In your May 8, 2008 letter you indicated that you may challenge the objection to Topic No. 13, but you did not do so." *Id*. Defendants never took issue with anything stated in Mr. Williams's letter. Going into the deposition, it could not be more clear that Mr. Ciro had not been designated to testify on Topic Nos. 8, 9 and 13 and that defendants had not sought to compel SPSS to designate a witness on these topics.

12. However, another of defendants' attorneys, Peter Baugher, who took the deposition but had not attended any of the discussions regarding the scope of the Rule 30(b)(6) deposition, repeatedly asked Mr. Ciro questions regarding Topic Nos. 8, 9 and 13. *See*, *e.g.*, Exhibit F (Dep. Tr.)[2] at 5 ("[D]o you know of any facts that suggest that [the trademark license agreement] is not a valid contract between Nie and Hull and SPSS?"); *Id.* at 227 ("[W]hat were your instructions to [outside counsel] in … drafting the trademark assign[ment]?"); *Id*. at 251 ("[D]o you believe that the statements in item 8.01 [a Form 8-K] are correct statements?").

13. This tactic forced counsel for SPSS to object numerous times and resulted in annoyance, oppression, and undue burden to SPSS and its designee. *See Circle Group Internet, Inc. v. Atlas, Pearlman, Trop & Borkson, P.A.*, 2004 WL 406988, at *2 (N.D. Ill. Mar. 2, 2004) (repeated "questions exceed[ing] the bounds of Rule 30(b)(6) … became oppressive ….");

---

[2]   Citations to the May 30, 2008 Rule 30(b)(6) deposition of SPSS are to the draft transcript and page numbers refer to those in the transcript, not those at the bottom of the printout. SPSS will update the draft transcript with the official transcript once it becomes available, if the Court so desires.

*E.E.O.C. v. Smokin' Joe's Tobacco Shop, Inc.*, 2007 WL 2728926, at *2 (E.D. Pa. Sept. 18, 2007) (refusal to answer questions at the direction of counsel was proper in light of the scope of 30(b)(6) deposition). We also reluctantly add that Mr. Baugher's reaction to these proper objections further escalated the annoyance, oppression and undue burden as he repeatedly interrupted SPSS's counsel and did everything he could to prevent those objections being made a part of the record. *See, e.g.,* Exhibit F at 8, 26-27, 61, 87, 91, 107-108, 184, 202 and 243-44.

14. If defendants wanted to seek an order compelling SPSS to designate a witness on Topics 8, 9 and 13, that certainly would have been within their rights. What they should not have done, however, is attempt to ambush Mr. Ciro at the deposition on topics upon which he had not been designated, to which SPSS had properly objected and for which defendants could have, but did not, move to compel.

### III. SPSS's Objections Should be Sustained.

15. During the deposition, Mr. Baugher indicated that defendants intend to conduct further Rule 30(b)(6) depositions of SPSS on Topic Nos. 8, 9 and 13, and beyond. Exhibit F at 274. Because defendants have chosen not to address SPSS's long-standing objections to Topic Nos. 8, 9, and 13, and instead seek to pursue those topics through further depositions, SPSS is forced to file this motion seeking a protective order from the Court in order to prevent further annoyance, oppression, undue burden, and expense to SPSS and its designee(s). This Court should rule that Topic Nos. 8, 9 and 13 were properly objected to and that SPSS is not required to designate a witness to testify on them.

### A. Topic 8: "The enforceability of the License Agreement."

16. SPSS objected to Topic No. 8 ("The enforceability of the License Agreement.") on the grounds that it sought information protected from discovery by the attorney-client privilege and the attorney work product doctrine, and that it was vague, ambiguous, overly

broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and called for legal conclusions. Exhibit B at 5.

17. Whether or not the license agreement is enforceable is the very issue that SPSS seeks to resolve through its declaratory judgment complaint. Its views on the enforceability issue are clearly set forth in its complaint (it is not enforceable), including a summary of the applicable facts. However, SPSS cannot be required to designate a Rule 30(b)(6) witness to testify about its analysis of the application of the facts to the legal question of whether the license agreement is "enforceable." Indeed, courts have repeatedly held that it is improper to ask a Rule 30(b)(6) designee to testify to all the facts involving the claims or defenses involved in litigation. *CSX Transp., Inc. v. Vela*, 2007 WL 3334966, at *4 (S.D. Ind. Nov. 8, 2007) (granting protective order because "Defendants may not serve a Rule 30(b)(6) notice for the purpose of requiring [plaintiff] to marshal all of its factual proof and prepare a witness to be able to testify on a particular defense."); *In re Indep. Serv. Org. Antitrust Litig.*, 168 F.R.D. 651, 654 (D. Kan. 1996) ("Even under the present-day liberal discovery rules, [defendant] is not required to have counsel 'marshal all of its factual proof' and prepare a witness to be able to testify on a given defense or counterclaim.") (citing *U.S. v. District Council of New York City*, 1992 WL 208284, at *15 (S.D.N.Y. Aug. 18, 1992)).

    **B.    Topic No. 9: "SPSS's decision to request a trademark assignment from Defendants."**

18. SPSS objected to Topic No. 9 ("SPSS's decision to request a trademark assignment from Defendants.") because it sought information protected from discovery by the attorney-client privilege and the attorney work product doctrine, and that it was vague, ambiguous, overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and called for legal conclusions. Exhibit B at 5.

19. Topic No. 9 relates to the fact that, in the Spring of 2007, SPSS asked Mr. Nie to assign any rights they may still have in the trademarks to SPSS. However, as discussed during the Rule 37 conferences that Mr. Baugher did not attend, SPSS's decision to request the assignment was entirely based on advice of counsel and therefore the "reasons" behind this decision were entirely privileged. This is why SPSS timely objected to the designation: it had no non-privileged information relating to this topic. *See SmithKline Beecham Corp. v. Apotex Corp.*, 2000 WL 116082, at *9 (N.D. Ill. Jan. 24, 2000) (attorney-client privilege and work product doctrine apply to testimony during Rule 30(b)(6) deposition). Defendants appeared satisfied with SPSS's explanation until the time of the deposition when they attempted to delve into those privileged communications. They should not be allowed to ask even more questions on this privileged topic.

    **C.    Topic No. 13: "SPSS's actual or contemplated preparation and filing of Form 8-K's concerning the License Agreement, the Trademark Assignment, this lawsuit and/or Defendants' counterclaim."**

20. SPSS objected to Topic No. 13 ("SPSS's actual or contemplated preparation and filing of Form 8-K's concerning the License Agreement, the Trademark Assignment, this lawsuit and/or Defendants' counterclaim.") on the grounds that it sought information protected from discovery by the attorney-client privilege and the attorney work product doctrine, and that it was vague, ambiguous, overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

21. Topic No. 13 relates to the fact that SPSS filed a series of Form 8Ks with the SEC announcing to the public that defendants were asserting that they had rights under the license agreement for the first time since its apparent execution in September 1976. Again, as explained during the conferences, SPSS's actual or contemplated preparation of the Form 8Ks were based entirely on advice of counsel and, therefore, any information it possesses on this topic would be,

8

by definition, privileged. In addition, those statements speak for themselves, and there is simply no need for discovery beyond their plain terms.

*   *   *

22.    In summary, defendants ambushed SPSS at the deposition by asking numerous questions of Mr. Ciro on topics for which he had not been designated and to which SPSS had properly objected on numerous grounds, including the attorney-client privilege and work product doctrine. This Court should rule that there will be no further Rule 30(b)(6) questioning on Topics 8, 9 and 13.

WHEREFORE, SPSS respectfully requests that this Court grant SPSS's motion and enter a Protective Order pursuant to Fed. R. Civ. P. 26(c) prohibiting defendants from attempting to explore Topic Nos. 8, 9, and 13 in additional Rule 30(b)(6) depositions of SPSS.

Dated: June 5, 2008

Respectfully submitted,

SPSS INC.

By: /s/ Edward H. Williams
One of its attorneys

Robert J. Kriss
Edward H. Williams
Thomas V. Panoff
Daniel K Storino
MAYER BROWN LLP
71 South Wacker Drive
Chicago, Illinois 60606
(312) 782-0600

## CERTIFICATION PURSUANT TO
## FED. R. CIV. P. 26(C) AND LOCAL RULE 37.2

I, Edward H. Williams, an attorney for SPSS Inc., hereby certify that the parties have attempted in good faith to resolve this dispute involving Topic Nos. 8, 9, and 13 of Defendants' Notice of Deposition Pursuant to Rule 30(b)(6) but have been unable to reach an accord. On May 1, 2008, the parties discussed this matter, among other discovery issues, on a two-hour telephone call. Present on the call for SPSS Inc., in addition to myself, was Thomas V. Panoff, my colleague at Mayer Brown LLP. Present on the call for defendants were William B. Berndt and Jennifer A. Waters, both attorneys at Schopf & Weiss LLP. The parties further discussed this matter by written correspondence, including a May 8, 2008 letter from William B. Berndt to Edward H. Williams, a May 14, 2008 letter from Thomas V. Panoff to William B. Berndt, and a May 29, 2008 letter from Edward H. Williams to William B. Berndt. Despite this month-long effort to address the issue, Peter Baugher, another attorney for defendants from Schopf & Weiss LLP, asked numerous questions relating to Topic Nos. 8, 9, and 13 during the May 30, 2008 Rule 30(b)(6) deposition of SPSS, causing SPSS again to repeat its objections on the record. Mr. Baugher indicated that defendants intend to continue to pursue Topic Nos. 8, 9, and 13 in further Rule 30(b)(6) depositions of SPSS.

/s/ Edward H. Williams
Edward H. Williams

## CERTIFICATE OF SERVICE

I, Edward H. Williams, an attorney, hereby certify that on June 5, 2008, I caused a true and correct copy of **PLAINTIFF/COUNTERDEFENDANT SPSS INC.'S MOTION FOR A PROTECTIVE ORDER** to be filed with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following counsel who have registered for receipt of documents filed in this matter:

Peter V. Baugher
William B. Berndt
Jennifer A. Waters
Schopf & Weiss LLP
One South Wacker Drive
28th Floor
Chicago, Illinois 60606

Luther Orton
Snyder Miller & Orton LLP
111 Sutter Street, Suite 1950
San Francisco, California 94104

    /s/  Edward H. Williams
       Edward H. Williams