# Exhibit A

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

SPSS Inc.,                         )

                                          )

     Plaintiff/Counterdefendant,    )

                                          )

           v.                         )     Case No.  08 C 66

                                          )

Norman H. Nie and C. Hadlai Hull,   )     Judge John W. Darrah

                                        )     Magistrate Judge Arlander Keys

     Defendants/Counterplaintiffs.   )

## NOTICE OF DEPOSITION PURSUANT TO RULE 30(B)(6)

TO:   Robert J. Kriss
       Edward H. Williams
       Thomas V. Panoff
       Daniel K. Storino
       Mayer Brown LLP
       71 South Wacker Drive
       Chicago, Illinois 60606

          PLEASE TAKE NOTICE that Defendants Norman H. Nie and C. Hadlai Hull (collectively "Defendants"), by their undersigned attorneys, will take the discovery deposition of SPSS Inc. ("SPSS") beginning at 10:00 a.m. on April 28, 2008, at the offices of Schopf & Weiss LLP, 312 West Randolph Street, Suite 300, Chicago, Illinois. The deposition will be conducted with respect to the matters described below.  Pursuant to Federal Rule of Civil Procedure 30(b)(6), SPSS shall designate one or more officers, directors, managing agents, or other persons to testify on its behalf.  The examination will be conducted on the following topics:

## MATTERS FOR EXAMINATION

          For the purposes of the list of topics below, the term License Agreement means the contract between Norman H. Nie and C. Hadlai Hull and SPSS, Inc. titled "License Agreement" bearing the effective date February 1, 1975 attached to Defendants' Counterclaim as Exhibit A.

          For the purposes of the list of topics below, the term 1978 Trademark Application and Registration means the application for and ultimate registration of SPSS with the United States Patent and Trademark Office on April 11, 1978 under number 1,089,094.

For the purposes of the list of topics below, the term 2004 Trademark Application and Registration means the application for and ultimate registration of SPSS with the United States Patent and Trademark Office on July 20, 2004 under number 2,864,243.

For the purposes of the list of topics below, the term Assignment means the document titled "Trademark Assignment" attached to Defendants' Counterclaim as Exhibit D.

For the purposes of the list of topics below, the term "Communication" means any oral, written, or electronic transmission of information, opinion, belief, idea, or statement or attempt to do so, of any kind or character, including, by way of example and without limitation, personal conversations, telephone conversations, letters, minutes, meetings, memoranda, telegraphic, telex, computer and facsimile communications or transmittals of documents, and all documents concerning such oral, written, or electronic transmission. "Communication" as used herein specifically includes internal writings, memoranda, oral conversations or meetings among your officers, board members, employees or other representatives.

1.    The 1978 Trademark Application and Registration.

2.    SPSS's knowledge of the existence of the License Agreement.

3.    SPSS's possession of the License Agreement and/or copies thereof.

4.    The lapse of the trademark in 1999.

5.    SPSS's decision to apply for the SPSS trademark beginning in 2002.

6.    The 2004 Trademark Application and Registration.

7.    Foreign registrations of the SPSS trademark.

8.    The enforceability of the License Agreement.

9.    SPSS's decision to request a trademark assignment from Defendants.

10.   SPSS's responses to Defendants' attempts to enforce rights under the License Agreement.

11.    SPSS's non-public communications, whether oral or in writing, about the License Agreement.

12.    SPSS's public filings concerning the SPSS trademark and the License Agreement.

13.    SPSS's actual or contemplated preparation and filing of Form 8-K's concerning the License Agreement, the Trademark Assignment, this lawsuit and/or Defendants' counterclaim.

Dated:  March 3, 2008

_____
One of the Attorneys for Norman H. Nie and C. Hadlai Hull

Peter V. Baugher
William B. Berndt
Jennifer A. Waters
Schopf & Weiss LLP
One South Wacker Drive, 28th Floor
Chicago, Illinois 60606
(312) 701-9300

Luther Orton (admitted *pro hac vice*)
Snyder Miller & Orton LLP
111 Sutter Street, Suite 1950
San Francisco, California 94104
(415) 962-4400

## CERTIFICATE OF SERVICE

I, Jennifer A. Waters, an attorney, state that I caused a copy of the attached **Notice of Deposition Pursuant To Rule 30(B)(6)** to be served by hand delivery, upon the individuals listed below, on this 3rd day of March, 2008.

Robert J. Kriss
Edward H. Williams
Thomas V. Panoff
Daniel K. Storino
Mayer Brown LLP
71 South Wacker Drive
Chicago, Illinois 60606

Jennifer A. Waters

# Exhibit B

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| SPSS Inc., | ) | |
| | ) | |
| Plaintiff/Counterdefendant, | ) | Case No. 08 C 66 |
| | ) | |
| v. | ) | Judge John W. Darrah |
| | ) | |
| Norman H. Nie and C. Hadlai Hull, | ) | Magistrate Judge Arlander Keys |
| | ) | |
| Defendants/Counterplaintiffs. | ) | |

**PLAINTIFF'S OBJECTIONS TO DEFENDANTS'
NOTICE OF DEPOSITION PURSUANT TO RULE 30(B)(6)**

Plaintiff SPSS Inc. ("SPSS"), by and through its attorneys, hereby submits these Objections to Defendants' Notice of Deposition Pursuant to Rule 30(b)(6).

## GENERAL OBJECTIONS

1.      SPSS objects to the Notice of Deposition to the extent that the Matters for Examination purport to impose obligations that exceed the requirements of applicable law, including the Federal Rules of Civil Procedure and any other applicable court order or rule.

2.      SPSS objects to the Notice of Deposition to the extent that the Matters for Examination seek information protected from discovery by the attorney-client privilege, attorney work product doctrine, or any other applicable privilege or immunity from discovery. Nothing in these Objections is intended to be, or in any way should be deemed, a waiver of an applicable privilege or immunity.

3.      SPSS objects to the Notice of Deposition to the extent that SPSS should not have to produce a designated witness for a Rule 30(b)(6) deposition and then again as a fact witness, which would be unduly burdensome for SPSS and potentially violate Rule 30(d)(1).

4.     SPSS objects to the Notice of Deposition to the extent that the Matters for Examination seek information that does not exist, is not known to SPSS, is not reasonably available to SPSS, or is not within the custody or control of SPSS.

5.     SPSS objects to the Notice of Deposition to the extent that the Matters for Examination seek information that is already known or available to Defendants or within the custody or control of Defendants.

6.     SPSS objects to the Notice of Deposition to the extent that the Matters for Examination seek information that is duplicative of other discovery sought in this case, or calls for discovery that would be more easily obtained through other less burdensome means.

7.     SPSS objects to the Notice of Deposition to the extent that the Matters for Examination seek information that calls for a witness to testify as to a legal conclusion.

8.     SPSS objects to the Notice of Deposition because the parties have only just begun the production of documents in discovery and the Notice of Deposition is therefore premature.

## SPECIFIC OBJECTIONS TO MATTERS FOR EXAMINATION

SPSS incorporates each of its General Objections into its Specific Objections to Matters for Examination as if fully set forth therein.

**MATTER FOR EXAMINATION NO. 1:** The 1978 Trademark Application and Registration.

**RESPONSE:** SPSS objects to this Matter for Examination on the grounds that it requests information protected from discovery by the attorney-client privilege and attorney work product doctrine and is vague, ambiguous, overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving any objection, SPSS states that it is not aware of any current employees[1] with any personal

---

[1] All references to current employees in these Objections excludes Defendant C. Hadlai Hull.

knowledge of the 1978 Trademark Application and Registration and that the only non-privileged information reasonably available to SPSS regarding this topic is the documents it produces in response to defendants' document requests subject to SPSS's objections.

**MATTER FOR EXAMINATION NO. 2:** SPSS's knowledge of the existence of the License Agreement.

**RESPONSE:** SPSS objects to this Matter for Examination on the grounds that it requests information protected from discovery by the attorney-client privilege and attorney work product doctrine and is vague, ambiguous, overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving any objections, SPSS states that Tony Ciro can testify about his discovery of the License Agreement in approximately October 2002, that SPSS is not aware of any current employees with any further personal knowledge regarding the existence of the License Agreement predating Tony Ciro's discovery and that any further non-privileged information reasonably available to SPSS regarding this topic would be the documents it produces in response to defendants' document requests subject to SPSS's objections.

**MATTER FOR EXAMINATION NO. 3:** SPSS's possession of the License Agreement and/or copies thereof.

**RESPONSE:** SPSS objects to this Matter for Examination on the grounds that it requests information protected from discovery by the attorney-client privilege and attorney work product doctrine and is vague, ambiguous, overly broad, unduly burdensome, cumulative and not reasonably calculated to lead to the discovery of admissible evidence.

**MATTER FOR EXAMINATION NO. 4:** The lapse of the trademark in 1999.

**RESPONSE:** SPSS objects to this Matter for Examination on the grounds that it requests information protected from discovery by the attorney-client privilege and attorney work product doctrine and is vague, ambiguous, overly broad, unduly burdensome and not reasonably

3

calculated to lead to the discovery of admissible evidence. Subject to and without waiving any objections, SPSS is not aware of any current SPSS employee with any personal knowledge of the lapse of the trademark in 1999 and that the only non-privileged information reasonably available to SPSS regarding this topic would be the documents it produces in response to defendants' document requests subject to SPSS's objections.

**MATTER FOR EXAMINATION NO. 5:** SPSS's decision to apply for the SPSS trademark beginning in 2002.

**RESPONSE:** SPSS objects to this Matter for Examination on the grounds that it requests information protected from discovery by the attorney-client privilege and attorney work product doctrine and is vague, ambiguous, overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving any objection, SPSS identifies Tony Ciro.

**MATTER FOR EXAMINATION NO. 6:** The 2004 Trademark Application and Registration.

**RESPONSE:** SPSS objects to this Matter for Examination on the grounds that it requests information protected from discovery by the attorney-client privilege and attorney work product doctrine and is vague, ambiguous, overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving any objection, SPSS identifies Tony Ciro.

**MATTER FOR EXAMINATION NO. 7:** Foreign registrations of the SPSS trademark.

**RESPONSE:** SPSS objects to this Matter for Examination on the grounds that it requests information protected from discovery by the attorney-client privilege and attorney work product doctrine and is vague, ambiguous, overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving any objection, SPSS identifies Tony Ciro.

**MATTER FOR EXAMINATION NO. 8:** The    enforceability    of    the    License Agreement.

**RESPONSE:** SPSS objects to this Matter for Examination on the grounds that it requests information protected from discovery by the attorney-client privilege and attorney work product doctrine and is vague, ambiguous, overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and calls for a legal conclusion.

**MATTER FOR EXAMINATION NO. 9:** SPSS's decision to request a trademark assignment from Defendants.

**RESPONSE:** SPSS objects to this Matter for Examination on the grounds that it requests information protected from discovery by the attorney-client privilege and attorney work product doctrine and is vague, ambiguous, overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

**MATTER FOR EXAMINATION NO. 10:** SPSS's responses to Defendants' attempts to enforce rights under the License Agreement.

**RESPONSE:** SPSS objects to this Matter for Examination on the grounds that it requests information protected from discovery by the attorney-client privilege and attorney work product doctrine and is vague, ambiguous, overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving any objection, SPSS identifies Tony Ciro.

**MATTER FOR EXAMINATION NO. 11:** SPSS's    non-public    communications, whether oral or in writing, about the License Agreement.

**RESPONSE:** SPSS objects to this Matter for Examination on the grounds that it requests information protected from discovery by the attorney-client privilege and attorney work product doctrine and is vague, ambiguous, overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving any objections, SPSS states that it is not aware of any current SPSS employee with personal

knowledge of any non-public communications about the License Agreement predating its discovery by Tony Ciro in or around October 2002 and that the only non-privileged information reasonably available to SPSS regarding this topic predating October 2002 would be the documents it produces in response to defendants' document requests subject to SPSS's objections.    Subject to and without waiving any objection, with respect to non-public communications that took place after October 2002, SPSS identifies Tony Ciro.

**MATTER FOR EXAMINATION NO. 12:** SPSS's public filings concerning the SPSS trademark and the License Agreement.

**RESPONSE:** SPSS objects to this Matter for Examination on the grounds that it requests information protected from discovery by the attorney-client privilege and attorney work product doctrine and is vague, ambiguous, overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

**MATTER FOR EXAMINATION NO. 13:** SPSS's actual or contemplated preparation and filing of Form 8-K's concerning the License Agreement, the Trademark Assignment, this lawsuit and/or Defendant's counterclaim.

**RESPONSE:** SPSS objects to this Matter for Examination on the grounds that it requests information protected from discovery by the attorney-client privilege and attorney work product doctrine and is vague, ambiguous, overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

Dated:  April 23, 2008                    SPSS INC.

                                          By: _____
                                          One of its attorneys

                                          Robert J. Kriss
                                          Edward H. Williams
                                          Thomas V. Panoff
                                          Daniel K Storino
                                          MAYER BROWN LLP
                                          71 South Wacker Drive
                                          Chicago, Illinois 60606
                                          (312) 782-0600

## CERTIFICATE OF SERVICE

I, Thomas V. Panoff, an attorney, certify that I caused a copy of the foregoing **PLAINTIFF'S OBJECTIONS TO DEFENDANTS' NOTICE OF DEPOSITION PURSUANT TO RULE 30(B)(6)** to be served on April 23, 2008 by fax and overnight mail to the attorneys listed below.

Peter V. Baugher
William B. Berndt
Jennifer A. Waters
Schopf & Weiss LLP
One South Wacker Drive
28th Floor
Chicago, Illinois 60606

Luther Orton
Snyder Miller & Orton LLP
111 Sutter Street, Suite 1950
San Francisco, California 94104

_____
Thomas V. Panoff

# Exhibit C



William B. Berndt
312.701.9376
berndt@sw.com

May 8, 2008

**By Email:  ewilliams@mayerbrown.com**

Mr. Edward H. Williams
Mayer Brown LLP
71 South Wacker Drive
Chicago, Illinois 60606

**Re:**    *SPSS Inc. v. Nie & Hull*, **Case No. 08 C 66**

Dear Ted:

I am writing to confirm our discussions during two Rule 37 conferences regarding SPSS Inc.'s ("SPSS's") responses to Defendants' initial discovery requests and deposition notice.  During conferences on April 29 and May 1, 2008, we discussed the following:

SPSS Responses To Defendants' Document Requests:

Requests 1-8, 18, 22-23, 25:  Although SPSS's responses suggest that SPSS will produce only certain documents responsive to these requests, SPSS has confirmed that it will produce all documents responsive to these requests located after a reasonable search of SPSS's files, including any non-privileged internal correspondence or memoranda.

Requests 9-13:  SPSS believes that all documents responsive to these requests, other than those publicly disclosed to government entities, are privileged and thus will not be produced.  SPSS has not confirmed whether or not it will search for and produce non-privileged documents responsive to these requests.

Request 14:  We agreed to convene further discussions on our request for documents relating to the incorporation of SPSS Inc. as a public corporation in 1975.

Requests 15-17:  We discussed a revision of SPSS's response to these requests, to reflect SPSS's agreement to produce documents relating to the requests "to the extent that they refer or relate to the License Agreement or the Trademarks."  Please let us know if SPSS agrees to produce documents responsive to these requests with this limitation.

Mr. Edward H. Williams
May 8, 2008
Page 2



Requests 19-21:  SPSS refuses to produce documents responsive to these requests on the grounds stated in its responses.  The parties' dispute regarding these requests is ripe for review by the Court.

SPSS will produce a privilege log, but would like to discuss a mutually agreeable date beyond which communications relating to the litigation will not be logged by either party.  We propose December 31, 2007 as such a date.

We understand that SPSS intends to complete its production of documents by May 9, 2008.

SPSS Responses to Defendants' Interrogatories:

Interrogatory 1:  SPSS will not answer Interrogatory 1 at this time.  The question of whether SPSS must answer Interrogatory 1, a contention interrogatory, is ripe for review by the Court.

Interrogatories 2, 3 and 7:  SPSS suggests that, after a reasonable search, it cannot locate any individuals within the company with knowledge of a series of events prior to 2002, including the drafting and approval of the License Agreement, the 1978 Trademark Application and Registration, and the lapse of the registration of the Trademarks in 1999.  Additionally, SPSS has not located any individuals with knowledge of the location of the License Agreement before 2002, or any person's review of the License Agreement prior to 2002.  Please confirm this understanding.

SPSS Responses to Rule 30(b)(6) Deposition Notice

With respect to your responses to our Rule 30(b)(6) deposition notice, please confirm whether you intend to identify a witness to testify on Topics 1, 3, and 4.  We also note that we were unable to come to an agreement to overcome your continued objection to Topic number 13 and it is, therefore, ripe for review by the Court.  In response to your scope objection we have amended Topic number 12.  Please respond to the following:

### AMENDED MATTER FOR EXAMINATION NO. 12

> The basis for SPSS's annual 10K filings concerning the SPSS trademark and the License Agreement.

You requested our agreement to depose Tony Ciro one time for no more than 9 hours.  We do not believe that we are required to agree to such a limitation at this time and decline to do so.  We also note that we have not yet issued a deposition notice for Mr. Ciro at this time and will evaluate our need to do so at the appropriate time.

Nie and Hull Responses to SPSS Document Requests

Below is our response to your amended version of document request number 6 contained in your letter of May 2, 2008.

Mr. Edward H. Williams
May 8, 2008
Page 3



### AMENDED REQUEST NUMBER 6

All documents reflecting or referring to the Trademarks that were used by Defendants Norman H. Nie and C. Hadlai Hull in a capacity other than through SPSS Inc. to sell, market, transfer, exchange or distribute products before 1992.

### AMENDED RESPONSE TO REQUEST NUMBER 6

Nie and Hull incorporate their general objections stated in their response to Plaintiff/Counterdefendant SPSS Inc.'s First Request for the Production of Documents. Nie and Hull object to amended request number 6 on the grounds that it attempts to seek discovery concerning claims, issues, and/or non-parties that are not at issue in this lawsuit. Nie and Hull also object to request number 6 on the grounds that it is overbroad, unduly burdensome, and is not reasonably calculated to elicit documents that may lead to admissible evidence regarding the claims or defenses involved in this lawsuit. Nie and Hull also object to request number 6 on the grounds that documents reflecting or referring to the Trademarks that were used to sell, market, transfer, exchange or distribute products before 1992 are already in the possession, custody or control of SPSS Inc. Subject to and without waiving these objections and the general objections stated above, Nie and Hull will produce any such non-privileged documents in their possession, custody or control.

In response to your concern and for consistency's sake, we also amend our response to Request Number 17 to add the following statement to the end of our response:

Subject to and without waiving these objections and the general objections stated above, Nie and Hull will produce any such non-privileged documents in their possession, custody or control.

We have confirmed what we said on the phone last week that, while we reviewed Mr. Hull's documents, all of the responsive documents that we produced in this matter originated in Mr. Nie's files.

Yours truly,

William B. Berndt

WBB:lrk

# Exhibit D

# MAYER·BROWN

Mayer Brown LLP
71 South Wacker Drive
Chicago, Illinois 60606-4637

Main Tel (312) 782-0600
Main Fax (312) 701-7711
www.mayerbrown.com

May 14, 2008

**Thomas V. Panoff**
Direct Tel (312) 701-8821
Direct Fax (312) 706-8297
tpanoff@mayerbrown.com

BY E-MAIL

William B. Berndt
Schopf & Weiss LLP
One South Wacker Drive
28th Floor
Chicago, IL 60606

Re:     *SPSS Inc. v. Nie and Hull, No. 08 C 66 (N.D. Ill.)*

Dear Will:

I am writing in response to your letter from May 8, 2008, and to clarify several items we discussed during our telephone conferences on April 29 and May 1, 2008.

Defendants' Document Requests

As a general matter, you have yet to explain during any of our telephone conferences or in any of your correspondence how the information you seek prior to the discovery of the License Agreement in approximately October 2002 is relevant to any claims or defenses in this litigation. There is no evidence or indication in the discovery responses or pleadings that Defendants or anyone at SPSS knew about the License Agreement from shortly after it was executed in approximately October 2002. In fact, Defendants state in their pleadings that they forgot about the License Agreement until May 2007 when SPSS asked Dr. Nie for an assignment. Until after "remembering" the existence of the License Agreement, Defendants never attempted to enforce any purported rights they possessed under the License Agreement. Accordingly, the only relevant discovery issue during this time period is whether Defendants made misrepresentations relating to the License Agreement and/or the Trademarks in connection with public filings effectuating the IPO and follow-on offering.

In your May 8th letter, you also propose December 31, 2007 as the date after which neither party will be required to log communications related to the litigation. SPSS believes this date should be earlier as, at least from its perspective, litigation was contemplated earlier than that. We should discuss this further as we discuss the extent and timing of privilege logs.

You also mention in your May 8th letter that SPSS intended to complete its document production by May 9, 2008. As Ted Williams stated in his prior email to you, we did set May 9 as a target date for our production, but we made it clear that that date was only a target. The second installment of our document production was sent to you on May 12, 2008. We are also continuing our review of emails and will produce responsive, non-privileged emails and any other responsive, non-privileged documents as soon as we can complete our review. We assume that this general timing is acceptable to you as we received another installment last week of

Mayer Brown LLP operates in combination with our associated English limited liability partnership
and Hong Kong partnership (and its associated entities in Asia).

Mayer Brown LLP

William B. Berndt
May 14, 2008
Page 2

Defendants' document production. I believe you mentioned on the phone to Ted Williams that Defendants' document production is now complete, but please confirm this fact.

In discussing Defendants' Document Request Nos. 9-13, which seek documents involving registrations and applications relating to the trademarks, and attempts to enforce rights under the trademarks, you state in your May 8th letter that "SPSS has not confirmed whether or not it will search for and produce non-privileged documents responsive to these requests." In addition to the undertakings originally identified in SPSS's Specific Responses to Request Nos. 9-13, SPSS will search for and produce non-privileged documents that are responsive to Request Nos. 9-13, if any.

For Request Nos. 15-17, which seek documents involving the IPO, follow-on offering, and other SEC filings, SPSS agrees to the addition of the phrase "to the extent that they refer or relate to the License Agreement or the Trademarks." Subject to this addition, and in addition to the undertakings originally identified in SPSS's Specific Responses to Request Nos. 15-17, SPSS will search for and produce non-privileged documents responsive to these requests, if any.

Regarding Request No. 18, which seeks documents involving "complaints or expressions of concern" by Defendants about the "quality and/or functionality" of SPSS products, we want to clarify our position so that there is no confusion. The record establishes that neither Defendant attempted to exercise any quality control pursuant the License Agreement until October 2007. Indeed, they have admitted that they had completely forgotten about the License Agreement until SPSS requested an assignment from Dr. Nie in May 2007. SPSS will produce documents involving any attempt by Defendants to exercise quality control pursuant the License Agreement, the earliest of which was in October 2007.

Regarding Request Nos. 19-21, which seek documents about quality and/or functionality concerns about SPSS products and financial resources allocated thereto, you state that "SPSS refuses to produce documents responsive to these requests on the grounds stated in its responses. The parties' dispute regarding these requests is ripe for review by the Court." With respect to Request Nos. 19 and 21, we agree; any "quality concerns" or "financial resource allocation" issues raised by persons other than Defendants pursuant to the License Agreement are completely irrelevant. With respect to Request No. 20, we will search for and produce documents from October 2007 to present where Defendants addressed allocation of financial resources in connection with raising a quality issue pursuant to the License Agreement, if any.

Defendants' Interrogatories

In discussing Defendants' Interrogatory No. 1 to SPSS, which asks SPSS to identify the "owner or owners of the Trademarks," you state in your May 8th letter that "SPSS will not answer Interrogatory 1 at this time. The question of whether SPSS must answer Interrogatory 1, a contention interrogatory, is ripe for review by the Court." SPSS reaffirms its initial response to this interrogatory, but would like to reiterate to Defendants that its investigation into the facts at issue in this interrogatory is still continuing and SPSS will supplement its response if needed. As

Mayer Brown LLP

William B. Berndt
May 14, 2008
Page 3

we articulated during our calls, SPSS believes that it would be a waste of judicial resources to seek the Court's review of this issue at this point in the litigation because contention interrogatories should generally be deferred until discovery is near an end. *Ziemack v. Centel Corp.*, 1995 WL 729295, at *2 (N.D. Ill. Dec. 7, 1995) ("The general policy is to defer contention interrogatories until discovery is near an end, in order to promote efficiency and fairness."). In our case, discovery is just beginning.

For Interrogatory Nos. 2, 3, and 7, which ask SPSS to identify SPSS employees who have reviewed the License Agreement and have knowledge regarding certain events related to the License Agreement and Trademark, you state in your May 8th letter that "SPSS suggests that, after a reasonable search, it cannot locate any individuals within the company with knowledge of a series of events prior to 2002, including the drafting and approval of the License Agreement, the 1978 Trademark Application and Registration, and the lapse of the registration of the Trademarks in 1999. Additionally, SPSS has not located any individuals with knowledge of the location of the License Agreement before 2002, or any person's review of the License Agreement prior to 2002" and then ask SPSS to confirm this statement. SPSS confirms that statement. SPSS is not aware of any individual at SPSS with knowledge of the items listed above other than Defendant Hull.

<u>Defendants' Rule 30(b)(6) Deposition Notice</u>

As we mentioned during our telephone conferences, SPSS designates Tony Ciro as its Rule 30(b)(6) witness. SPSS stands by its original responses to Topic Nos. 1, 3, and 4, which pertain to the 1978 Trademark Application and Registration, SPSS's possession of the License Agreement, and the lapse of the registration in 1999. SPSS believes that the documents it has produced, and will produce, sufficiently reflect the information Defendants seek in Topic Nos. 1, 3, and 4. Defendants are free to ask Tony Ciro during the Rule 30(b)(6) deposition about documents responsive to Topic Nos. 1, 3, and 4 that have been produced. For Topic No. 13, which pertains to SPSS's preparation of Form 8Ks discussing the Trademark and this lawsuit, SPSS stands by its original response.

SPSS's response to Defendants' Amended Matter for Examination No. 12 is as follows:

**Amended Matter for Examination No. 12:**

The basis for SPSS's annual 10K filings concerning the SPSS trademark and the License Agreement.

**Amended Response:**

SPSS objects to this Matter for Examination on the grounds that it requests information protected from discovery by the attorney-client privilege and attorney work product doctrine and is vague, ambiguous, overly broad,

Mayer Brown LLP

William B. Berndt
May 14, 2008
Page 4

unduly burdensome and not reasonably calculated to lead to the discovery
of admissible evidence.

As we indicated during our telephone conference, SPSS is willing to designate a Rule 30(b)(6)
witness to discuss its public filings for the IPO and follow-on offering concerning the SPSS
trademark and License Agreement.   Defendants' request for a corporate designee to testify to all
of SPSS's annual 10K filings concerning the SPSS trademark and License Agreement, however,
is unduly burdensome and not reasonably calculated to lead to the discovery of admissible
evidence, in addition to the other objections noted above.

We will submit Tony Ciro for deposition only once.   As we have explained, he is by far the
person most knowledgeable regarding most of your Rule 30(b)(6) topics, and it would be unfair
for him to be subjected to a second deposition on those very same topics at some future date.   He
will not be produced for deposition twice, first as a Rule 30(b)(6) and then as a Rule 30 general
fact witness.   You should ask him all of the questions you have for him during your one-day
deposition of him.

<u>Defendants' Responses to SPSS' Document Requests</u>

In Defendants' Amended Response to SPSS's Document Request No. 6, which seeks documents
referring to Defendants' use of the Trademarks in a capacity other than through SPSS Inc. prior
to 1992, you object based on the grounds that the documents SPSS seeks "are already in the
possession, custody or control of SPSS Inc."   In our telephone conferences, you yourself
repeatedly stated that this is not a valid objection under the Federal Rules of Civil Procedure in
discussing SPSS's responses to Defendants' document requests.   Accordingly, please promptly
produce any non-privileged documents responsive to Request No. 6.

Also, we would like to confirm that Defendants will actually produce all responsive, non-
privileged documents for those of SPSS's Documents Requests for which Defendants state an
objection and then state, "Subject to and without waiving these objections stated above, Nie and
Hull will produce any such non-privileged documents in their possession, custody, or control," or
something similar.

We look forward to receiving the information referenced above and to resolving the remaining
discovery issues that exist.  Please do not hesitate to contact me if you have any questions.

Sincerely,

Thomas V. Panoff

cc: Luther Orton

# Exhibit E

# MAYER · BROWN

Mayer Brown LLP
71 South Wacker Drive
Chicago, Illinois 60606-4637

Main Tel (312) 782-0600
Main Fax (312) 701-7711
www.mayerbrown.com

May 29, 2008

Edward H. Williams
Direct Tel (312) 701-7405
Direct Fax (312) 706-8696
ewilliams@mayerbrown.com

**BY E-MAIL**

William B. Berndt
Schopf & Weiss LLP
One South Wacker Drive
28th Floor
Chicago, Illinois 60606

Re:    *SPSS Inc. v. Nie, et al.*, Case No. 08 C 0066 (N.D. Ill.)

Dear Will:

This letter will confirm the scope of the Rule 30(b)(6) deposition to be held on Friday, May 30, 2008, as reflected in SPSS's objections to the notice, our discussions and our exchange of correspondence.

As you know, the deponent will be Anthony Ciro. Subject to the various objections asserted, and without waiver of any objections, and in particular assertions of the attorney-client privilege or work product doctrine, Mr. Ciro's testimony will cover the following topics:

**Topic Nos. 1, 3 and 4.** Mr. Ciro will testify about SPSS documents relating to the 1978 Trademark Application and Registration, SPSS's possession of the License Agreement, and the lapse of the trademark in 1999. If there are any specific documents from the SPSS production that you would like Mr. Ciro to review, please let me know.

**Topic No. 2.** Mr. Ciro will testify about his discovery of the License Agreement and documents related to the location of the License Agreement in SPSS's files.

**Topic Nos. 5, 6, 7, 10.** Mr. Ciro will testify about these topics.

**Topic No. 11.** Mr. Ciro will testify about non-public (and non-privileged) communications regarding the License Agreement that took place after October 2002, if any.

**Topic No. 12.** SPSS objected to defendants' original description of Topic No. 12 and, in Tom Panoff's May 14, 2008 letter, SPSS objected to your amended description of this topic. By way of compromise, we also offered to designate a witness to discuss SPSS's public filings for the IPO and follow-on offering concerning the SPSS trademark and the License Agreement. You have not accepted this offer.

Mayer Brown LLP operates in combination with our associated English limited liability partnership.

Mayer Brown LLP

May 29, 2008
Page 2

**Topic Nos. 8, 9 and 13.**     SPSS has stood on its objections, and Mr. Ciro will not testify on these topics.  You have not challenged SPSS's objections to Topic Nos. 8 and 9.  In your May 8, 2008 letter you indicated that you may challenge the objections to Topic No. 13, but you did not do so.

Sincerely,

Edward H. Williams

# Exhibit F

053008CiroRoughASCII.TXT

ROUGH DRAFT                                          1


1

2                              IMPORTANT NOTICE
          *  PLEASE READ BEFORE USING ROUGH DRAFT  *
3                            AGREEMENT OF PARTIES
                          WORKING WITH ROUGH DRAFTS
4
     We, the party working with rough draft transcripts,
5    understand that if we choose to use the rough drafts
     printout, that we are doing so with the understanding
6    the rough draft is an uncertified copy.

7    We further agree not to share, give, copy, scan, fax, or
     in any way distribute this rough draft in any form
8    (written or computerized) to any party.  However, our
     own experts, cocounsel and staff may have limited
9    internal use of same with the understanding that we
     agree to destroy our rough draft and/or any computerized
10   form, if any, and replace it with the final transcript
     upon its completion.
11
                    CASE:     SPSS Inc., Plaintiff/Counterdefendant,
12                            vs. Norman H. Nie and C. Hadlai
                              Hull, Defendants/Counterplaintiffs.
13                  WITNESS:  Anthony Ciro
                    DATE:  May 30, 2008
14
     REPORTER'S NOTE:
15   Since this deposition is in rough draft form, please be
     aware that there may be a discrepancy regarding page and
16   line number when comparing the rough draft, rough draft
     disk, and the final transcript.
17
     Also please be aware that the uncertified rough draft
18   transcript may contain untranslated steno, reporter's
     note after the designation  BENCH, misspelled proper
19   names, incorrect or missing Q/A symbols or punctuation,
     and/or nonsensical English word combinations.  All such
20   entries will be corrected on the final, certified
     transcript.
21
                    Monica Kim, CSR, RPR
22

23

24


                  JENSEN REPORTING  (312) 236-6936
                         ROUGH DRAFT                    2



                           Page 1

053008CiroRoughASCII.TXT
                              (Witness sworn.)

2    WHEREUPON:

3                          ANTHONY CIRO,

4    called as a witness herein, having been first duly

5    sworn, was examined and testified as follows:

6                              EXAMINATION

7    BY MR. BAUGHER:

8        Q.    Mr. Ciro, could you please state your full

9    name and spell it?

10       A.    Anthony, A N T H O N Y, Gregory,

11   G R E G O R Y, Ciro, C I R O.

12                     (Discussion off the record.)

13   BY MR. BAUGHER:

14       Q.    Tell us your address, please, Mr. Ciro.

15       A.    There's one more thing.  I didn't finish.  I'm

16   a Junior.

17       Q.    You look old enough to be deposed.

18             All right.  Mr. Anthony Gregory Ciro, Jr.,

19   where do you live?

20       A.    1704 Waverly, W A V E R L Y, Circle,

21   St. Charles, Illinois 60174.

22       Q.    How long have you lived there?

23       A.    Approximately five years.

24       Q.    And where are you currently employed?


                    JENSEN REPORTING  (312) 236-6936
                              ROUGH DRAFT                        3


1        A.    SPSS, Inc.

2        Q.    What is your position, please?

3        A.    Vice president, associate general counsel,

053008CiroRoughASCII.TXT

7      Q.   Is it signed by the company or by an officer

8   of the company?

9      A.   I don't have any knowledge of that.

10     Q.   Well, look at the last page of Deposition

11  Exhibit 1.  Do you see that it's signed by Patrick Bova?

12     A.   I really can't make out the name.

13     Q.   Well, you know who Mr. Bova is from corporate

14  records of SPSS, correct?

15     A.   Correct.

16     Q.   And you know that he was an officer of SPSS

17  back in the 1970s, correct?

18     A.   Through the records, I have seen that.

19     Q.   Yes.

20          And you understand that you are testifying as

21  the corporate representative of SPSS with the knowledge

22  of SPSS, correct?

23     MR. WILLIAMS:  Objection.

24

JENSEN REPORTING  (312) 236-6936

ROUGH DRAFT                                    5

1   BY THE WITNESS:

2      A.   Yes.

3      MR. WILLIAMS:  Mischaracterizes Rule 30(b)(6).

4   BY MR. BAUGHER:

5      Q.   And your answer was yes?

6      A.   Yes.

7      Q.   And so from the corporate records you know who

8   Mr. Bova is; is that right?

9      A.   I do.

Page 4

053008CiroRoughASCII.TXT

10    Q.   And who is he?

11    A.   At the time I believe he was the corporate

12  secretary.

13    Q.   And the time is what?

14    A.   Contract was dated September 30th, 1976.

15    Q.   Now, do you know any facts that suggest that

16  Ciro Deposition Exhibit 1 is not a valid contract

17  between Nie and Hull and SPSS?

18    MR. WILLIAMS:  Objection.  This is beyond the scope

19  of your 30(b)(6) deposition notice that we've objected

20  to.  What topic does this relate to?

21    MR. BAUGHER:  The license agreement.

22    MR. WILLIAMS:  Which topic?

23    MR. BAUGHER:  The license agreement.

24    MR. WILLIAMS:  There is no topic called "the

JENSEN REPORTING  (312) 236-6936

ROUGH DRAFT         6

1  license agreement."

2    MR. BAUGHER:  Are you directing Mr. Ciro not to

3  answer the question that I just put to him?

4    MR. WILLIAMS:  I'm asking him to -- I want to give

5  you the opportunity to direct me in your 30(b)(6)

6  notice, subject to our objections, as to which topic

7  your question is directed to.

8      We have objected to the topic the

9  enforceability of the license agreement.  That objection

10  was not challenged.  I sent a letter to Mr. Berndt

11  yesterday confirming that.  It seems to me that that

12  actually is the topic that you're asking about and

Page 5

053008CiroRoughASCII.TXT
16      MR. BAUGHER:  It relates to 1, 2, 3, 8; could

17    relate to 11 and it could relate to 13.

18      MR. WILLIAMS:  No. 1 is the 1978 trademark

19    application and registration.  I do not believe that

20    your question relates to that --

21      MR. BAUGHER:  Well, actually it does because --

22      MR. WILLIAMS:  Your question relates directly to

23    Topic No. 8 -- I agree with that -- which has been

24    objected to and is not a topic of discussion for this


                    JENSEN REPORTING  (312) 236-6936
                           ROUGH DRAFT                          8


1    deposition.

2      MR. BAUGHER:  All right.  I suggest that we call

3    Judge Darrah and ask him -- I assume you're directing

4    him not to answer.

5      MR. WILLIAMS:  I am -- If you are going to ask him

6    to opine on the enforceability of the license agreement,

7    I'm going to instruct him not to answer --

8      MR. BAUGHER:  I'm asking him about the validity of

9    the agreement.

10      MR. WILLIAMS:  I'm sorry.  Can I finish?

11      MR. BAUGHER:  No.  Because this is a deposition of

12    SPSS, Inc. that we noticed three months ago, and I want

13    to ask the witness and the corporate representative of

14    the company questions.  I'm not here to debate you on

15    various points.  I'm not here to go over your objections

16    which you can make when I ask questions of the witness.

17          Now, if you're going to direct him not answer,

18    then that's a point that I want to take up directly with

                           Page 7

053008CiroRoughASCII.TXT

19    Judge Darrah.  And I'd like to do that this morning

20    while we have the witness here.  If you're not going to

21    direct him, if you'll allow him to answer, we'll see

22    what his answer is and we'll proceed.

23        MR. WILLIAMS:  I am not going to allow him to

24    answer that question on two grounds.  First of all, it

JENSEN REPORTING  (312) 236-6936
ROUGH DRAFT                              9

1    goes directly to Topic No. 8 to which we timely

2    objected.  And in my Rule 37 meetings with Mr. Berndt,

3    it was agreed that this witness would not be questioned

4    on those -- on that topic.  Asking a witness about the

5    validity of the license agreement goes directly to Topic

6    No. 8, which is the enforceability.

7            The reason why we objected to that topic is

8    because it directly implicates attorney-client

9    privilege, and we are not waiving attorney-client

10    privilege.  And for that reason as well, I object to

11    it --

12        MR. BAUGHER:  If there's attorney-client privilege

13    and he can't answer because it would be subject to

14    attorney-client privilege, that's a different objection.

15    You didn't make that objection.

16        MR. WILLIAMS:  No.  I'm --

17        MR. BAUGHER:  And that's a ground on which

18    theoretically, at least, you could direct him not to

19    answer.  So what are you directing him to do?

20        MR. WILLIAMS:  I'm glad you give me the opportunity

21    to flesh out my comments and that --

Page 8

053008CiroRoughASCII.TXT

7    Q.    And up at the top at the right-hand corner in

8    the top, can you read that superscript to us, please.

9    A.    "Exhibit A to minutes of September 14th, 1977

10   special meeting of the board of directors of SPSS, Inc."

11   Q.    And then this Exhibit A is what is referred to

12   on the second page of the minutes, correct?

13   A.    Correct.

14   Q.    Now, do you have any knowledge that suggests

15   that there is anything about the signing or the

16   execution or the authenticity of Ciro Deposition

17   Exhibit 2 that causes you to believe that there is an

18   invalidity or authenticity issue with this exhibit?

19   MR. WILLIAMS:  Objection, compound, beyond the

20   scope of Rule 30- --

21   MR. BAUGHER:  Let me rephrase the question because

22   it was compound.

23   BY MR. BAUGHER:

24   Q.    Look at Ciro Deposition Exhibit 2 again.  Is

JENSEN REPORTING  (312) 236-6936
ROUGH DRAFT                                    26

1    there anything, any fact that you know about that

2    suggests that these board minutes and the exhibit

3    attached to the board minutes were not the regular and

4    executed determination of the board of directors of SPSS

5    as indicated in the document?

6    MR. WILLIAMS:  Objection, beyond the scope of

7    Rule 30(b)(6), implicating attorney-client privilege and

8    work product.  I instruct him not to answer.

9    MR. BAUGHER:  What's the work product objection?

Page 23

053008CiroRoughASCII.TXT

10    MR. WILLIAMS:  You've asked him about --

11    MR. BAUGHER:  This is a document from 1977.

12    MR. WILLIAMS:  You asked him quite a bit more than

13  that, though.  You asked him about whether he's come to

14  be aware of any facts that would go to enforceability of

15  the license agreement --

16    MR. BAUGHER:  I didn't use the word

17  "enforceability."

18    MR. WILLIAMS:  Well, I know you --

19    MR. BAUGHER:  In fact, I was trying to be sensitive

20  to your concern about not wanting to get to issues in

21  the lawsuit with the corporate representative of SPSS.

22    MR. WILLIAMS:  You've misstated my concern.  My

23  concern --

24    MR. BAUGHER:  No.  Your concern is you don't want

JENSEN REPORTING  (312) 236-6936
ROUGH DRAFT                            27


1  to actually get to what is at issue --

2    MR. WILLIAMS:  May I speak?

3    MR. BAUGHER:  -- between the parties.

4      Let's not spend time talking to one other.

5    MR. WILLIAMS:  I'm sorry, Mr. Baugher.  I have to

6  make a statement now for the record because you've

7  mischaracterized my position.

8      My position has nothing to do with the

9  relevance of the ultimate determination of issues.  My

10  position is that you are asking questions and you are

11  trying deliberately, I agree, to avoid the word

12  "enforceability" to go directly to the enforceability of

Page 24

053008CiroRoughASCII.TXT

13    the license agreement.  Topic No. 8 from your deposition

14    notice, which we objected to and which was not

15    challenged and was the discussion subject of discussions

16    on Rule 36 [sic] -- and there's correspondence where --

17    confirming that this will not be a topic for examination

18    today.  And I think it's improper for you to persist to

19    in trying to ask those questions.

20         MR. BAUGHER:  And you're directing him not to

21    answer the question?

22         MR. WILLIAMS:  The basis for the objection to

23    Topic 8 was attorney-client privilege and work product

24    doctrine, and that is the second objection.  You're

JENSEN REPORTING  (312) 236-6936

ROUGH DRAFT                           28

1    going beyond the scope of 30(b)(6).  It was represented

2    to Judge Darrah earlier this year that you would only be

3    asking him questions about the topics, and you're going

4    beyond those topics.  And I object to that.  I don't

5    think you should be doing that.  And I think that you

6    are also seeking to invade the attorney-client privilege

7    and work product doctrine.

8         MR. BAUGHER:  Will you mark this, please, as Ciro

9    Deposition Exhibit 3.

10                   (Ciro Deposition Exhibit No. 3 marked

11                       as requested.)

12    BY MR. BAUGHER:

13         Q.   Mr. Ciro, what is Ciro Deposition Exhibit 3?

14         A.   SPSS, Inc. special meeting of the board of

15    directors, September 14th, 1977, minutes from that

Page 25

053008CiroRoughASCII.TXT

18    Q.   Well, if we looked at your e-mail records,

19  given the way you typically communicate with people,

20  would we find others to whom you had sent copies of the

21  license agreement?  This is in the fall of 2002.

22    A.   I don't know.

23    MR. WILLIAMS:  Objection, form, speculation.

24    MR. BAUGHER:  Well, let's not have it be


JENSEN REPORTING  (312) 236-6936
ROUGH DRAFT                                    61


1  speculative.  Let's check that.  And those documents

2  should have been produced to us if they exist.  If they

3  don't exist, you don't have to produce them.

4    MR. WILLIAMS:  If you want to make a -- something

5  in writing --

6    MR. BAUGHER:  Well, no, I'm not going to make

7  something in writing --

8    MR. WILLIAMS:  Are you going to interrupt me?  Are

9  you going to interrupt me again, Mr. Baugher?

10    MR. BAUGHER:  No, because --

11    MR. WILLIAMS:  I mean, do I --

12    MR. BAUGHER:  Yes, I am going to interrupt you

13  because --

14    MR. WILLIAMS:  You say something to me

15  provocatively.  You don't allow me to respond.  But go

16  ahead.  And you can speak as long as you want and then

17  I'll respond.

18    MR. BAUGHER:  I shouldn't have to be asking the

19  witness to check for e-mails in the fall of 2002 in

20  which he sent copies of the license agreement to others.

Page 55

053008CiroRoughASCII.TXT

1  attorney-client privilege -- or you had an

2  attorney-client communication with concerning this

3  statement about Nie and Hull's ownership to all rights

4  in the SPSS trademark in July 2007 or subsequent?

5      MR. WILLIAMS:  I object to that question.  If you

6  want to ask him --

7      MR. BAUGHER:  I'm trying to lay the foundation.

8  You claim there's a privilege.

9      MR. WILLIAMS:  And I'm trying to work with you to

10  let you know what I think would be a fair question.  If

11  you want to ask him whether or not there were

12  attorney-client privilege communications relating to

13  ownership of the trademark starting in July of 2007, I

14  think that's a fair question.  I think it's a yes-or-no

15  question.

16  BY MR. BAUGHER:

17      Q.   Are you unable to answer as to the truth of

18  the statement about Nie and Hull's ownership to all

19  rights in the SPSS trademark after mid 2007 based on

20  information other than attorney-client privilege or work

21  product materials?

22      A.   I'm sorry.  I didn't understand that question.

23  Can you --

24      Q.   Do you know of anything that has happened with

JENSEN REPORTING  (312) 236-6936

ROUGH DRAFT                              87

1  respect to the trademark registration for SPSS after

2  July 2007?

3      A.   I know nothing --

Page 78

053008CiroRoughASCII.TXT

4      MR. WILLIAMS:  I'm going to object.

5      MR. BAUGHER:  No, he can answer that.

6      MR. WILLIAMS:  Well, you get to decide again?

7      MR. BAUGHER:  Come on.

8      MR. WILLIAMS:  Mr. Baugher, please just let me make

9  my objections and we can move on.

10          Here is my problem:  The topic of ownership of

11  the SPSS trademark was attorney-client privilege and

12  work product doctrine.  You're asking him to apply facts

13  to the law that would change that.  And I just think

14  that's privileged, and I don't think you have the right

15  to invade that with this or any other witness.

16          And I think that you're just trying to get

17  around it.  I think that if you can ask him whether or

18  not he can make a separation between attorney-client

19  communications with respect to the ownership of the mark

20  and work product and nonattorney-client communications

21  and work product, you know, I think that that is a

22  legitimate endeavor but -- and I would not object to you

23  asking those questions and having him answer those yes

24  or no.


JENSEN REPORTING  (312) 236-6936

ROUGH DRAFT                                88


1  BY MR. BAUGHER:

2      Q.   You're aware that there is a registration with

3  the Patent and Trademark Office of the SPSS mark

4  currently, correct?

5      A.   Yes.

6      Q.   Has anything happened with respect to the

Page 79

053008CiroRoughASCII.TXT

13  which I just read as part of the question an untrue

14  statement?

15      MR. WILLIAMS:  And I think that that implicates

16  attorney-client privilege and work product doctrine with

17  respect to an application of the facts of law --

18      MR. BAUGHER:  No.  I'm asking for facts.

19  BY MR. BAUGHER:

20      Q.   I'm not asking for any communication you've

21  received.  I'm asking for the company's knowledge of any

22  facts that occurred from July 2007 to the present that

23  make the second sentence just read into the record an

24  untrue statement.


                JENSEN REPORTING  (312) 236-6936
                       ROUGH DRAFT                        91


1       MR. WILLIAMS:  Mr. Baugher, is there any way that I

2   can convince you to stop interrupting me when I'm making

3   my objections?

4       MR. BAUGHER:  I'd like to have the witness answer

5   the question.

6       MR. WILLIAMS:  Okay.  I respectfully request again

7   that you not interrupt me when I'm making my objections.

8   You may conduct yourself as you deem appropriate.

9          My objection to that question was that I think

10  that the witness is being asked to apply facts to the

11  law on issues that are being litigated in this case.  I

12  don't think that that is an appropriate use of this

13  30(b)(6) deposition, I don't think, and I think it seeks

14  to invade the attorney-client privilege and the work

15  product doctrine.  I'm not going to let him answer that.

053008CiroRoughASCII.TXT
16  BY MR. BAUGHER:

17      Q.   What lawsuit were you expecting would ensue in

18  July 2007?

19      MR. WILLIAMS:  Objection, assumes facts that

20  haven't been elicited, foundation.

21          Go ahead.

22  BY THE WITNESS:

23      A.   I don't know of any lawsuit that would have

24  ensued.


JENSEN REPORTING  (312) 236-6936

ROUGH DRAFT                                    92


1       Q.   What lawsuit were you -- did you believe

2  you -- SPSS believe would ensue in August of 2007?

3       MR. WILLIAMS:  Same objections.

4  BY THE WITNESS:

5       A.   I believe that there would have been a

6  potential lawsuit with Hull and Nie over the trademark.

7       Q.   What would be the nature of the lawsuit?

8       A.   I don't know.  I don't know the specific

9  nature of it.

10      Q.   Well, what would it be about?

11      MR. WILLIAMS:  Objection, asked and answered.

12  BY MR. BAUGHER:

13      Q.   Go ahead.

14      A.   I don't know.  I don't know specifically what

15  it could have been about.

16      Q.   Did you have a communication with anyone in

17  August of 2007 about a possible lawsuit?

18      MR. WILLIAMS:  Let me just instruct the witness to

1          And I have tried to give adequate leeway
2     there, but it is becoming very frustrating as you
3     continue to go back to the current enforceability of the
4     license agreement, which is a topic that is not part of
5     this deposition.
6          MR. BAUGHER:  Reread the question for the witness,
7     please.
8                    (Record read as requested.)
9          MR. WILLIAMS:  I'm going to object.  I'm going to
10    instruct him not to answer at this point; going beyond
11    the scope of 30(b)(6) and attorney-client privilege.
12         MR. BAUGHER:  So you're not objecting on
13    attorney-client privilege or work product?
14         MR. WILLIAMS:  I have included that objection.
15         MR. BAUGHER:  Because he should only answer this
16    question if he used attorney-client --
17         MR. WILLIAMS:  How could SPSS breech the license
18    agreement?  I mean, how on earth does that relate to any
19    of these 30(b)(6) topics that are a proper subject
20    matter of this deposition?  It's becoming abusive,
21    Mr. Baugher.
22         MR. BAUGHER:  What is abusive is to have an
23    attorney who filed a lawsuit against Dr. Nie and
24    Mr. Hull based supposedly on a license agreement

053008CiroRoughASCII.TXT

1  concerning a trademark and to have the company's

2  representative here unwilling to explain or vouch for

3  the veracity of statements made in various public

4  documents and documents with representation.

5      But if you're directing him not to answer and

6  you're going to stand on that objection, then we'll

7  leave it at that.

8      MR. WILLIAMS:  I completely disagree with your

9  characterization.  Obviously, we have completed many

10 facts which support the estoppel argument that's being

11 made in connection with this case.  We've directed you

12 to those facts in connection with answers to

13 interrogatories.  And this deposition, I -- you're

14 totally sandbagging us by attempting not only to go

15 beyond the scope --

16     MR. BAUGHER:  By asking you the most fundamental

17 questions that spring from the complaint itself.

18     MR. WILLIAMS:  You just can't stop interrupting,

19 can you?  You just can't do it.

20     MR. BAUGHER:  Are you directing him not to answer

21 the question?

22     MR. WILLIAMS:  I really would like to finish what I

23 was saying.

24     MR. BAUGHER:  Just tell him -- Just give him his

JENSEN REPORTING  (312) 236-6936

ROUGH DRAFT                           108

1  direction.

2      MR. WILLIAMS:  See, I really am going to complete

3  my thought and my record, so you can continue to

Page 97

053008CiroRoughASCII.TXT

4    interrupt me as much as you like.  It's not going to

5    prevent me from making the record statements that I deem

6    to be appropriate in connection with the defense of this

7    deposition.

8              May I do that now with your permission?

9         MR. BAUGHER:  I'd like you to direct the witness,

10   if you're going to, not to answer the question and then

11   I'll ask him the next question.

12        MR. WILLIAMS:  I have already so directed the

13   witness --

14        MR. BAUGHER:  And you're standing on that?

15        MR. WILLIAMS:  What I am saying here, I hope

16   without interruption again, is that it is -- we are

17   being sandbagged with questions that go beyond the

18   scope.  You did not seek a witness to testify about the

19   facts pled in the lawsuit.  You are deposing an in-house

20   lawyer of the company on a topic outside of the scope of

21   30(b)(6), asking him to apply facts to law in connection

22   with the dispute and seeking legal conclusions from him.

23             And by and large you're focused on Topic No. 8

24   to which we objected and it was clearly stated in the


JENSEN REPORTING  (312) 236-6936

ROUGH DRAFT                                    109


1    correspondence that was exchanged that that would not be

2    a topic for this deposition here today.

3         MR. BAUGHER:  No one representing Dr. Nie or

4    Mr. Hull agreed to any limitation on questions to be

5    asked in writing or otherwise.

6              But if you're directing -- If you're standing

053008CiroRoughASCII.TXT

9  years we would defend somebody that has come in and

10  tried to use the SPSS mark.

11      Q.   What is entitled SPSS to use the mark since

12  1975 on its products and services is the license

13  agreement you have with the owners of the registration

14  correct?

15      MR. WILLIAMS:  Same objections.

16      A.   Say it again the SPSS mark has been something

17  that the company has used since 1975 we set production

18  direction an quality on that mark and we would defend if

19  anybody came in and tried to use that mark.

20      Q.   And the reason that SPSS has been able to use

21  the mark on its products since 1975 is is that the

22  company has a license agreement with the owners of the

23  mark right?

24      MR. WILLIAMS:  Mr. Baugher, the witness has


JENSEN REPORTING  (312) 236-6936

ROUGH DRAFT                                184


1  answered this very same question --

2      MR. BAUGHER:  No.  The witness is declining to

3  answer --

4      MR. WILLIAMS:  Are you going to interrupt me again?

5      MR. BAUGHER:  -- the question, and I'm not going to

6  let him do that.

7      MR. WILLIAMS:  Mr. Baugher, I would, first of all,

8  again ask you to please allow me to finish my comments

9  without interrupting me.  I know that's very hard for

10  you, but I would ask you to try and let me have my

11  chance.

Page 166

053008CiroRoughASCII.TXT

12          I think that asking him the same question
13    again and again and again and again does not advance any
14    of our interests or move this thing along.  If you want
15    to mark that question and submit it to the judge and
16    have the judge decide whether or not he's fairly
17    answered that question, that is your remedy at this
18    point.
19          The witness has answered the question in my
20    view, and I think you should move on because the witness
21    is not going to change his answer no matter how many
22    times you asked it here today.
23    BY MR. BAUGHER:
24        Q.    Mr. Ciro, I'm asking you to answer the


                  JENSEN REPORTING  (312) 236-6936
                        ROUGH DRAFT                          185


1    question that I put to you.
2        MR. WILLIAMS:  Same objections; the witness has
3    repeatedly answered the question.
4          Mr. Ciro, if you want to answer the question
5    one more time, go ahead.
6    BY THE WITNESS:
7        A.    SPSS has used this mark since 1975 on its
8    products we've set product quality product direction if
9    someone came in and was using this mark we would defend
10    this mark.
11        Q.    What entitled SPSS to use the SPSS mark on its
12    products?
13        MR. WILLIAMS:  Objection, asked and answered,
14    calling for a legal conclusion, beyond the scope of the
                        Page 167

053008CiroRoughASCII.TXT

1    MR. WILLIAMS:  Same objections, calling for opinion

2    testimony, legal conclusion.

3    BY THE WITNESS:

4    A.   Once the company -- Once the company

5    determined -- Once this dispute with Dr. Nie and

6    Mr. Hull occurred, the company did disclose the license

7    agreement in an 8-K.

8    Q.   Did you participate in making the judgment

9    that the license agreement should be disclosed?

10    MR. WILLIAMS:  In the 8-K?

11    MR. BAUGHER:  Yes.

12    MR. WILLIAMS:  I have an objection again.  Again,

13    this is the exact same situation we had with Request

14    No.  8.  We objected to this witness testifying about

15    the form 8-K.  We -- There's a letter from Mr. Berndt

16    saying that that issue is ripe for adjudication.  There

17    was no attempt to adjudicate it.  I think that you

18    should not be asking this witness about the form of the

19    case.

20    MR. BAUGHER:  Well, the witness is the one who said

21    that the license was disclosed in the 8-K.  My question

22    to him was whether he participated in the decision

23    making on whether or not that disclosure should be made

24    in the 8-K.

JENSEN REPORTING  (312) 236-6936

ROUGH DRAFT                              202

1    MR. WILLIAMS:  And the witness provided that answer

2    to questions where you were again outside the scope of

Page 182

053008CiroRoughASCII.TXT

3    the 30(b)(6) and the correspondence of the parties by

4    asking about public disclosures after the IPO and the

5    follow on offering.  And it's because of your violation

6    of that that we got into this area.

7         MR. BAUGHER:  Look, Ed, we're trying --

8         MR. WILLIAMS:  Ted.

9         MR. BAUGHER:  -- this lawsuit -- whatever your name

10   is --

11        MR. WILLIAMS:  Please call me by -- You don't have

12   to --

13        MR. BAUGHER:  This lawsuit is going to last

14   forever.  We're trying to get to the issues.  We're

15   talking -- I'm now following up on an answer that

16   Mr. Ciro gave with respect to a public filing in January

17   of 2008.  So let's just try to get the questions

18   answered.

19        MR. WILLIAMS:  I don't understand why you feel the

20   need to get questions answered which are not topics that

21   we have agreed --

22        MR. BAUGHER:  Are you directing him not to answer

23   that question?

24        MR. WILLIAMS:  -- won't be a subject matter of this

1    deposition?

2         MR. BAUGHER:  You're directing him not to answer?

3         MR. WILLIAMS:  What topic number does that relate

4    to?

5         MR. BAUGHER:  I just want to know if you're
                         Page 183

053008CiroRoughASCII.TXT

12    We don't have a general counsel within SPSS.

13         Q.   Okay.  So you talked to Fritz Thomas though

14    about the proposed assignment of the mark?

15         MR. WILLIAMS:  Caution the witness just to reveal

16    the subject matter of the conversation and nothing more.

17    BY THE WITNESS:

18         A.   I did talk to Fritz Thomas.

19         Q.   All right.  Is there anybody else that you

20    spoke with about the assignment of the mark other than

21    Noonan, Panza, McQuade, Rubin and Thomas?

22         A.   I don't believe so.

23         Q.   What did you do next?

24         A.   We had the assignment agreement created.

JENSEN REPORTING  (312) 236-6936

ROUGH DRAFT                                    227

1         Q.   How did you have the assignment agreement

2    created?

3         A.   I asked Mr. Rubin to create it.

4         Q.   You mean like write it?

5         A.   Like draft it I asked Mr. Rubin to draft the

6    assignment agreement.

7         Q.   And what were your instructions to him in

8    crafting drafting the trademark assign.

9         MR. WILLIAMS:  Objection attorney-client privilege

10   instruct him not to answer.

11        Q.   Did Mr. Rubin draft a trademark assign.

12        A.   He did.

13        Q.   And did it comply with your instructions as he

14   had drafted it?

Page 205

053008CiroRoughASCII.TXT

15    A.

16    MR. WILLIAMS:  I said hang on a second.  I need to

17    think about that one.  I'm going to object

18    attorney-client privilege I think you're trying to the

19    result of the question would get into attorney client

20    communications with respect to the nature of

21    communications instructions.

22    Q.    Did Mr. Rubin send you a draft?

23    A.    Yes, he did.

24    Q.    Did you review the draft?


JENSEN REPORTING   (312) 236-6936
ROUGH DRAFT                              228


1    A.    Yes, I did.

2    Q.    Did you approve it?

3    A.    Yes, I did.

4    Q.    Did it meet your expectations?

5    MR. WILLIAMS:  Same objection attorney-client

6    privilege instruct him not to answer.

7    Q.    Did you send the draft back to Mr. Rubin for

8    revisions or was it acceptable in the fashion in the

9    manner he delivered it to you?

10    A.    I don't recall if there was revisions back and

11    forth.

12    Q.    But ultimately there was a draft that you were

13    satisfied with?

14    A.    Yes.

15    Q.    Okay.  Mark mark 11?

16    Q.    Let me show you what's been marked as Ciro

17    Deposition Exhibit 11 document entitled trademark

053008CiroRoughASCII.TXT

JENSEN REPORTING  (312) 236-6936
ROUGH DRAFT                              242

⚥

1       Q.    Yes?
2       A.    By that time I had save add copy of the
3  license agreement on my computer so I could as a P D F
4  so I could forward it onto him did.
5       Q.    You also send that to Mr. Hull?
6       A.    I did not.
7       Q.    Why not?
8       A.    As I mentioned -- As I stated before, Dr. Nie
9  is the chairman of our board, so we wanted to talk to
10  Dr. Nie about this first.
11      Q.    Since the middle of 2007, just starting at
12  that point, what efforts has Mr. Nie made to enforce
13  various aspects of the license agreement?
14      A.    I don't believe he made any efforts to enforce
15  the license agreement until October November time frame
16  of 2007.
17      Q.    And what efforts had he immediate to enforce
18  the license agreement as of that date?
19      A.    He has asked to review product releases that
20  we're coming out with.
21      Q.    And that's something that the license
22  agreement provides for correct?
23      MR. WILLIAMS:  Objection, foundation.
24      A.    The license agreement does allow him to review


JENSEN REPORTING  (312) 236-6936
ROUGH DRAFT                              243
Page 219

053008CiroRoughASCII.TXT

1    the quality of the products that contain the SPSS name.

2        Q.    And the license agreement allows the licensors

3    to review other aspects of the company's use of the

4    trademark correct?

5        MR. WILLIAMS:  Objection, vague foundation.

6        A.    I believe the license agreement also lays them

7    to use to review marketing material that has the name

8    packaging.

9        Q.    And has SPSS complied with the request that

10   Dr. Nie has made?

11       A.    Yes we believe we have.

12       Q.    Well,, in fact, SPSS has declined to provide

13   Dr. Nie with the information that he asked for on newly

14   implemented kneetures of the company's software; isn't

15   that correct?

16       A.    No, it's not correct.

17       Q.    And isn't it correct that the company has

18   declined to provide him with bug lists an inventories of

19   the issues concerning the dimension 5.0 and the SPSS 16

20   software which was to be released?

21       A.    The company believes it has provided all the

22   information required --

23       Q.    No.  I've got a specific question for you.

24       MR. WILLIAMS:  No, no, no, no, no, sorry, sir.  You

JENSEN REPORTING  (312) 236-6936

ROUGH DRAFT                                    244

1    can interrupt me all day long.  You cannot interrupt

2    this witness.

                    Page 220

053008CiroRoughASCII.TXT

21    that Mr. Ciro has not been designated pursuant to Topic

22    13 of the defendant's 30(b)(6) notice to testify on the

23    form 8-K and we have -- We objected to that.

24              I will in the spirit of cooperation allow you

JENSEN REPORTING   (312) 236-6936

ROUGH DRAFT                        251

1    to ask him some questions with respect to that, but they

2    will only be with respect to his personal knowledge and

3    will not obviously be allowed to penetrate any

4    attorney-client privileges.

5    BY MR. BAUGHER:

6        Q.    You have read the form 8-K Ciro Deposition

7    Exhibit 12 at the end of 2007, correct?

8        A.    Yes, I believe so.

9        Q.    Did you see a draft of this 8-K before it was

10    issued on December 31st, 2007?

11        A.    Yes, I believe so.

12        Q.    And do you believe that the statements in item

13    8.01 other events are correct statements?

14        A.    Yes, I believe so.

15        Q.    The 8-K Ciro deposition Exhibit 12, describes

16    the agreement in the text do you see that?

17        A.    By the agreement I mean the license agreement.

18        A.    Yes.

19        Q.    Is its description of the license agreement a

20    correct description?

21        A.    Yes, I believe so.

22        Q.    Is it a complete description?

23        MR. WILLIAMS:   Objection, calls for speculation, a

Page 227

1      MR. BAUGHER:  That's all the questions I have for
2  this part of the SPSS corporate representative
3  deposition.  Obviously, we have some differences about
4  some of the topics that were denominated several months
5  ago.  And in addition to that, there will be other
6  topics that we want to examine the corporate
7  representatives of SPSS on.  But as to those topics that
8  we've gone in today, we're finished.
9      MR. WILLIAMS:  Okay.  Just in response to your
10  statement there, I'm certainly willing to discuss if you
11  have new topics that you want to designate on, and I
12  think that --
13      MR. BAUGHER:  Well, just so there's no surprise,
14  the broadest topic is that when we sent this notice out
15  which was before we even had our first meeting with
16  Judge Darrah we explicitly excluded or didn't put into
17  that anything about the finances of the company that
18  would go to damages for an infringement action because
19  obviously that's a -- that's its own substantial set of
20  topics and so we didn't list that because we thought we
21  could do this on a sequencing basis.
22      MR. WILLIAMS:  Well, we'll take those up, you know,
23  if you have new topics and respond appropriately.
24          I will have just a very few questions for this