IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SPSS Inc., ) | |
| ) | |
| Plaintiff/Counterdefendant, ) | |
| ) | Case No.  08 C 66 |
| v. ) | |
| ) | Judge John W. Darrah |
| Norman H. Nie and C. Hadlai Hull, ) | |
| ) | Magistrate Judge Arlander Keys |
| Defendants/Counterplaintiffs. ) | |

**DEFENDANT'S MOTION TO COMPEL
DISCOVERY AND RESPONSE TO MOTION FOR PROTECTIVE ORDER**

Norman H. Nie ("Nie"), by his attorneys, pursuant to Federal Rules of Civil Procedure 26 and 37 and Local Rule 37.2, moves this Court to compel Plaintiff SPSS Inc. ("SPSS") to (a) supplement its answers to Defendants' First Set of Interrogatories, and (b) produce additional documents in response to Defendants' First Request for Production of Documents.  Additionally, Nie asks this Court to deny SPSS's Motion for Protective Order (Docket No. 36).

**BACKGROUND**

This action arises from an attempt by SPSS, a company founded by Nie, to erase Nie's ownership of the trademark "SPSS" (the "Mark") and to terminate Nie's rights under a valid trademark License Agreement.  The Mark is owned by Nie, the registered owner of the Mark for more than 30 years.  SPSS acknowledged Nie's ownership of the Mark by filing for a renewal registration on his behalf as recently as 2002.  It is undisputed that Nie and SPSS entered into a License Agreement allowing SPSS to use the Mark in 1976, and that the License Agreement has never been amended, modified, or rescinded.  (A copy of the License Agreement is attached as Exhibit A.)

181604_1.DOC

SPSS initiated this action by filing a "Complaint for Declaratory Judgment," seeking an Order declaring "that Nie [is] estopped from enforcing any rights under the purported trademark license agreement and that SPSS shall be deemed to have an irrevocable, assignable and exclusive license to use the Trademarks." (Compl. ¶ 27.) Notably, SPSS does not seek an Order declaring that SPSS is the owner of the Mark, or that the License Agreement is null and void. Rather, SPSS hopes that the Court will declare that the License Agreement is not "enforceable." (SPSS Mot. for Protective Order, filed June 6, 2008, Docket No. 36.) In other words, SPSS apparently asks the Court to find that the License Agreement is in force, but all of the rights granted to Nie under the Agreement are vitiated.

SPSS has never stated a rationale – either factual or legal – supporting an Order that grants SPSS a license to use the Mark, but also prevents Nie from exercising any rights under that license. SPSS does not suggest that the Court should construe the terms of the Agreement, reform the Agreement, or declare that it was or should be deemed terminated. In sum, SPSS's request for relief and rationale for that request are puzzling. And SPSS refuses to clear up the mystery during discovery.

### THE OUTSTANDING DISCOVERY TO PLAINTIFF SPSS

SPSS has failed to respond to a host of Nie's discovery requests. This Motion addresses four instances where SPSS has refused to produce information, documents or testimony related to issues at the heart of this litigation, by: (1) failing to identify the owner of the Mark; (2) failing to explain why Nie may not enforce his rights under the License Agreement; (3) failing to produce documents reflecting complaints regarding the quality of SPSS products and SPSS's allocation of financial resources; and (4) failing to produce a witness in accordance with Rule 30(b)(6) to testify regarding whether the License Agreement is enforceable and on two additional topics. Taken together, a clear pattern emerges: SPSS, which brought this

2

matter to court and asked the court to decide the rights of the parties, now refuses to address or take a position on the core issues in this matter.

**I.    SPSS MUST RESPOND TO INTERROGATORY 1, AND IDENTIFY THE OWNER OF THE MARK.**

Nie owns the Mark. He is the registered owner of the Mark under a 2004 registration on file with the United States Patent and Trademark Office. (A copy of the Registration is attached as Exhibit B.) And SPSS's corporate representative, Anthony Ciro, conceded that Nie and C. Hadlai Hull, a co-founder of the company, owned the Mark as of July 2007. (Ciro Dep., attached in pertinent part as Exhibit C, at 84.) (Hull assigned his interest in the Mark to Nie in May 2008.) Counsel for SPSS, however, instructed Mr. Ciro not to answer questions about who owns the Mark today (or at any time after July 2007) on "work product" grounds. (Ex. C, Ciro Dep. at 87-88.)

> Interrogatory 1 simply asks:
>
> Identify the owner or owners of the Trademarks "SPSS" and "Statistical Package for the Social Sciences." If you contend SPSS is the owner of the Trademarks "SPSS" or "Statistical Package for the Social Sciences," explain any and all bases for that contention.

SPSS objects that this simple question is "overly broad and unduly burdensome," and states that its "investigation into the facts surrounding the issues addressed in this Interrogatory is on-going." (Resp. to Int. 1, attached as Exhibit D.) In later correspondence, SPSS asserts that it need not respond to contention interrogatories, like Interrogatory 1, until "discovery is near an end." (May 14, 2008 Letter from Panoff to Berndt, attached as Exhibit E, at 3.) SPSS's refusal to respond is a dodge to avoid conceding the obvious fact that Nie owns the Mark.

Courts in this District have routinely rejected SPSS's contention that, although it filed this action, it need not answer contention interrogatories until the close of discovery. SPSS, as the plaintiff, "certainly investigated the case before filing [its] complaint in order to have some

3

factual basis upon which to base its allegations, in compliance with Fed. R. Civ. P. 11." *Rusty Jones, Inc. v. Beatrice Co.*, 1990 WL 139145, at *2 (N.D. Ill. 1990) (granting motion to compel contention interrogatory regarding plaintiff's claims). Accordingly, there is no reason that SPSS should need discovery or further investigation before it states who owns the Mark. Indeed, the Seventh Circuit has endorsed the use of contention interrogatories after the pleading stage by parties that are "puzzled" by their opponent's legal theories. *Ryan v. Mary Immaculate Queen Center*, 188 F.3d 857, 860 (7th Cir. 1999) (noting that if a defendant is "truly puzzled" regarding the plaintiff's claims "he could always serve a contention interrogatory on the plaintiff"); *see also Pratt v. Tarr*, 464 F.3d 730, 733 (7th Cir. 2006). SPSS's puzzling Complaint is a perfect candidate for this discovery tool.

## II. SPSS MUST RESPOND TO INTERROGATORY 5, REGARDING WHETHER THE LICENSE AGREEMENT IS ENFORCEABLE, AND PRODUCE A 30(B)(6) WITNESS.

Interrogatory 5 also asks a simple question:

> Identify any and all reasons that you contend that Defendants are not entitled to all rights granted to them under the License Agreement.

Again, SPSS refuses to respond with any substance. Rather, SPSS objects on the grounds that the question is "overly broad" and "seeks to invade the attorney-client privilege and work product doctrine." (Resp. to Int. 5, attached as Ex. D.) SPSS generally refers to all pleadings SPSS has filed in this case. SPSS also refused to allow its corporate representative to testify to whether the License Agreement is enforceable. (Mot. for Protective Order, at 7-8.)

SPSS concedes that whether the license agreement is enforceable "is the very issue that SPSS seeks to resolve" through this action. (Mot. for Protective Order at 8.) Nevertheless, SPSS refuses to specify: (1) the relief it seeks; or (2) why it contends it is entitled to that relief. Rather, SPSS suggests its "views on the issue are clearly set forth in its complaint

4

(it is not enforceable)." (Mot. for Protective Order at 8.) We disagree. The Complaint does not use the word "unenforceable" – and asks for a declaration that SPSS has a "license" to use the Mark (suggesting, of course, that the license *is* enforceable). (Compl. ¶ 27.) The Complaint does not describe the terms of the "license" that SPSS seeks.

SPSS also asserts that the Complaint contains a "summary of the applicable facts," but the Complaint does not explain which facts SPSS believes are relevant to whether the License Agreement is enforceable. The Complaint also fails to describe why particular facts suggest the License Agreement is unenforceable. (Additionally, SPSS has not conceded that *all* facts relevant to the question of whether the License Agreement is enforceable are stated in the Complaint.) The Complaint is puzzling – and thus a contention interrogatory may be used to determine the basis for the Plaintiff's claims. *Ryan v. Mary Immaculate Queen Center*, 188 F.3d 857, 860 (7th Cir. 1999); *see also Pratt v. Tarr*, 464 F.3d 730, 733 (7th Cir. 2006). This Court should order SPSS to respond to Interrogatory 5.

Additionally, SPSS should produce a corporate representative to testify regarding whether the License Agreement is enforceable. The question of whether the Agreement is enforceable is a proper topic for a Rule 30(b)(6) deposition. *Canal Barge Co. v. Commonwealth Edison Co.*, 2001 WL 817853, at *2 (N.D. Ill. 2001) (compelling 30(b)(6) deposition regarding party's position on the interpretation of a contract). Indeed, the SPSS corporate representative, Tony Ciro, has already testified that he has no personal knowledge that the License Agreement was terminated or modified at any time. (Ex. C, Ciro Dep. at 35-37.) SPSS should allow Mr. Ciro to explain if SPSS contends the License Agreement is enforceable, and if not, why.

**III.    SPSS SHOULD PRODUCE DOCUMENTS REGARDING THE QUALITY OF SPSS PRODUCTS AND SPSS DECISIONS REGARDING ALLOCATION OF RESOURCES TO QUALITY CONTROL.**

For many years, Nie has protested SPSS's failure to take steps to maintain the quality and feature competitiveness of the SPSS family of products.  Since the filing of this action, SPSS has persistently refused to perform its obligation under Sections 3-6 of the License Agreement to allow Nie sufficient access to SPSS products to perform a review of the quality of those products.  In so doing, SPSS has repudiated the License Agreement.  (Am. Counterclaim.)

SPSS will undoubtedly assert – as it already has in its Answer to Nie's Amended Counterclaim – that Nie's complaints regarding the quality of SPSS products were and are unfounded.  (SPSS Response to Am. Counterclaim ¶¶ 25, 26, 29, 30, 41.)  Accordingly, a disputed issue of fact exists regarding the quality of SPSS products (and the allocation of SPSS financial resources that allowed the decline in quality).

Nie has requested documents from SPSS relating to these issues – but was rebuffed.  SPSS refuses to produce *any* documents reflecting complaints regarding the quality of SPSS products or the allocation of financial resources.  (SPSS Resp. to Req. for Production 19, 21, attached as Exhibit F.)  A "discovery request is relevant if there is any possibility that the information sought may be relevant to the subject matter of the action." *Machinery Movers, Riggers and Machinery Erectors, Local 136 Defined Contribution Pension Plan v. Fidelity and Deposit Co. of Mary*, 2007 WL 3120029, at *2 (N.D. Ill. 2007) *quoting Rubin v. Islamic Republic of Iran,* 349 F. Supp. 2d 1108, 1111 (N.D. Ill. 2004).  Information regarding complaints by others is obviously relevant to the validity of Nie's complaints.

SPSS bears the burden to demonstrate that its resistance to these requests is justified.  *Machinery Movers*, 2007 WL 3120029 at *2 (granting motion to compel document production, noting "the burden rests with the objecting party to show that a particular request is

6

improper"). SPSS makes no effort to justify its objections – it merely asserts that complaints by anyone other than Nie and Hull are "completely irrelevant." (Ex. E, May 14, 2008 Letter from Panoff to Berndt.) In light of the broad scope of discovery under the Federal Rules, SPSS's objection to production of these highly relevant documents cannot be sustained. *Machinery Movers*, 2007 WL 3120029 at *3 ("The Rules of Civil Procedure provide for discovery if there is a 'possibility' that the material sought will be relevant to an issue in the case.")

**IV.   SPSS SHOULD PRODUCE A RULE 30(B)(6) WITNESS TO TESTIFY REGARDING THE REQUEST FOR A TRADEMARK ASSIGNMENT AND RELATED FILING OF A FORM 8-K.**

Ignoring settled law regarding the scope of the attorney client privilege and the work product doctrine, SPSS refuses to provide *any* information regarding two important events that led to this dispute: (1) SPSS's attempt to hoodwink Nie into signing a "Trademark Assignment" in 2007 that would have released all of his rights to the Mark to SPSS[1]; and (2) SPSS's filing of a SEC Form 8K that harshly criticized Nie's requests for SPSS to perform under the License Agreement. (A copy of the December 31, 2007 Form 8K is attached as Exhibit G.) SPSS contends that all information and communications regarding these events are privileged. SPSS's position has been rejected, in harsh terms, by courts in this District.

In *Southern Illinois Laborers' and Employers Health and Welfare Fund v. Pfizer, Inc.*, 2007 WL 4557100, at *2 (N.D. Ill. 2007), the Court rebuked the Plaintiffs for refusing to disclose *facts* that the Plaintiffs' attorneys learned before filing suit. The court noted that "the disclosure of *facts* cannot be precluded simply because the facts were learned by an attorney." *Id.*, *citing Hickman v. Taylor*, 329 U.S. 495, 504 (1947). The court cited a host of decisions from

---

[1] In 2008, after filing this lawsuit, and under the guise of a request for completion of "standard" forms to SPSS employees, SPSS asked defendant Hull to sign an "SPSS Inc. Invention and Confidentiality Agreement" agreement that included a provision (Section 1.1) that called for any "trademarks" to be assigned to SPSS.

7

this District affirming those principles. *Id.* at n. 2, *citing Stewart v. Gen. Motors Corp.,* 1988 WL 6927 at *4 (N.D. Ill. Jan. 27, 1988) (holding that plaintiff is entitled to learn who has seen a copy of a privileged letter at issue, because "information about sources of information, who has worked on the documents, and who has possessed the documents" is not covered by the work product doctrine); *Patterson v. Burge,* 2007 WL 1317128 at *2 (N.D. Ill. May 4, 2007) (compelling plaintiff to testify as to any factual information of which he is aware regarding his case, regardless of whether that information was obtained in the course of his investigations, because "[f]actual information that [a plaintiff] has about [its] case ... is not protected work product")

SPSS's objections to Nie's 30(b)(6) topics ignore these bedrock principles. SPSS asserts that *all* facts and information regarding "SPSS's decision to request a trademark assignment from Defendants" are privileged. (Mot. for Protective Order at 8.) SPSS does not explain how, or why, the *facts* relating to that decision are privileged. For example, who made the decision to request a trademark assignment from Defendants? Who gave input? When was the decision made? Where did the factual information listed in the draft assignment come from? Were those facts verified? All of these questions seek facts that are not protected by the attorney client privilege or work product doctrine.

Likewise, SPSS claims that it cannot reveal any information regarding topic 13, "SPSS's actual or contemplated preparation and filing of Form 8-K's concerning the License Agreement, the Trademark Assignment, this lawsuit and/or Defendants' counterclaim." (Mot. for Protective Order at 8-9.) Again, SPSS asserts that all such information is privileged. SPSS ignores the non-privileged facts relating to the Form 8K's – who made the decision to file the 8K's? When was that decision made? Who drafted the 8K's? Where did the *facts* asserted in

8

the 8K's come from? Were the facts checked for accuracy? How? SPSS has offered no justification for its failure to provide a witness on these facts.

## CONCLUSION

For all of the foregoing reasons, Nie asks this Court to enter an Order: (1) directing SPSS to respond to Interrogatory No. 1; (2) directing SPSS to respond to Interrogatory No. 5; (3) directing SPSS to produce documents responsive to Requests 19 and 21; and (4) denying SPSS's Motion for Protective Order.

Dated: July 7, 2008

                                              Respectfully submitted,

                                              /s/William B. Berndt
                                              One of the Attorneys for Norman H. Nie and
                                              C. Hadlai Hull

Peter V. Baugher (baugher@sw.com)
William B. Berndt (berndt@sw.com)
Jennifer A. Waters (waters@sw.com)
Schopf & Weiss LLP
One South Wacker Drive, 28th Floor
Chicago, Illinois 60606
(312) 701-9300

Luther Orton (admitted *pro hac vice*)
Snyder Miller & Orton LLP
111 Sutter Street, Suite 1950
San Francisco, California 94104
(415) 962-4400

## CERTIFICATION PURSUANT TO LOCAL RULE 37.2

Pursuant to Local Rule 37.2, counsel for Nie hereby certifies that he has, in good faith, but unsuccessfully, attempted to resolve differences with SPSS's counsel regarding SPSS's discovery responses prior to filing this motion to compel.  William Berndt and Jennifer Waters, counsel for Nie, participated in a two-hour discovery conference by telephone with Edward Williams and Thomas Panoff, counsel for SPSS Inc.  The parties further discussed this matter through written correspondence, including a May 8, 2008 letter from William Berndt to Edward Williams, a May 14, 2008 letter from Thomas Panoff to William Berndt, and a May 29, 2008 letter from Edward Williams to William Berndt.

## **CERTIFICATE OF SERVICE**

I, William B. Berndt, an attorney, hereby state that I caused a copy of the attached

**Defendant's Motion To Compel Discovery And Response To Motion For Protective Order**

Was filed electronically with the Clerk of the Court using the CM/ECF system on this 7th day of

July, 2008, which will automatically send email notifications of such filing to registered parties.

>Robert J. Kriss
>Edward H. Williams
>Thomas V. Panoff
>Daniel K. Storino
>Mayer Brown LLP
>71 South Wacker Drive
>Chicago, Illinois 60606

>/s/William B. Berndt