# Exhibit A

## LICENSE AGREEMENT

This Agreement is effective February 1, 1975, by and between Norman H. Nie and C. Hadlai Hull (hereinafter referred to as LICENSOR) and SPSS, Inc., an Illinois corporation (hereinafter referred to as LICENSEE).

WHEREAS, LICENSOR has adopted and used the words SPSS and STATISTICAL PACKAGE FOR THE SOCIAL SCIENCES as trademarks and service marks for computer programs and computer programming services; and

WHEREAS, LICENSOR is the owner of the marks SPSS and STATISTICAL PACKAGE FOR THE SOCIAL SCIENCES; and

WHEREAS, LICENSEE is desirous of using said marks for computer programs and computer programming services, and for its trade name;

NOW, THEREFORE, in consideration of one dollar paid by LICENSEE to LICENSOR and of the mutual covenants contained herein, and other valuable considerations, it is agreed as follows:

1. LICENSOR hereby grants to LICENSEE the exclusive right and license to use the words SPSS and STATISTICAL PACKAGE FOR THE SOCIAL SCIENCES, hereinafter referred to as the LICENSED MARKS, as trademarks and service marks for computer programs and computer programming services throughout the entire world, including the right to grant non-exclusive sublicenses, subject to the terms of this Agreement.

2. LICENSOR hereby grants to LICENSEE the exclusive right and license to use any of the LICENSED MARKS as a trade name for the business of producing and distributing computer programs and computer programming services and hereby ratifies the adoption of LICENSEE's trade name, subject to the terms of this Agreement.

3. The nature of each of the goods and services on which the LICENSED MARKS are to be used by LICENSEE or any sublicensees shall have the approval of the LICENSOR.

4. LICENSOR will furnish or direct the LICENSEE and any sublicensee in the standards of quality for each of the goods and services on which the LICENSED MARKS are marked, and LICENSEE agrees to meet standards of quality so established by the LICENSOR and to insure that any sublicensee meets the same standards of quality. The LICENSOR shall be the sole judge of whether or not the LICENSEE and any sublicensee has met or is meeting the standards of quality so established.

5. LICENSEE agrees to allow LICENSOR's authorized agent at any and all times during regular business hours to enter the LICENSEE's premises where the goods and services are being manufactured and carried out to inspect the same, and to secure similar provisions from any sublicensee.

6. LICENSEE shall obtain the approval of LICENSOR with respect to all signs, labels, packaging material, advertising or the like bearing the LICENSED MARKS prior to the use thereof, and shall secure similar provisions from any sublicensee.

7.   LICENSEE agrees not to use a mark identical with or confusingly similar to the LICENSED MARKS except as permitted by the license herein granted, and to secure similar provisions from a sublicensee.

8.   If LICENSEE violates any provisions of this Agreement, LICENSOR may terminate the exclusive license granted herein, or if any sublicensee violates any provisions of this Agreement, LICENSOR may terminate, through LICENSEE if desired, the non-exclusive sublicense granted that sublicensee, by giving notice in writing to the LICENSEE of the violation. In the event that LICENSEE or its sublicensees do not correct or eliminate the violation within ninety (90) days from the date of receipt of said notice, the exclusive license or the non-exclusive sublicense respectively shall terminate at the end of said ninety (90) days.

9.   This Agreement shall terminate automatically, at the option of LICENSOR, in the event of receivership or bankruptcy of the LICENSEE.  LICENSEE shall secure a similar provision from any of its sublicensees.

10.  In the event of termination of this Agreement, LICENSEE agrees to discontinue immediately all use of the LICENSED MARKS and to deliver to LICENSOR, free of any charge, all signs, labels, packaging material, advertising or the like bearing the LICENSED MARKS that are then in the possession of LICENSEE, and LICENSEE shall secure similar provisions from

any sublicensee. LICENSEE further agrees to discontinue the use or any confusingly similar use of the LICENSED MARKS in LICENSEE's trade name.

11. LICENSEE agrees that nothing herein shall give the LICENSEE or any sublicensee any right, title or interest in or to the LICENSED MARKS (except the right to use the LICENSED MARKS in accordance with this Agreement), that the LICENSED MARKS are the sole property of the LICENSOR, and that any and all uses by the LICENSEE and the sublicensees of the LICENSED MARKS shall inure to the benefit of the LICENSOR. This paragraph shall survive the termination of this Agreement.

12. This Agreement is personal and may not be assigned by LICENSEE without the written consent of the LICENSOR.

13. This Agreement shall be construed in accordance with the laws of the state of Illinois.

IN WITNESS WHEREOF, the parties have signed this Agreement on the date(s) indicated below.

Date  30 Sept 76

NORMAN H. NIE

Date  30 SEP 76

C. HADLAI HULL

SPSS, INC.

Date  30 Sept 76

By

ATTEST:

SPSS 000004

# Exhibit B

Int. Cl.: 9

Prior U.S. Cls.: 21, 23, 26, 36 and 38

## United States Patent and Trademark Office

Reg. No. 2,864,243
Registered July 20, 2004

## TRADEMARK
### PRINCIPAL REGISTER

## SPSS

HULL, C. HADLAI (UNITED STATES INDIVI-
DUAL)
233 S. WACKER DRIVE 11TH FLOOR
CHICAGO, IL 60611 AND
NIE, NORMAN H. (UNITED STATES INDIVIDUAL)
233 S. WACKER DRIVE 11TH FLOOR
CHICAGO, IL 60611

FOR: COMPUTER SOFTWARE RECORDED ON
CD-ROM USED FOR STATISTICAL AND DATA
ANALYSIS AND SCIENTIFIC GRAPHING OF STA-
TISTICS AND INSTRUCTIONAL MANUALS SOLD
AS A UNIT, IN CLASS 9 (U.S. CLS. 21, 23, 26, 36 AND
38).

FIRST USE 6-0-1968; IN COMMERCE 6-0-1968.

SER. NO. 76-472,826, FILED 12-6-2002.

HEATHER THOMPSON, EXAMINING ATTORNEY

# Exhibit C

STATE OF ILLINOIS )
                  )  SS.
COUNTY OF COOK    )

### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| SPSS Inc., | ) |
| | ) |
| Plaintiff/Counterdefendant, | ) |
| | ) |
| vs. | ) Case No. 08 C 66 |
| | ) |
| Norman H. Nie and C. Hadlai Hull, | ) Judge John W. |
| | ) Darrah |
| Defendants/Counterplaintiffs. | ) |
| | ) Magistrate Judge |
| | ) Arlander Keys |

The deposition of ANTHONY CIRO, called by the
Defendants/Counterplaintiffs for examination, taken
pursuant to notice and pursuant to the Federal Rules of
Civil Procedure for the United States District Courts
pertaining to the taking of depositions, taken before
Monica Kim, Certified Shorthand Reporter, Registered
Professional Reporter, and Notary Public, at One South
Wacker Drive, 28th Floor, Chicago, Illinois, commencing
at 10:03 a.m. on the 30th day of May, A.D., 2008.

2

1     APPEARANCES:

2           MAYER, BROWN, LLP
            MR. EDWARD H. WILLIAMS
3           71 South Wacker Drive
            Chicago, Illinois 60606-4637
4           Phone:  (312) 701-7405

5                On behalf of the Plaintiff/Counterdefendant.

6

            SCHOPF & WEISS, LLP
7           MR. PETER V. BAUGHER
            One South Wacker Drive
8           28th Floor
            Chicago, Illinois 60606
9           Phone:  (312) 701-9300

10               On behalf of the Defendants/Counterplaintiffs;

11

12    ALSO PRESENT:  Ms. Melissa Robson

13

14                     *     *     *     *     *     *

15

16

17

18

19

20

21

22

23

24

|     |                                                           |
| --- | --------------------------------------------------------- |
| 1   | communications, analysis of work product.                 |
| 2   | BY MR. BAUGHER:                                            |

    3        Q.   Let's factor that out.  Let me ask you the

    4    question:  Up until the end of 2007, before the lawsuit

10:46:42  5    was filed, do you know of any facts that suggest that

    6    the license agreement was terminated?

    7        A.   I have no facts that it was terminated.

    8        Q.   And you believe it was not terminated?

    9        MR. WILLIAMS:  Objection, calls for speculation.

10:47:03 10    BY THE WITNESS:

   11        A.   I have no knowledge that it was terminated.

   12        Q.   Do you have any knowledge that the license

   13    agreement, Deposition Exhibit 1 and attached to

   14    Deposition Exhibits 2 and 3, was ever amended?

10:47:34 15        A.   Would you repeat that, please.  I'm sorry.

   16        Q.   Sure.  Do you have any knowledge or

   17    information that suggests to you that the license

   18    agreement, Deposition Exhibit 1, also attached to

   19    Deposition Exhibits 2 and 3, was ever amended?

10:47:48 20        MR. WILLIAMS:  I'm going to object; beyond the

   21    scope of 30(b)(6).  If you want him to testify about his

   22    personal knowledge prior to the commencement of this

   23    lawsuit, I would -- I'm fine with that; but without that

   24    limitation, I think you're going beyond 30(b)(6).

1   BY MR. BAUGHER:

2      Q.   All right.  With respect to the periods up

3   till the end of 2007, before the lawsuit, do you have

4   any knowledge of any amendment, supplementation, or

10:48:20  5   modification of the license agreement, Deposition

6   Exhibit 1?

7      MR. WILLIAMS:  Same objections.

8        But you can give your personal knowledge.

9   BY THE WITNESS:

10:48:28 10      A.   I have no personal knowledge.

11      Q.   Do you know of anyone at SPSS who would have

12   knowledge of any amendment, supplementation, or

13   modification of the license agreement, Deposition

14   Exhibit 1?

10:48:51 15      MR. WILLIAMS:  Objection, foundation, beyond

16   30(b)(6) notice.

17   BY THE WITNESS:

18      A.   I don't know.

19      Q.   That's my question.  Do you know of anyone at

10:49:01 20   the company who would have any knowledge of any

21   modification, supplementation, amendment of the license

22   agreement, Deposition Exhibit 1?

23      MR. WILLIAMS:  Same objections, asked and answered.

24

```
         1    BY THE WITNESS:

         2         A.   I don't know of anybody who would.

         3         Q.   Do you know of any facts that would suggest

         4    that the board of directors of SPSS, subsequent to

10:49:45 5    approval of this resolution that we've been looking at

         6    in Deposition Exhibits 2 and 3, on September 14th, 1977

         7    ever rescinded or modified its approval of the license

         8    agreement?

         9         MR. WILLIAMS:   Objection, beyond the scope of

10:50:07 10   Rule 30(b)(6), attorney-client privilege, and work

        11    product with respect to the time period after litigation

        12    was anticipated, which is July of 2007.

        13    BY MR. BAUGHER:

        14         Q.   Answer the question.

10:50:21 15        MR. WILLIAMS:   You can answer to the best of your

        16    personal knowledge with only information you acquired

        17    prior to July of 2007.

        18    BY THE WITNESS:

        19         A.   I have no personal knowledge that it has been.

10:50:31 20        Q.   Do you know of anyone at SPSS who knows any

        21    facts that would suggest that the SPSS board of

        22    directors subsequent to September 14th, 1977 rescinded

        23    or modified its approval of the license agreement,

        24    Deposition Exhibit 1?
```

1    the SPSS trademark?

2        A.    Specifically what we read in -- what I read in

3    5.16(c).

4        Q.    So SPSS stated in this loan agreement with

11:59:51  5    Foothill that, "Norman Nie and C. Hadlai Hull own all

6    rights to the SPSS trademark," correct?

7        A.    Correct.

8        Q.    Was that a true statement?

9        A.    I believe so.

12:00:06 10      Q.    Is that a true statement today?

11       MR. WILLIAMS:    Objection, attorney-client privilege

12    and work product with respect to Mr. Ciro's current

13    beliefs as to who owns all rights to the SPSS trademark.

14    BY MR. BAUGHER:

12:00:16 15      Q.    You can answer that question.

16       MR. WILLIAMS:    I instruct him not to answer.

17       MR. BAUGHER:    Read back the question, please.

18                (Record read as requested.)

19    BY MR. BAUGHER:

12:00:35 20      Q.    Let me rephrase the question.    At page 1584,

21    the last page of Ciro Deposition Exhibit 4, the company

22    states, "Norman Nie and C. Hadlai Hull own all rights to

23    the SPSS trademark."    Do you see that?

24       A.    I do.

```
          1   lawsuit was filed in January 2008 -- in which the

          2   statement, "Norman Nie and C. Hadlai Hull own all rights

          3   to the SPSS trademark," was an untrue statement?

          4       MR. WILLIAMS:  To address my work product and

12:03:38  5   attorney-client privilege objection, if you could make

          6   that July of '07, I would not object to that.

          7   BY MR. BAUGHER:

          8       Q.   Well, all right, I'll ask it:  Up to July

          9   2007, is the statement, "Norman Nie and C. Hadlai Hull

12:03:53 10   own all rights to the SPSS trademark," a true statement?

         11       MR. WILLIAMS:  Objection, beyond 30(b)(6).

         12          Go ahead and answer to the best of your

         13   ability.

         14   BY THE WITNESS:

12:04:02 15       A.   I'm not aware of any situation that would have

         16   made that statement untrue.

         17       Q.   Is it true?

         18       MR. WILLIAMS:  Same objections.

         19          You're limiting it for the same time period?

12:04:14 20       MR. BAUGHER:  Yes.

         21   BY THE WITNESS:

         22       A.   I believe so.

         23       Q.   What happened in July 2007 that changed the

         24   ownership of the SPSS trademark?
```

```
 1          MR. WILLIAMS:  Objection.  You're assuming things
 2     that have not been established and you're asking him,
 3     again, to -- You're seeking to invade the
 4     attorney-client privilege and work product doctrine.
 5              I instruct you not to answer.
 6              You're also beyond the scope of 30(b)(6).
 7     BY MR. BAUGHER:
 8          Q.   Is there anything that happened, any event
 9     that happened in July 2007 or afterwards that
10     affected -- Strike that.
11              Is there anything that took place in July 2007
12     or subsequently that makes this statement about Nie and
13     Hull's ownership to all rights in the SPSS trademark an
14     untrue statement?
15          MR. WILLIAMS:  Same objections; instruct him not to
16     answer.
17     BY MR. BAUGHER:
18          Q.   Do you know of any facts or circumstances that
19     would make this statement by the company that you say is
20     true at least up through mid 2007 untrue thereafter?
21          MR. WILLIAMS:  Objection, mischaracterizes prior
22     testimony, same objections; instruct him not to answer.
23     BY MR. BAUGHER:
24          Q.   Who is the person that you had an
```

12:04:41 (line 5)
12:04:59 (line 10)
12:05:19 (line 15)
12:05:31 (line 20)

284

1   UNITED STATES OF AMERICA   )
   NORTHERN DISTRICT OF ILLINOIS  )
2   EASTERN DIVISION         )   SS.
   STATE OF ILLINOIS        )
3   COUNTY OF COOK          )

4          I, Monica Kim, Certified Shorthand Reporter,

5   Registered Professional Reporter, and Notary Public, do

6   hereby certify that ANTHONY CIRO was first duly sworn by

7   me to testify to the whole truth and that the above

8   deposition was reported stenographically by me and

9   reduced to typewriting under my personal direction.

10          I further certify that the said deposition was

11   taken at the time and place specified and that the

12   taking of said deposition commenced on the 30th day of

13   May, A.D., 2008, at 10:03 a.m.

14          I further certify that I am not a relative or

15   employee or attorney or counsel of any of the parties,

16   nor a relative or employee of such attorney or counsel,

17   nor financially interested directly or indirectly in

18   this action.

19

20

21

22

23

24

285

1           In witness whereof, I have hereunto set my

2      hand and affixed my seal of office at Chicago, Illinois,

3      this 9th day of June, A.D., 2008.

4

5

6

7

8

9

10                          _____
                            MONICA KIM, CSR, RPR
11                          205 West Randolph Street
                            5th Floor
12                          Chicago, Illinois  60606
                            Phone:  (312) 236-6936

13

14

15     CSR No.  084-004606

16

17

18

19

20

21

22

23

24

# Exhibit D

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SPSS Inc., | ) | |
| | ) | |
| Plaintiff/Counterdefendant, | ) | Case No. 08 C 66 |
| | ) | |
| v. | ) | Judge John W. Darrah |
| | ) | |
| Norman H. Nie and C. Hadlai Hull, | ) | Magistrate Judge Arlander Keys |
| | ) | |
| Defendants/Counterplaintiffs. | ) | |

## PLAINTIFF'S RESPONSES TO DEFENDANTS'
## FIRST INTERROGATORIES TO SPSS INC.

Plaintiff SPSS Inc. ("SPSS"), by and through its attorneys, hereby submits these objections and responses to Defendants' First Interrogatories to SPSS Inc.

### GENERAL OBJECTIONS

1.    SPSS objects to these Interrogatories to the extent that they purport to impose obligations that exceed the requirements of applicable law, including the Federal Rules of Civil Procedure and any other applicable court order or rule.

2.    SPSS objects to these Interrogatories to the extent that they seek information protected from discovery by the attorney-client privilege, attorney work product doctrine, or any other applicable privilege or immunity from discovery. Any disclosure of information by SPSS would be inadvertent and would not be intended to constitute a waiver of any applicable privilege or immunity.

3.    SPSS's response to an Interrogatory does not constitute an admission of the facts or allegations stated and/or implied in a particular Interrogatory.

4.      These Responses are based on SPSS's current understanding of the Interrogatories and upon the knowledge, information, and beliefs SPSS has acquired to date.   Accordingly, SPSS reserves the right to supplement, revise, clarify, or correct these Responses and objections.

## OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS

1.      SPSS objects to Defendants' Definition No. 6 because the terms "SPSS Inc.," "the Company," and "SPSS" are defined in an overbroad fashion and would impose an undue burden on SPSS to identify, and inquire with, every entity listed in Definition No. 6.

2.      SPSS objects to Defendants' Definition No. 11 because the terms "relate" and "relating" are overbroad and would impose an undue burden on SPSS.

## INTERROGATORIES AND RESPONSES

SPSS incorporates each of its General Objections and its Objections to Definitions and Instructions into its Responses to each Interrogatory as if fully set forth therein.

**INTERROGATORY NO. 1:** Identify the owner or owners of the Trademarks "SPSS" and "Statistical Package for the Social Sciences."  If you contend SPSS is the owner of the Trademarks "SPSS" or "Statistical Package for the Social Sciences," explain any and all bases for that contention.

**ANSWER:**   SPSS objects to this Interrogatory on the grounds that it is overly broad and unduly burdensome.  SPSS's investigation into the facts surrounding the issues addressed in this Interrogatory is on-going.  SPSS will supplement its Response to this Interrogatory, if needed, at an appropriate time.

**INTERROGATORY NO. 2:** Identify all persons, including but not limited to any employees, officers, agents, attorneys, or auditors of the Company, who have reviewed the License Agreement or a copy of the License Agreement, and the dates on which they reviewed the License Agreement or a copy of the License Agreement, and the purpose of the review.

**ANSWER:**   SPSS objects to this Interrogatory on the grounds that it is vague, overly broad, unduly burdensome and is not reasonably calculated to lead to the discovery of admissible evidence.  Subject to and without waiving any objection, SPSS states that it is aware of the

2

following individuals who have seen or read the License Agreement:  attorneys for SPSS, Ray

Panza and Jack Noonan.

**INTERROGATORY NO. 3:** Identify the persons with knowledge regarding the following subjects, including their name, address, telephone number, and a description of their knowledge:

      a)     the 1978 Trademark Application and Registration;

      b)     the lapse of the registration of the Trademarks "SPSS" in 1999;

      c)     the 2004 Trademark Application and Registration;

      d)     any foreign registrations of the Trademarks "SPSS" and "Statistical Package for the Social Sciences";

      e)     any action to enforce the rights of Defendants and/or SPSS in the Trademarks "SPSS" and "Statistical Package for the Social Sciences" in the United States or internationally; and

      f)     the Trademark Assignment.

**ANSWER:**   SPSS objects to this Interrogatory on the grounds that it is overly broad,

unduly burdensome and not reasonably calculated to lead to the discovery of admissible

evidence. Subject to and without waiving any objections, SPSS states:

Subpart (a):   Aside from individuals identified in produced documents that relate to the

1978 Trademark Application and Registration, SPSS is not aware of any further individuals who

may have knowledge of the 1978 Trademark Application and Registration.

Subpart (b): In addition to individuals identified in produced documents that relate to the

lapse of the registration of the Trademarks "SPSS," since approximately October 2002, Anthony

Ciro has had some knowledge of the lapse of the registration of the Trademarks "SPSS."

Subpart (c): In addition to individuals identified in produced documents that relate to the

2004 Trademark Application and Registration, Anthony Ciro has some knowledge of the 2004

Trademark Application and Registration.

Subpart (d): In addition to individuals identified in produced documents that relate to SPSS's foreign registrations of the Trademarks "SPSS" and "Statistical Package for the Social Sciences," Anthony Ciro has some knowledge of SPSS's foreign registrations of the Trademarks "SPSS" and "Statistical Package for the Social Sciences."

Subpart (e): In addition to individuals identified in produced documents that relate to actions to enforce the rights of SPSS in the Trademarks "SPSS" and "Statistical Package for the Social Sciences," Anthony Ciro has some knowledge of actions to enforce the rights of SPSS in the Trademarks "SPSS" and "Statistical Package for the Social Sciences."

Subpart (f): Anthony Ciro, Erin McQuade, Ray Panza, Jack Noonan, C. Hadlai Hull, Norman Nie and E. Leonard Rubin.

**INTERROGATORY NO. 4:** Identify all communications regarding the Trademark Assignment, including but not limited to any oral communications regarding the Trademark Assignment. With regard to each communication, identify the persons involved in the communication, the date of the communication, and the substance of the communication.

**ANSWER:** SPSS objects to this Interrogatory on the grounds that it is overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and seeks to invade the attorney-client privilege and work product doctrine. With respect to written communications, SPSS will produce in accordance with Rule 33(d) documents reflecting communications between Defendants and SPSS regarding the Trademark Assignment. With respect to oral communications, SPSS states that Ray Panza and Norman Nie had a phone conversation during which Nie agreed to sign the Trademark Assignment. After some time, however, and despite Nie's statement to Panza that he would sign the Trademark Assignment, Nie informed SPSS that he was no longer willing to sign the Trademark Assignment unless SPSS paid approximately $20 million. SPSS is not aware of any other non-privileged communications regarding the Trademark Assignment.

4

**INTERROGATORY NO. 5:** Identify any and all reasons that you contend that Defendants are not entitled to all rights granted to them under the License Agreement.

**ANSWER:**    SPSS objects to this Interrogatory on the grounds that it is overly broad, unduly burdensome and seeks to invade the attorney-client privilege and work product doctrine. Without waiving any objection, SPSS refers Defendants to its Complaint and its Answer to Defendants' Counterclaim, which summarize the basis for SPSS's contention that Defendants are not entitled to enforce the License Agreement.

**INTERROGATORY NO. 6:** Describe any and all breaches of the License Agreement by Defendants.

**ANSWER:**    SPSS objects to this Interrogatory on the grounds that it is overly broad and unduly burdensome.  Without waiving any objection, SPSS states that Defendants never established any standards of quality for goods and services using the trademark, in violation of Paragraph Four of the purported License Agreement.  Investigation continues.

**INTERROGATORY NO. 7:** Identify the location of the License Agreement or any copies of the License Agreement from 1975 to the present.

**ANSWER:**    SPSS objects to this Interrogatory on the grounds that is overly broad and unduly burdensome.  Without waiving any objection, SPSS states that in March 2008 it discovered a copy of the License Agreement attached to a document appearing to be the minutes of a special meeting of the Board of Directors on September 14, 1977.  SPSS further states that in approximately October 2002, Anthony Ciro located a copy of the License Agreement in a filing cabinet in a storage room on the ninth floor of its headquarters, located at 233 South Wacker Drive, Chicago, Illinois.   Copies of the file in which it was contained and the surrounding files will be produced at a mutually agreeable time and place. Copies of a document appearing to be the minutes of the September 14, 1977 special meeting of the Board of Directors will also be produced at a mutually agreeable time and place.  The storage room in which

5

Anthony Ciro located the copy of the License Agreement contains seven filing cabinets and additional document storage on shelves and in boxes. The specific filing cabinet where the document was found is used infrequently by SPSS and contains many other historical SPSS documents. The documents in the filing cabinet are not organized in any systematic manner and many of the documents are in poor condition due to their age.

Dated: April 2, 2008

SPSS INC.

By:_____

One of its attorneys

Robert J. Kriss
Edward H. Williams
Thomas V. Panoff
Daniel K. Storino
MAYER BROWN LLP
71 South Wacker Drive
Chicago, Illinois 60606
(312) 782-0600

## VERIFICATION

I, Anthony Ciro, Associate General Counsel of SPSS Inc., declare that the foregoing **PLAINTIFF'S RESPONSES TO DEFENDANTS' FIRST INTERROGATORIES TO SPSS INC.** are true and correct to the best of my knowledge, information, and belief, including information within my personal knowledge and information provided to me by others at SPSS Inc., which I believe to be reliable and correct.

Dated: April 2, 2008

_____
Anthony Ciro

## CERTIFICATE OF SERVICE

I, Thomas V. Panoff, an attorney, certify that I caused a copy of the foregoing **PLAINTIFF'S RESPONSES TO DEFENDANTS' FIRST INTERROGATORIES TO SPSS INC.** to be served on April 2, 2008 by fax and U.S. mail to the attorneys listed below.

Peter V. Baugher
William B. Berndt
Jennifer A. Waters
Schopf & Weiss LLP
One South Wacker Drive
28th Floor
Chicago, Illinois 60606

Luther Orton
Snyder Miller & Orton LLP
111 Sutter Street, Suite 1950
San Francisco, California 94104

_____
Thomas V. Panoff

# Exhibit E

MAYER·BROWN

Mayer Brown LLP
71 South Wacker Drive
Chicago, Illinois 60606-4637

Main Tel (312) 782-0600
Main Fax (312) 701-7711
www.mayerbrown.com

May 14, 2008

**Thomas V. Panoff**
Direct Tel (312) 701-8821
Direct Fax (312) 706-8297
tpanoff@mayerbrown.com

BY E-MAIL

William B. Berndt
Schopf & Weiss LLP
One South Wacker Drive
28th Floor
Chicago, IL 60606

Re:     *SPSS Inc. v. Nie and Hull, No. 08 C 66 (N.D. Ill.)*

Dear Will:

I am writing in response to your letter from May 8, 2008, and to clarify several items we discussed during our telephone conferences on April 29 and May 1, 2008.

Defendants' Document Requests

As a general matter, you have yet to explain during any of our telephone conferences or in any of your correspondence how the information you seek prior to the discovery of the License Agreement in approximately October 2002 is relevant to any claims or defenses in this litigation. There is no evidence or indication in the discovery responses or pleadings that Defendants or anyone at SPSS knew about the License Agreement from shortly after it was executed to approximately October 2002. In fact, Defendants state in their pleadings that they forgot about the License Agreement until May 2007 when SPSS asked Dr. Nie for an assignment. Until after "remembering" the existence of the License Agreement, Defendants never attempted to enforce any purported rights they possessed under the License Agreement. Accordingly, the only relevant discovery issue during this time period is whether Defendants made misrepresentations relating to the License Agreement and/or the Trademarks in connection with public filings effectuating the IPO and follow-on offering.

In your May 8th letter, you also propose December 31, 2007 as the date after which neither party will be required to log communications related to the litigation. SPSS believes this date should be earlier as, at least from its perspective, litigation was contemplated earlier than that. We should discuss this further as we discuss the extent and timing of privilege logs.

You also mention in your May 8th letter that SPSS intended to complete its document production by May 9, 2008. As Ted Williams stated in his prior email to you, we did set May 9 as a target date for our production, but we made it clear that that date was only a target. The second installment of our document production was sent to you on May 12, 2008. We are also continuing our review of emails and will produce responsive, non-privileged emails and any other responsive, non-privileged documents as soon as we can complete our review. We assume that this general timing is acceptable to you as we received another installment last week of

Mayer Brown LLP

William B. Berndt
May 14, 2008
Page 2

Defendants' document production. I believe you mentioned on the phone to Ted Williams that Defendants' document production is now complete, but please confirm this fact.

In discussing Defendants' Document Request Nos. 9-13, which seek documents involving registrations and applications relating to the trademarks, and attempts to enforce rights under the trademarks, you state in your May 8th letter that "SPSS has not confirmed whether or not it will search for and produce non-privileged documents responsive to these requests." In addition to the undertakings originally identified in SPSS's Specific Responses to Request Nos. 9-13, SPSS will search for and produce non-privileged documents that are responsive to Request Nos. 9-13, if any.

For Request Nos. 15-17, which seek documents involving the IPO, follow-on offering, and other SEC filings, SPSS agrees to the addition of the phrase "to the extent that they refer or relate to the License Agreement or the Trademarks." Subject to this addition, and in addition to the undertakings originally identified in SPSS's Specific Responses to Request Nos. 15-17, SPSS will search for and produce non-privileged documents responsive to these requests, if any.

Regarding Request No. 18, which seeks documents involving "complaints or expressions of concern" by Defendants about the "quality and/or functionality" of SPSS products, we want to clarify our position so that there is no confusion. The record establishes that neither Defendant attempted to exercise any quality control pursuant the License Agreement until October 2007. Indeed, they have admitted that they had completely forgotten about the License Agreement until SPSS requested an assignment from Dr. Nie in May 2007. SPSS will produce documents involving any attempt by Defendants to exercise quality control pursuant the License Agreement, the earliest example of which was in October 2007.

Regarding Request Nos. 19-21, which seek documents about quality and/or functionality concerns about SPSS products and financial resources allocated thereto, you state that "SPSS refuses to produce documents responsive to these requests on the grounds stated in its responses. The parties' dispute regarding these requests is ripe for review by the Court." With respect to Request Nos. 19 and 21, we agree; any "quality concerns" or "financial resource allocation" issues raised by persons other than Defendants pursuant to the License Agreement are completely irrelevant. With respect to Request No. 20, we will search for and produce documents from October 2007 to present where Defendants addressed allocation of financial resources in connection with raising a quality issue pursuant to the License Agreement, if any.

Defendants' Interrogatories

In discussing Defendants' Interrogatory No. 1 to SPSS, which asks SPSS to identify the "owner or owners of the Trademarks," you state in your May 8th letter that "SPSS will not answer Interrogatory 1 at this time. The question of whether SPSS must answer Interrogatory 1, a contention interrogatory, is ripe for review by the Court." SPSS reaffirms its initial response to this interrogatory, but would like to reiterate to Defendants that its investigation into the facts at issue in this interrogatory is still continuing and SPSS will supplement its response if needed. As

Mayer Brown LLP

William B. Berndt
May 14, 2008
Page 3

we articulated during our calls, SPSS believes that it would be a waste of judicial resources to seek the Court's review of this issue at this point in the litigation because contention interrogatories should generally be deferred until discovery is near an end. *Ziemack v. Centel Corp.*, 1995 WL 729295, at *2 (N.D. Ill. Dec. 7, 1995) ("The general policy is to defer contention interrogatories until discovery is near an end, in order to promote efficiency and fairness."). In our case, discovery is just beginning.

For Interrogatory Nos. 2, 3, and 7, which ask SPSS to identify SPSS employees who have reviewed the License Agreement and have knowledge regarding certain events related to the License Agreement and Trademark, you state in your May 8th letter that "SPSS suggests that, after a reasonable search, it cannot locate any individuals within the company with knowledge of a series of events prior to 2002, including the drafting and approval of the License Agreement, the 1978 Trademark Application and Registration, and the lapse of the registration of the Trademarks in 1999. Additionally, SPSS has not located any individuals with knowledge of the location of the License Agreement before 2002, or any person's review of the License Agreement prior to 2002" and then ask SPSS to confirm this statement. SPSS confirms that statement. SPSS is not aware of any individual at SPSS with knowledge of the items listed above other than Defendant Hull.

Defendants' Rule 30(b)(6) Deposition Notice

As we mentioned during our telephone conferences, SPSS designates Tony Ciro as its Rule 30(b)(6) witness. SPSS stands by its original responses to Topic Nos. 1, 3, and 4, which pertain to the 1978 Trademark Application and Registration, SPSS's possession of the License Agreement, and the lapse of the registration in 1999. SPSS believes that the documents it has produced, and will produce, sufficiently reflect the information Defendants seek in Topic Nos. 1, 3, and 4. Defendants are free to ask Tony Ciro during the Rule 30(b)(6) deposition about documents responsive to Topic Nos. 1, 3, and 4 that have been produced. For Topic No. 13, which pertains to SPSS's preparation of Form 8Ks discussing the Trademark and this lawsuit, SPSS stands by its original response.

SPSS's response to Defendants' Amended Matter for Examination No. 12 is as follows:

> **Amended Matter for Examination No. 12:**
>
> The basis for SPSS's annual 10K filings concerning the SPSS trademark and the License Agreement.
>
> **Amended Response:**
>
> SPSS objects to this Matter for Examination on the grounds that it requests information protected from discovery by the attorney-client privilege and attorney work product doctrine and is vague, ambiguous, overly broad,

Mayer Brown LLP

William B. Berndt
May 14, 2008
Page 4

       unduly burdensome and not reasonably calculated to lead to the discovery
       of admissible evidence.

As we indicated during our telephone conference, SPSS is willing to designate a Rule 30(b)(6) witness to discuss its public filings for the IPO and follow-on offering concerning the SPSS trademark and License Agreement. Defendants' request for a corporate designee to testify to all of SPSS's annual 10K filings concerning the SPSS trademark and License Agreement, however, is unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence, in addition to the other objections noted above.

We will submit Tony Ciro for deposition only once. As we have explained, he is by far the person most knowledgeable regarding most of your Rule 30(b)(6) topics, and it would be unfair for him to be subjected to a second deposition on those very same topics at some future date. He will not be produced for deposition twice, first as a Rule 30(b)(6) and then as a Rule 30 general fact witness. You should ask him all of the questions you have for him during your one-day deposition of him.

<u>Defendants' Responses to SPSS' Document Requests</u>

In Defendants' Amended Response to SPSS's Document Request No. 6, which seeks documents referring to Defendants' use of the Trademarks in a capacity other than through SPSS Inc. prior to 1992, you object based on the grounds that the documents SPSS seeks "are already in the possession, custody or control of SPSS Inc." In our telephone conferences, you yourself repeatedly stated that this is not a valid objection under the Federal Rules of Civil Procedure in discussing SPSS's responses to Defendants' document requests. Accordingly, please promptly produce any non-privileged documents responsive to Request No. 6.

Also, we would like to confirm that Defendants will actually produce all responsive, non-privileged documents for those of SPSS's Documents Requests for which Defendants state an objection and then state, "Subject to and without waiving these objections stated above, Nie and Hull will produce any such non-privileged documents in their possession, custody, or control," or something similar.

We look forward to receiving the information referenced above and to resolving the remaining discovery issues that exist. Please do not hesitate to contact me if you have any questions.

Sincerely,

Thomas V. Panoff

cc: Luther Orton

# Exhibit F

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| SPSS Inc., | ) | |
| | ) | |
| Plaintiff/Counterdefendant, | ) | Case No. 08 C 66 |
| | ) | |
| v. | ) | Judge John W. Darrah |
| | ) | |
| Norman H. Nie and C. Hadlai Hull, | ) | Magistrate Judge Arlander Keys |
| | ) | |
| Defendants/Counterplaintiffs. | ) | |

## PLAINTIFF'S RESPONSES TO DEFENDANTS' REQUESTS
## FOR PRODUCTION OF DOCUMENTS TO SPSS INC.

Plaintiff SPSS Inc. ("SPSS"), by and through its attorneys, hereby submits these objections and responses to Defendants' First Requests for the Production of Documents.

### GENERAL OBJECTIONS

1.     SPSS objects to these Requests to the extent that they purport to impose obligations that exceed the requirements of applicable law, including the Federal Rules of Civil Procedure and any other applicable court order or rule.

2.     SPSS objects to these Requests to the extent that they seek the production of documents protected from discovery by the attorney-client privilege, attorney work product doctrine, or any other applicable privilege or immunity from discovery. Any production of such documents by SPSS would be inadvertent and would not be intended to constitute a waiver of any applicable privilege or immunity. In addition, Mayer Brown LLP was retained by SPSS to provide various legal services in or around November 2005 and has represented SPSS in connection with this dispute. SPSS objects to producing a privilege log of materials prepared by, for, or at the request of Mayer Brown LLP in connection with this dispute. SPSS will produce a

privilege log to the extent that there are privileged documents that were not prepared by, for, or at the request of Mayer Brown LLP in connection with this dispute.

3.    SPSS objects to these Requests to the extent that they purport to require the production of documents, things, or information in the possession, custody, or control of any person or entity other than SPSS. SPSS responds to these Requests based on documents, things, and information presently in SPSS's possession, custody, and control.

4.    SPSS expressly reserves all objections to the relevance, authenticity, or admissibility of any document sought by the Requests.

5.    SPSS's response that it will produce the documents sought by a Request does not constitute an admission that it actually possesses the documents requested or that such documents exist, nor does it constitute an admission of the facts or allegations stated and/or implied in a particular Request.

## OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS

1.    SPSS objects to Defendants' Definition No. 3 because the terms "SPSS Inc.," "the Company," and "SPSS" are defined in an overbroad fashion and would impose an undue burden on SPSS to identify, inquire with, and produce relevant documents from, every entity listed in Definition No. 3.

2.    SPSS objects to Defendants' Definition No. 9 because the terms "relate" and "relating" are vague, ambiguous, and overbroad, and would impose an undue burden on SPSS to identify, locate, and produce all such documents as defined in Definition No. 9.

3.    SPSS objects to Instruction No. 1 to the extent that it seeks documents protected by the attorney-client privilege, attorney work product doctrine, or any other applicable privilege or immunity from discovery.

2

## REQUESTS FOR PRODUCTION AND RESPONSES

SPSS incorporates each of its General Objections and its Objections to Definitions and Instructions into its Responses to each Request for Production as if fully set forth therein.

**REQUEST NO. 1:**   All documents referring or relating to the License Agreement.

**RESPONSE:** SPSS objects to this Request on the grounds that it is overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving any objection, SPSS will produce at a mutually agreeable time and place the License Agreement, any correspondence between Defendants and SPSS that references the License Agreement and any SPSS board minutes referencing the License Agreement.

**REQUEST NO. 2:**   All documents referring or relating to the location of any and all copies of the License Agreement from 1975 to the present.

**RESPONSE:** SPSS objects to this Request on the grounds that it is overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving any objection, SPSS will produce at a mutually agreeable time and place the file where the License Agreement was found by Anthony Ciro in approximately October 2002 and any SPSS board minutes referencing the License Agreement.

**REQUEST NO. 3:**   All documents referring or relating to any persons who have had possession of a copy of the License Agreement.

**RESPONSE:** SPSS objects to this Request on the grounds that it is overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving any objection, SPSS will produce at a mutually agreeable time and place the file where the License Agreement was found by Anthony Ciro in approximately October 2002 and any SPSS board minutes referencing the License Agreement.

3

**REQUEST NO. 4:**　All documents referring or relating to the review of the License Agreement by any person.

**RESPONSE:** SPSS objects to this Request on the grounds that it is vague, overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence and seeks information protected from disclosure by the attorney-client privilege and attorney work product doctrine.

**REQUEST NO. 5:**　All documents referring or relating to the approval of the License Agreement by the Board of Directors of the Company.

**RESPONSE:** SPSS objects to this Request on the grounds that it is unduly burdensome and overly broad.　Subject to and without waiving any objection, SPSS will produce at a mutually agreeable time and place any SPSS board minutes referring to the approval of the License Agreement.

**REQUEST NO. 6:**　All documents referring or relating to the approval of the License Agreement by the Company.

**RESPONSE:** SPSS objects to this Request on the grounds that it is vague and ambiguous as to the meaning of the phrase "approval of the License Agreement by the Company" and is unduly burdensome, overly broad and not reasonably calculated to lead to the discovery of admissible evidence.　Subject to and without waiving any objection, SPSS will produce at a mutually agreeable time and place any SPSS board minutes referring to the approval of the License Agreement.

**REQUEST NO. 7:**　All documents referring or relating to the ownership of the Trademarks.

**RESPONSE:** SPSS objects to this Request on the grounds that it is overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving any objection, SPSS will produce at a mutually agreeable time and place trademark applications, other public filings referring to the registration of the

4

Trademarks, and SPSS financing or security interest documents referring to ownership of the Trademarks.

**REQUEST NO. 8:**    All documents referring or relating to the value of the Trademarks.

**RESPONSE:** SPSS objects to this Request on the grounds that it is vague, ambiguous, overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving any objection, SPSS is not aware of any documents responsive to this Request.

**REQUEST NO. 9:**    All documents referring or relating to any registration of the Trademarks.

**RESPONSE:** SPSS objects to this Request on the grounds that it is unduly burdensome, overly broad and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving any objection, SPSS will produce at a mutually agreeable time and place trademark applications and registrations issued by governmental entities.

**REQUEST NO. 10:**    All documents referring or relating to attempts to enforce rights to the Trademarks.

**RESPONSE:** SPSS objects to this Request on the grounds that it is overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving any objection, SPSS will produce at a mutually agreeable time and place correspondence and documents filed by SPSS with courts and other adjudicatory entities with respect to alleged infringement of the Trademarks.

**REQUEST NO. 11:**    All documents referring or relating to any foreign registration of the Trademarks

**RESPONSE:** SPSS objects to this Request on the grounds that it is unduly burdensome, overly broad and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving any objection, SPSS will produce at a mutually agreeable time

5

and place any foreign trademark applications and registrations issued by foreign governmental entities.

**REQUEST NO. 12:**  All documents referring or relating to 1978 Trademark Application and Registration.

**RESPONSE:** SPSS objects to this Request on the grounds that it requests documents protected from discovery by the attorney-client privilege and attorney work product doctrine and is unduly burdensome, overly broad and not reasonably calculated to lead to the discovery of admissible evidence.  Subject to and without waiving any objection, SPSS will produce at a mutually agreeable time and place the 1978 Trademark Application and Registration.

**REQUEST NO. 13:** All documents referring or relating to the 2004 Trademark Application and Registration.

**RESPONSE:** SPSS objects to this Request on the grounds that it requests documents protected from discovery by the attorney-client privilege and attorney work product doctrine and is unduly burdensome, overly broad and not reasonably calculated to lead to the discovery of admissible evidence.  Subject to and without waiving any objection, SPSS will produce at a mutually agreeable time and place the 2004 Trademark Application and Registration.

**REQUEST NO. 14:**  All documents reflecting or referring to the incorporation of SPSS Inc., as an Illinois corporation, in 1975.

**RESPONSE:** SPSS objects to this Request on the grounds that it requests documents protected from discovery by the attorney-client privilege and attorney work product doctrine and is overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.  Subject to and without waiving any objection, SPSS will produce at a mutually agreeable time and place the 1975 Certificate of Incorporation.

**REQUEST NO. 15:** All documents reflecting or referring to the conversion of SPSS Inc., an Illinois corporation, into a Delaware corporation in 1993 and the subsequent initial public offering of the Delaware corporation, also in 1993.

6

**RESPONSE:** SPSS objects to this Request on the grounds that it requests documents protected from discovery by the attorney-client privilege and attorney work product doctrine and is overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.  Subject to and without waiving any objection, SPSS will produce at a mutually agreeable time and place the documents effectuating the conversion of SPSS into a Delaware corporation in 1993.

**REQUEST NO. 16:**  All documents reflecting or referring to the preparation or review of any filing with the Securities and Exchange Commission authorized or signed by either of the Defendants during 1992-1994.

**RESPONSE:** SPSS objects to this Request on the grounds that it requests documents protected from discovery by the attorney-client privilege and attorney work product doctrine and is overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.  Subject to and without waiving any objection, SPSS will produce non-privileged documents relating to its public filings during 1992 to 1994 to the extent that they refer to the License Agreement or ownership of the Trademark.

**REQUEST NO. 17:**  All documents reflecting or referring to the 1994 follow-on public offering of securities made by the Company.

**RESPONSE:** SPSS objects to this Request on the grounds that it requests documents protected from discovery by the attorney-client privilege and attorney work product doctrine and is overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.  Subject to and without waiving any objection, SPSS will produce non-privileged documents from its 1994 follow-on public offering of securities to the extent that they refer to the License Agreement or ownership of the Trademark.

**REQUEST NO. 18:**  All documents that set forth or refer to complaints or expressions of concern by Defendants regarding the quality and/or functionality of SPSS products before the products were released to the public from 2002 to the present.

7

**RESPONSE:** SPSS objects to this Request on the grounds that it is vague, ambiguous, overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving any objection, SPSS will produce at a mutually agreeable time and place a December 2005 email from Norman Nie to SPSS and states that it is not aware of any further documents.

**REQUEST NO. 19:** All documents that set forth or refer to complaints or expressions of concern regarding the quality and/or functionality of SPSS products from 2002 to the present.

**RESPONSE:** SPSS objects to this Request on the grounds that it is vague, ambiguous, overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 20:** All documents that set forth or refer to complaints or expressions of concern by Defendants concerning the allocation of financial resources among SPSS products from 2002 to the present.

**RESPONSE:** SPSS objects to this Request on the grounds that it is vague, ambiguous, overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 21:** All documents that set forth or refer to complaints or expressions of concern concerning the allocation of financial resources among SPSS products from 2002 to the present.

**RESPONSE:** SPSS objects to this Request on the grounds that it is vague, ambiguous, overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 22:** All documents reflecting or referring to communications concerning the Trademark Assignment.

**RESPONSE:** SPSS objects to this Request on the grounds that it is overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence and seeks information protected from disclosure by the attorney-client privilege and attorney work product

8

doctrine. Subject to and without waiving any objection, SPSS will produce at a mutually agreeable time and place communications between SPSS and Defendants that refer to the Trademark Assignment.

**REQUEST NO. 23:** All documents referring or relating to the Trademark Assignment.

**RESPONSE:** SPSS objects to this Request on the grounds that it is overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence and seeks information protected from disclosure by the attorney-client privilege and attorney work product doctrine. Subject to and without waiving any objection, SPSS will produce at a mutually agreeable time and place communications between SPSS and Defendants that refer to the Trademark Assignment.

**REQUEST NO. 24:** All documents reflecting or referring to standards of quality for SPSS products from 2002 to the present.

**RESPONSE:** SPSS objects to this Request on the grounds that the phrase "standards of quality" is vague and on the grounds that the Request is overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 25:** All documents reflecting or referring to demands or requests made by Defendants to the Company regarding the purchase, assignment, or transfer of any purported rights held by Defendants under the License Agreement.

**RESPONSE:** SPSS objects to this Request on the grounds that it is overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence, and seeks information protected from disclosure by the attorney-client privilege and attorney work product doctrine. Subject to and without waiving any objection, SPSS will produce at a mutually agreeable time and place communications between SPSS and Defendants that refer to the License Agreement.

**REQUEST NO. 26:** All documents reflecting, referring or relating to the Company's performance under or breach or repudiation of the License Agreement.

9

**RESPONSE:** SPSS objects to this Request on the grounds that it is vague and ambiguous as to the meaning of "performance" and "repudiation," and is overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. There are no documents that reflect that SPSS is in breach of the License Agreement because SPSS has not breached the License Agreement.

**REQUEST NO. 27:** All documents reflecting, referring or relating to Defendants' performance under the License Agreement.

**RESPONSE:** SPSS objects to this Request on the grounds that it is vague and ambiguous as to the meaning of "performance." Subject to and without waiving any objection, SPSS is not aware of any documents responsive to this Request.

**REQUEST NO. 28:** All documents reflecting, referring or relating to the Company's actual or contemplated preparation and filing of Form 8-K's concerning the License Agreement, the Trademark Assignment, this lawsuit and/or Defendants' counterclaim.

**RESPONSE:** SPSS objects to this Request on the grounds that it is overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence and seeks information protected from discovery by the attorney-client privilege and attorney work product doctrine.

Dated: April 2, 2008                    SPSS INC.

                                        By: _____
                                            One of its attorneys

                                            Robert J. Kriss
                                            Edward H. Williams
                                            Thomas V. Panoff
                                            Daniel K Storino
                                            MAYER BROWN LLP
                                            71 South Wacker Drive
                                            Chicago, Illinois 60606
                                            (312) 782-0600

10

## CERTIFICATE OF SERVICE

I, Thomas V. Panoff, an attorney, certify that I caused a copy of the foregoing **PLAINTIFF'S RESPONSES TO DEFENDANTS' REQUESTS FOR PRODUCTION OF DOCUMENTS TO SPSS INC.** to be served on April 2, 2008 by fax and U.S. mail to the attorneys listed below.

> Peter V. Baugher
> William B. Berndt
> Jennifer A. Waters
> Schopf & Weiss LLP
> One South Wacker Drive
> 28th Floor
> Chicago, Illinois 60606
>
> Luther Orton
> Snyder Miller & Orton LLP
> 111 Sutter Street, Suite 1950
> San Francisco, California 94104

_____
Thomas V. Panoff

# Exhibit G



# FORM 8-K

## SPSS INC - SPSS

**Filed: December 31, 2007 (period: December 31, 2007)**

Report of unscheduled material events or corporate changes.

# Table of Contents

8-K - CURRENT REPORT

**ITEM 8.01:**    OTHER EVENTS

**ITEM 9.01:**    FINANCIAL STATEMENTS AND EXHIBITS.

SIGNATURES
EX-99.1 (LICENSE AGREEMENT)

UNITED STATES
SECURITIES AND EXCHANGE COMMISSION
Washington, DC 20549

FORM 8-K

Current Report Pursuant
to Section 13 or 15(d) of the
Securities Exchange Act of 1934

Date of report (Date of earliest event reported) December 31, 2007

SPSS Inc.
(Exact Name of Registrant as Specified in Its Charter)

| Delaware | 000-22194 | 36-2815480 |
|---|---|---|
| (State or Other Jurisdiction of Incorporation) | (Commission File Number) | (I.R.S. Employer Identification No.) |

| 233 South Wacker Drive, Chicago, Illinois | 60606 |
|---|---|
| (Address of Principal Executive Offices) | (Zip Code) |

(312) 651-3000
(Registrant's Telephone Number, Including Area Code)

Not Applicable
(Former Name or Former Address, if Changed Since Last Report)

Check the appropriate box below if the Form 8-K filing is intended to
simultaneously satisfy the filing obligation of the registrant under any of the
following provisions (see General Instruction A.2. below):

[ ]  Written communications pursuant to Rule 425 under the Securities Act
     (17 CFR 230.425)

[ ]  Soliciting material pursuant to Rule 14a-12 under the Exchange Act (17
     CFR 240.14a-12)

[ ]  Pre-commencement communications pursuant to Rule 14d-2(b) under the
     Exchange Act (17 CFR 240.14d-2(b))

[ ]  Pre-commencement communications pursuant to Rule 13e-4(c) under the
     Exchange Act (17 CFR 240.13e-4(c))

ITEM 8.01: OTHER EVENTS

    Norman H. Nie, a director of SPSS Inc. (the "Company"), has recently
informed the Company that, in his view, the Company's use of the SPSS trademark
is subject to a License Agreement (the "Agreement") dated September 30, 1976
between a predecessor of the Company, as licensee, and Norman H. Nie and C.
Hadlai Hull, as licensors. The Agreement provides for an exclusive, perpetual,
world-wide, royalty-free license of the SPSS trademark. The Company currently
uses the SPSS trademark in connection with its services and products. Dr. Nie
has stated his desire to enforce his asserted rights under the Agreement and has
requested information regarding the Company's products and its use of the SPSS
trademark. In addition, Dr. Nie and Mr. Hull have offered to sell the SPSS
trademark to the Company for a price of $20 million. The Company has not agreed
to such a purchase and disputes the rights recently asserted by Dr. Nie. The
Company believes it is in full compliance with any obligations it may have under
the Agreement and expects to continue to have the right to use the SPSS
trademark consistent with its past practices. A copy of the Agreement is
attached to this report as Exhibit 99.1.

ITEM 9.01: FINANCIAL STATEMENTS AND EXHIBITS.

    (d) Exhibits.

        99.1 License Agreement, dated September 30, 1976, by and between SPSS
             Inc., as licensee, and Norman H. Nie and C. Hadlai Hull, as
             licensors.

2

SIGNATURES

Pursuant to the requirements of the Securities Exchange Act of 1934, the registrant has duly caused this report to be signed on its behalf by the undersigned hereunto duly authorized.

SPSS Inc.

By: /s/ Raymond H. Panza
-------------------------------------
Raymond H. Panza
Executive Vice President, Corporate
Operations, Chief Financial Officer
and Secretary

Dated: December 31, 2007

3

Source: SPSS INC, 8-K, December 31, 2007

Exhibit 99.1

### LICENSE AGREEMENT

This Agreement is effective February 1, 1975, by and between Norman H. Nie and C. Hadlai Hull (hereinafter referred to as LICENSOR) and SPSS, Inc., an Illinois corporation (hereinafter referred to as LICENSEE).

WHEREAS, LICENSOR has adopted and used the words SPSS and STATISTICAL PACKAGE FOR THE SOCIAL SCIENCES as trademarks and service marks for computer programs and computer programming services; and

WHEREAS, LICENSOR is the owner of the marks SPSS and STATISTICAL PACKAGE FOR THE SOCIAL SCIENCES; and

WHEREAS, LICENSEE is desirous of using said marks for computer programs and computer programming services, and for its trade name;

NOW, THEREFORE, in consideration of one dollar paid by LICENSEE to LICENSOR and of the mutual covenants contained herein, and other valuable considerations, it is agreed as follows:

1. LICENSOR hereby grants to LICENSEE the exclusive right and license to use the words SPSS and STATISTICAL PACKAGE FOR THE SOCIAL SCIENCES, hereinafter referred to as the LICENSED MARKS, as trademarks and service marks for computer programs and computer programming services throughout the entire world, including the right to grant non-exclusive sublicenses, subject to the terms of this Agreement.

2. LICENSOR hereby grants to LICENSEE the exclusive right and license to use any of the LICENSED MARKS as a trade name for the business of producing and distributing computer programs and computer programming services and hereby ratifies the adoption of LICENSEE's trade name, subject to the terms of this Agreement.

3. The nature of each of the goods and services on which the LICENSED MARKS are to be used by LICENSEE or any sublicensees shall have the approval of the LICENSOR.

4. LICENSOR will furnish or direct the LICENSEE and any sublicensee in the standards of quality for each of the goods and services on which the LICENSED MARKS are marked, and LICENSEE agrees to meet standards of quality so established by the LICENSOR and to insure that any sublicensee meets the same standards of quality. The LICENSOR shall be the sole judge of whether or not the LICENSEE and any sublicensee has met or is meeting the standards of quality so established.

5. LICENSEE agrees to allow LICENSOR's authorized agent at any and all times during regular business hours to enter the LICENSEE's premises where the goods and services are being manufactured and carried out to inspect the same, and to secure similar provisions from any sublicensee.

6. LICENSEE shall obtain the approval of LICENSOR with respect to all signs, labels, packaging material, advertising or the like bearing the LICENSED MARKS prior to the use thereof, and shall secure similar provisions from any sublicensee.

7. LICENSEE agrees not to use a mark identical with or confusingly similar to the LICENSED MARKS except as permitted by the license herein granted, and to secure similar provisions from a sublicensee.

8. If LICENSEE violates any provisions of this Agreement, LICENSOR may terminate the exclusive license granted herein, or if any sublicensee violates any provisions of this Agreement, LICENSOR may terminate, through LICENSEE if desired, the non-exclusive sublicense granted that sublicensee, by giving notice in writing to the LICENSEE of the

2

violation. In the event that LICENSEE or its sublicensees do not correct or eliminate the violation within ninety (90) days from the date of receipt of said notice, the exclusive license or the non-exclusive sublicense respectively shall terminate at the end of said ninety (90) days.

9. This Agreement shall terminate automatically, at the option of LICENSOR, in the event of receivership or bankruptcy of the LICENSEE. LICENSEE shall secure a similar provision from any of its sublicensees.

10. In the event of termination of this Agreement, LICENSEE agrees to discontinue immediately all use of the LICENSED MARKS and to deliver to LICENSOR, free of any charge, all signs, labels, packaging material, advertising or the like bearing the LICENSED MARKS that are then in the possession of

LICENSEE, and LICENSEE shall secure similar provisions from any sublicensee. LICENSEE further agrees to discontinue the use or any confusingly similar use of the LICENSED MARKS in LICENSEE's trade name.

11. LICENSEE agrees that nothing herein shall give the LICENSEE or any sublicensee any right, title or interest in or to the LICENSED MARKS (except the right to use the LICENSED MARKS in accordance with this Agreement), that the LICENSED MARKS are the sole property of the LICENSOR, and that any and all uses by the LICENSEE and the sublicensees of the LICENSED MARKS shall inure to the benefit of the LICENSOR. This paragraph shall survive the termination of this Agreement.

12. This Agreement is personal and may not be assigned by LICENSEE without the written consent of the LICENSOR.

13. This Agreement shall be construed in accordance with the laws of the state of Illinois.

3

IN WITNESS WHEREOF, the parties have signed this Agreement on the date(s) indicated below.

Date 30 Sept 76                    /s/ Norman H. Nie
                                   ---------------------------------------
                                   NORMAN H. NIE

Date 30 Sep 76                     /s/ C. Hadlai Hull
                                   ---------------------------------------
                                   C. HADLAI HULL

                                   SPSS, INC.

Date 30 Sept 76                    By /s/ illegible
                                   ---------------------------------------

ATTEST:

/s/ C. Hadlai Hull
---------------------------------------

4

Created by 10KWizard    www.10KWizard.com