IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SPSS Inc., )<br>)<br>    Plaintiff, )<br>)<br>v. )<br>)<br>Norman H. Nie and C. Hadlai Hull, )<br>)<br>    Defendants. )<br>)<br>_____ )<br>)<br>Norman H. Nie, )<br>)<br>    Counterplaintiff, )<br>)<br>v. )<br>)<br>SPSS, Inc., )<br>)<br>    Counterdefendant. ) | Case No. 08 C 66<br><br>Judge John W. Darrah<br><br>Magistrate Judge Arlander Keys |

**PLAINTIFF/COUNTERDEFENDANT SPSS INC.'S
REPLY IN SUPPORT OF ITS MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO DEFENDANT NORMAN H. NIE'S MOTION TO COMPEL**

Plaintiff SPSS Inc. ("SPSS"), by and through its attorneys, hereby submits this reply in support of its motion for a protective order limiting the scope of additional Rule 30(b)(6) depositions by defendant/counterplaintiff Norman H. Nie ("Nie") and defendant C. Hadlai Hull ("Hull") (Dkt. 36) and this response to defendant Nie's motion to compel supplementation of SPSS's responses to interrogatories and document requests (Dkt. 42). SPSS's motion for a protective order should be granted and Nie's motion to compel should be denied.

## INTRODUCTION

As established in SPSS's motion, SPSS timely objected to designating a Rule 30(b)(6) witness on Topic Nos. 8, 9 and 13 of defendants' notice and did not designate a witness on those topics. SPSS Mot. at 4. Rather than moving to compel, defendants' counsel convened the Rule 30(b)(6) deposition and improperly queried SPSS's witness on the topics during a full day deposition. In his response brief, Nie makes no attempt to defend his failure to abide by standard procedures. For this reason alone, the Court should not give Nie another Rule 30(b)(6) deposition on Topic Nos. 8, 9 and 13 or any other topics.

Furthermore, what Nie neglects to mention to the Court is that SPSS's designee answered numerous questions relating to Topic Nos. 8, 9 and 13. Exhibit A at 7-30, 225-247, 255-260. As SPSS explained during the discovery conferences that took place prior to the deposition, "the enforceability of the License Agreement" (Topic No. 8), "SPSS's decision to request a trademark assignment from Defendants" (Topic No. 9) and "SPSS's actual or contemplated preparation and filing of Form 8-K's" relating to this lawsuit (Topic No. 13), all directly implicate the attorney-client privilege and work product doctrine. However, SPSS's witness answered numerous questions relating to these topics and was only instructed not to answer when Nie sought to invade the attorney-client privilege and/or work product doctrine. Nie's counsel should not have asked these questions, but the current claim that Nie was not able to discover non-privileged, factual matters is not true.

The linchpin of Nie's response and motion is that he finds SPSS's complaint "puzzling" and that he therefore needs an SPSS Rule 30(b)(6) designee and answers to contention interrogatories to understand it. Nie Mot. at 2 and 4. His basis for claiming puzzlement is the

assertion that "SPSS refuses to specify: (1) the relief it seeks; or (2) why it contends it is entitled to that relief." Nie Mot. at 4. But SPSS has specified exactly that in its pleadings.

The relief sought by SPSS is a declaratory judgment that Nie and Hull are "estopped from enforcing any rights under the purported trademark license agreement under the doctrines of estoppel, acquiescence and laches." Comp. ¶¶ 26-27. SPSS's pleadings also set forth the facts supporting its claim that Nie and Hull are equitably estopped from enforcing any purported rights they might have once possessed under the License Agreement. SPSS avers:

- The License Agreement was not approved by the SPSS board of directors until nearly one year after it was purportedly executed in 1976. *Id*. ¶ 12.

- At the time of execution, Nie and Hull were the only shareholders of a small, privately held corporation. *Id*. ¶ 10.

- When SPSS went public in 1993, Nie, the Chairman of SPSS's board of directors, failed to disclose the existence of the License Agreement, despite sections in the IPO prospectus entitled "Reliance on Third Parties" and "Transactions with Norman Nie" where the License Agreement should have been disclosed. The same IPO prospectus also stated that "SPSS® and Categories® are registered trademarks of the Company." *Id.* ¶ 16.

- Nie again failed to disclose the existence of the License Agreement in the prospectus for a follow-on offering of shares to the public in December 1994. *Id.* ¶ 17.

- Nie and Hull never disclosed the existence of the License Agreement to any director or officer of SPSS during the time of the IPO or follow-on offering. *Id*. ¶ 18.

- All foreign registrations of the trademark have been made under the name of the Company as owner. *Id*. ¶ 19.

- Nie and Hull exercised no rights under the License Agreement for 30 years. *Id*. ¶ 20.

- Nie and Hull first began to assert rights under the License Agreement in October 2007. *Id*.

- Nie and Hull "took no steps to enforce any alleged rights as trademark owners or trademark licensors before, on or after December 6, 2002 until late 2007." Answer to Nie's Amended Counterclaim (Dkt. 41) ¶ 22.

- Nie and Hull "had taken no steps to enforce any alleged rights as trademark owners or licensors…." *Id.* ¶ 34.

- Nie "has never set any quality standards under the License Agreement." *Id.* ¶ 54.

Nie does not need further Rule 30(b)(6) deposition testimony or immediate answers to contention interrogatories to understand the nature of SPSS's claims or the principal supporting facts because it is all laid out for him in SPSS's complaint and answer.

Nie also seeks the production of documents relating to third party complaints about the quality of SPSS's products. However, since Nie and Hull's own pleadings establish that they never set quality standards pursuant to the License Agreement, the quality of SPSS's products is irrelevant, and documents reflecting the opinions of third parties regarding those products would be even further removed.

**ARGUMENT**

**I.     SPSS Should Not Be Required To Provide A Rule 30(b)(6) Designee On Topic Nos. 8, 9 and 13.**

**A.     Topic No. 8: "The enforceability of the License Agreement."**

As demonstrated in SPSS's motion for a protective order, courts have consistently held a corporation should not be required to designate a witness to testify to all the facts supporting the claims or defenses involved in litigation. SPSS Mot. at 7 (citing *CSX Transp., Inc. v. Vela*, 2007 WL 3334966, at *4 (S.D. Ind. Nov. 8, 2007); *In re Indep. Serv. Org. Antitrust Litig.*, 168 F.R.D. 651, 654 (D. Kan. 1996) ("Even under the present-day liberal discovery rules, [defendant] is not required to have counsel 'marshal all of its factual proof' and prepare a witness to be able to testify on a given defense or counterclaim.") (citing *U.S. v. District Council of New York City*, 1992 WL 208284, at *15 (S.D.N.Y. Aug. 18, 1992)). Nie ignores these cases in his response.

4

Instead, he cites *Canal Barge Co. v. Commonwealth Edison Co.*, 2001 WL 817853, at *2 (N.D. Ill. July 19, 2001). Nie Mot. at 5. Nie's reliance on *Canal Barge* is misplaced. In *Canal Barge*, the court found persuasive the fact that the defendant had "not asserted any privilege" related to the Rule 30(b(6) topics on which the plaintiff moved to compel. 2001 WL 817853, at *2. Here, SPSS timely and expressly asserted the attorney-client privilege and attorney work product privilege. Exhibit A at 7-15; SPSS Mot., Exhibit B, at 5.

Nie claims that he does not seek to invade privileges but that he only seeks facts. Topic No. 8's plain language is certainly not so limited—it demanded that SPSS designate a witness to testify about everything relating in any way to the legal question of whether the License Agreement is enforceable. That plainly seeks to invade the attorney-client privilege, and to the extent that Nie is only seeking a marshalling of facts supporting SPSS's position, the courts have made it clear that a Rule 30(b)(6) deposition is an inappropriate method for seeking that discovery when attorney-client privilege and work product doctrine objections have been made, as here. Indeed, SPSS has already provided a fair summary of the principal facts supporting its position in its complaint and answer, and SPSS's designee answered questions about the License Agreement, only refusing to provide information protected from disclosure by the attorney-client privilege or work product doctrine. Exhibit A at 7-15. Notably, Nie does not challenge any of the privilege assertions made at the deposition. SPSS should not be required to designate a witness to provide further testimony on the "enforceability of the License Agreement."

    **B.    Topic No. 9: "SPSS's decision to request a trademark assignment from Defendants."**

Nie mischaracterizes SPSS's position regarding Topic No. 9 when he claims that "SPSS refuses to provide *any* information" related to this topic and that "SPSS asserts that *all* facts and information regarding" this topic are privileged. Nie Mot. at 7-8. (emphasis in original). This is

5

not true. What SPSS actually states in its motion is that "SPSS's decision to request the assignment"—the very issue identified in the notice—"was entirely based on advice of counsel and therefore the 'reasons' behind this decision were entirely privileged." SPSS Mot. at ¶ 19. Thus, SPSS only asserted a privilege as to the "*reasons*" behind its decision to request the trademark assignment because those reasons were based upon the advice of counsel. SPSS has never asserted that the "who, what, where" related to the decision making process is privileged.

SPSS drew the same line at the deposition. SPSS's designee answered repeated questions about who was involved in requesting the assignment, when it occurred, and how it occurred, testimony that consisted of at least twenty-two pages of deposition transcript. Exhibit A at 225-247. The witness explained in painstaking detail who was involved in the decision making process (lawyers and SPSS executives), when the decisions occurred, who drafted the assignment, who reviewed it, and so on. *Id*. Counsel for SPSS only objected and asserted privilege as to the content of the *legal advice* that was given in deciding to request the assignment. *Id.* at 227-29, 231-33, 235. Nie should not have made these inquires since the topic had been objected to and the witness had not been designated on it, but even putting that to one side, the non-privileged "who, when, where" on which Nie now moves to compel was provided.

> **C.  Topic No. 13: "SPSS's actual or contemplated preparation and filing of Form 8-K's concerning the License Agreement, the Trademark Assignment, this lawsuit and/or Defendants' counterclaim."**

Nie's attack on SPSS's objection to Topic No. 13 is entirely grounded, again, on the incorrect assertion that SPSS is refusing to disclose facts. The factual content of the Form 8-Ks could not be more plainly stated in the documents themselves. The December 31, 2007 8-K stated:

> Norman H. Nie, a director of SPSS Inc. (the "Company"), has recently informed the Company that, in his view, the Company's use of the SPSS trademark is subject to a

6

>License Agreement (the "Agreement") dated September 30, 1976 between a predecessor of the Company, as licensee, and Norman H. Nie and C. Hadlai Hull, as licensors. The Agreement provides for an exclusive, perpetual, world-wide, royalty-free license of the SPSS trademark. The Company currently uses the SPSS trademark in connection with its services and products. Dr. Nie has stated his desire to enforce his asserted rights under the Agreement and has requested information regarding the Company's products and its use of the SPSS trademark. In addition, Dr. Nie and Mr. Hull have offered to sell the SPSS trademark to the Company for a price of $20 million. The Company has not agreed to such a purchase and disputes the rights recently asserted by Dr. Nie. The Company believes it is in full compliance with any obligations it may have under the Agreement and expects to continue to have the right to use the SPSS trademark consistent with its past practices . . . .

Nie. Mot., Exhibit G, at 2.  The January 4, 2008 8-K was similar:

>As previously reported in a Form 8-K filed by SPSS Inc. (the "Company") on December 31, 2007, Norman H. Nie, a former director of the Company, has recently informed the Company that, in his view, the Company's use of the SPSS trademark is subject to a License Agreement (the "Agreement") dated September 30, 1976 between a predecessor of the Company, as licensee, and Norman H. Nie and C. Hadlai Hull, as licensors.
>
>On January 3, 2008, the Company filed a complaint for declaratory judgment in the U.S. District Court for the Northern District of Illinois against Dr. Nie and Mr. Hull. The complaint seeks a declaratory judgment that Dr. Nie and Mr. Hull are estopped from enforcing any rights under the Agreement and that the Company shall be deemed to have an irrevocable, assignable and exclusive license to use the SPSS trademark.
>
>Regardless of the outcome of this action, the Company believes it is in full compliance with any obligations it may have under the Agreement and expects to continue to have the right to use the SPSS trademark consistent with its past practices….

Form 8-K, January 4, 2008, Exhibit B at 2.[1]  Nie knows as well as anyone else who has read the Form 8-Ks what facts were disclosed.  To the extent that Nie wants to know why these facts were disclosed pursuant to the SEC's disclosure requirements, that information is privileged and was properly objected to at the deposition.  Exhibit A at 255-260.  To the extent that Nie is seeking the non-privileged facts involving the "who, what, when" involved in the filings, those questions were answered at the deposition.  *Id.*

---

[1] Nie claims that the Form 8-Ks filed by SPSS regarding this dispute "harshly criticized" him. Nie Mot. at 7. As the Court can see, the submissions were dryly factual.

7

The content of SPSS's Form 8-K disclosures regarding this dispute is irrelevant to the merits of the case itself, yet another objection that SPSS lodged in response to Topic No. 13. SPSS Mot., Exhibit B at 6. Despite that, SPSS provided all of the non-privileged information on that topic. His request for more should be denied.

**II.    SPSS's Objections To Interrogatory Nos. 1 And 5 Should Be Sustained.**

Interrogatory Nos. 1 ("Identify the owner or owners of the Trademark 'SPSS' and 'Statistical Package for the Social Sciences.' If you contend SPSS is the owner of the Trademarks 'SPSS' or 'Statistical Package for the Social Sciences,' explain any and all bases for that contention.") and 5 ("Identify any and all reasons that you contend that Defendants are not entitled to all rights granted to them under the License Agreement.") are contention interrogatories. As this Court has recognized, the "general policy is to defer contention interrogatories until discovery is near an end, in order to promote efficiency and fairness." *Ziemack v. Centel Corp.*, 1995 WL 729295, at *2 (N.D. Ill. Dec. 7, 1995) (Keys, J.). *See also Thomas & Betts Corp. v. Panduit Corp.*, 1996 WL 169389, at *2 (N.D. Ill. Apr. 9, 1996) (Keys, J.) (same, granting motion to compel contention interrogatory only after discovery had been ongoing for two years); *Nestle Foods Corp. v. Atena Cas. and Sur. Co.*, 135 F.R.D. 101, 111 (D.N.J. 1990) ("judicial economy as well as efficiency for the litigants dictate that contention interrogatories are more appropriate after a substantial amount of discovery has been conducted"); *In re Convergent Tech. Sec. Litig.*, 108 F.R.D. 328, 338 (N.D. Cal. 1985) (the "court will look with considerable skepticism at sets of contention interrogatories, filed early in the pretrial period").[2]

---

[2]    Indeed, the case law cited by Nie makes this precise point. In *Rusty Jones Inc. v. Beatrice Co.*, 1990 WL 139145, at *2 (N.D. Ill. Sept. 14, 1990), cited by Nie (Nie Mot. at 4), the Court granted the motion to compel an answer to the contention interrogatory because "several months before filing the case, [plaintiff] had access to

8

In this case, party document discovery is still on-going. In fact, just two days ago, Nie served SPSS with 28 additional requests for the production of documents, with responses not due until August 15. Third party document discovery is also still on-going. The only deposition taken was SPSS's Rule 30(b)(6) designee, and SPSS has not yet taken the depositions of Nie or Hull. If the Court concludes that SPSS should be required to answer these contention interrogatories, at the least those answers should be deferred until the end of the discovery period.

There are additional reasons specific to each of Interrogatory Nos. 1 and 5 for the denial of Nie's motion to compel immediate answers. With respect to Interrogatory No. 1, Nie implies that SPSS challenged his ownership of the trademark in its complaint and refuses to provide the facts supporting that challenge. But that is not the case. SPSS alleges that Nie and Hull are equitably estopped from enforcing any rights they might have under the License Agreement and that SPSS has an irrevocable, assignable and exclusive license to use the trademarks. Comp. ¶¶ 26-27. SPSS's claims are based on principles of estoppel and licensing, not ownership. In its response to the interrogatory and during discovery conferences, SPSS offered to answer the interrogatory at an appropriate time—it should not be compelled to make a determination of ownership, an issue it has not sued upon, until it has all of the facts.

The issues relating to Interrogatory No. 5 are similar to those relating to Rule 30(b)(6) deposition Topic No. 8. SPSS should not be compelled to provide privileged information regarding the enforceability of the License Agreement. SPSS agrees that—at the appropriate time—a party in receipt of a contention interrogatory should identify the principal facts supporting its contentions (but not the level of detail demanded by Nie). *Hiskett v. Wal-Mart*

---

thousands of pages of [defendant's] documents" from a prior proceeding. SPSS had no such pre-filing access to Nie's documents and has not yet deposed him or Hull.

*Stores, Inc.*, 180 F.R.D. 403, 405 (D. Kan. 1998) (Contention interrogatories are "overly broad and unduly burdensome on their face to the extent they ask for 'every fact' which supports identified allegations or defenses. Interrogatories may . . . properly ask for the 'principal or material' facts which support an allegation or defense."); *Lucero v. Valdez*, 240 F.R.D. 591, 594 (D.N.M. 2007) ("Contention interrogatories should not require a party to provide the equivalent of a narrative account of its case, including every evidentiary fact, details of testimony of supporting witnesses, and the contents of supporting documents."). SPSS provided the principal facts known to it at the time of answering by directing defendants to the numerous facts set forth in its complaint and answer. Nie Mot., Exhibit D at 5. As demonstrated above, these submissions were not bare bones pleadings designed only to satisfy Rule 8's notice requirement. They went much further and provided a summary of the principal facts supporting SPSS's contention that Nie and Hull should be estopped from enforcing any rights under the License Agreement. Nie is not entitled to more than that. *In re Convergent Tech. Sec. Litig.*, 108 F.R.D. at 339 ("The Court will be especially vigilant in its evaluation of proffered justifications [of contention interrogatories] when a complaint is not facially infirm and when defendants appear to have control over or adequate access to much of the evidence relevant to their alleged misconduct.").

**IV.    Document Request Nos. 19 And 21 Seek Irrelevant Information.**

Nie moves to compel the production of documents responsive to Request Nos. 19 ("All documents that set forth or refer to complaints or expressions of concern regarding the quality and/or functionality of SPSS products from 2002 to the present.") and 21 ("All documents that set forth or refer to complaints or expressions of concern concerning the allocation of financial resources among SPSS products from 2002 to the present."). In response to other document

requests and in the spirit of compromise, SPSS agreed to produce documents relating to such complaints made by Nie or Hull.  Nie Mot., Exhibit E at 2.  The third party quality control complaints that Nie seeks in this motion are irrelevant to this action.

One of the issues in this case is whether Nie or Hull abided by the terms set forth in the License Agreement, including their obligation to set quality standards for SPSS products.  Nie Mot., Exhibit A, ¶ 4.  In pleadings, they have admitted that they *forgot* about the License Agreement until October 2007.  Defendants' Counterclaim (Dkt. 15) at ¶ 19 ("both Professor Nie and Mr. Hull forgot about the License Agreement.").  Thus, logic dictates that they could not have done anything to set quality standards *pursuant to the License Agreement* during that time.  Since they set no quality standards pursuant to the License Agreement, there is no issue as to whether SPSS met them and therefore the quality of its products is not at issue.

Moreover, under the License Agreement, whether or not a *third party* ever had a complaint about the quality of an SPSS product is reaching even further afield because, as Nie and Hull have emphasized, the License Agreement provides that they "shall be the *sole judge* of whether or not [SPSS] and any sublicensees has met or is meeting the standards of quality so established."  Nie Mot., Exhibit A, ¶ 4 (emphasis added).  Even though defendants never provided any quality standards pursuant to the License Agreement, SPSS agreed to produce any documents reflecting complaints that *defendants* may have made regarding product quality based on their assertion that they are to be the "sole judge" of whether quality standards they were required to set (but did not) had been met. Nie Mot., Exhibit E at 2.  SPSS did not buy defendants' relevance argument, but it compromised.  However, the opinions of third parties have no conceivable relevance and further discovery on product quality should be barred.

11

During the parties' multiple Rule 37 conferences, the extensive correspondence that has been exchanged and all of the pleadings that have been filed, Nie has failed to articulate how it is that any concerns by *third parties* about quality or the allocation of financial resources at SPSS are relevant to any issue in this case. Nor does Nie's motion to compel articulate any such basis. SPSS does believe that there was no decline in the quality of its products as Nie has alleged (an allegation he makes even though he was the Chairman of SPSS's board of directors and Hull was an SPSS employee working in product development at all times), but whether or not there was such a decline during a time when defendants were admittedly not exercising any quality control pursuant to the License Agreement is irrelevant.

## CONCLUSION

For the foregoing reasons, SPSS respectfully requests that this Court grant its motion for a protective order and deny Nie's motion to compel in its entirety.

Dated: July 18, 2008

Respectfully submitted,

SPSS INC.

By: /s/ Edward H. Williams
One of its attorneys

Robert J. Kriss
Edward H. Williams
Thomas V. Panoff
MAYER BROWN LLP
71 South Wacker Drive
Chicago, Illinois 60606
(312) 782-0600