# EXHIBIT G

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| SPSS Inc., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 08 C 66 |
| Norman H. Nie and C. Hadlai Hull, | ) | |
| | ) | Judge John W. Darrah |
| Defendants. | ) | |
| | ) | Magistrate Judge Arlander Keys |
| ———————————————— | ) | |
| | ) | |
| Norman H. Nie, | ) | |
| | ) | |
| Counterplaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SPSS, Inc., | ) | |
| | ) | |
| Counterdefendant. | ) | |

## PLAINTIFF SPSS INC.'S RESPONSES TO DEFENDANTS' SECOND REQUESTS FOR PRODUCTION OF DOCUMENTS

Plaintiff SPSS Inc. ("SPSS" or "Company"), by and through its attorneys, hereby submits these objections and responses to Defendants' Second Requests for the Production of Documents.

### GENERAL OBJECTIONS

1.     SPSS objects to these Requests to the extent that they purport to impose obligations that exceed the requirements of applicable law, including the Federal Rules of Civil Procedure and any other applicable court order or rule.

2.     SPSS objects to these Requests to the extent that they seek the production of documents protected from discovery by the attorney-client privilege, attorney work product

doctrine, or any other applicable privilege or immunity from discovery. Any production of such documents by SPSS would be inadvertent and would not be intended to constitute a waiver of any applicable privilege or immunity. In addition, Mayer Brown LLP was retained by SPSS to provide various legal services in or around November 2005 and has represented SPSS in connection with this dispute. SPSS objects to producing a privilege log of materials prepared by, for, or at the request of Mayer Brown LLP in connection with this dispute. SPSS will produce a privilege log to the extent that there are privileged documents created prior to July 13, 2007 (the cutoff date agreed to by the parties) that were not prepared by, for, or at the request of Mayer Brown LLP in connection with this dispute.

3.     SPSS objects to these Requests to the extent that they purport to require the production of documents, things, or information in the possession, custody, or control of any person or entity other than SPSS. SPSS responds to these Requests based on documents, things, and information presently in SPSS's possession, custody, and control.

4.     SPSS expressly reserves all objections to the relevance, authenticity, or admissibility of any document sought by the Requests.

5.     SPSS's response that it will produce the documents sought by a Request does not constitute an admission that it actually possesses the documents requested or that such documents exist, nor does it constitute an admission of the facts or allegations stated and/or implied in a particular Request.

### OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS

1.     SPSS objects to Defendants' Definition No. 3 because the terms "SPSS Inc.," "the Company," and "SPSS" are defined in an overbroad fashion and would impose an undue burden

2

on SPSS to identify, inquire with, and produce relevant documents from every entity listed in Definition No. 3.

    2.    SPSS objects to Defendants' Definition No. 9 because the terms "relate" and "relating" are vague, ambiguous, overbroad, and would impose an undue burden on SPSS to identify, locate, and produce all such documents as defined in Definition No. 9.

    3.    SPSS objects to Defendants' Instruction No. 1 to the extent that it seeks documents protected by the attorney-client privilege, attorney work product doctrine, or any other applicable privilege or immunity from discovery.

    4.    SPSS objects to Defendants' Instruction No. 6 because a time period ranging from January 1, 1970 to the present is overbroad and unduly burdensome for the information sought in these Requests.

## REQUESTS FOR PRODUCTION AND RESPONSES

SPSS incorporates each of its General Objections and its Objections to Definitions and Instructions into its Responses to each Request for Production as if fully set forth therein.

**REQUEST NO. 1:**    All documents referring or relating to the value of the Trademarks.

**RESPONSE:** SPSS objects to this Request on the grounds that it is vague, ambiguous, overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving any objection, SPSS is not aware of any documents responsive to this Request.

**REQUEST NO. 2:**    All documents referring or relating to any royalty rate attributable to the Trademarks.

**RESPONSE:** SPSS objects to this Request on the grounds that it is vague, ambiguous, overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of

admissible evidence. Subject to and without waiving any objection, SPSS is not aware of any documents responsive to this Request.

**REQUEST NO. 3:** All documents referring or relating to trademark license agreements or sublicense agreements negotiated or entered into by SPSS.

**RESPONSE:** SPSS objects to this Request on the grounds that it is vague, overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving any objection, SPSS has made available for inspection various distributor, partner and/or reseller agreements.

**REQUEST NO. 4:** All documents referring or relating to franchise agreements negotiated or entered into by SPSS.

**RESPONSE:** SPSS objects to this Request on the grounds that it seeks documents that are irrelevant and immaterial to the subject matter of the pending action and is not reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 5:** The financial statements of SPSS.

**RESPONSE:** SPSS objects to this Request on the grounds that it is overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving any objection, SPSS will produce, at a mutually agreeable time and place, copies of its publicly available annual and quarterly financial statements for 2007 and its quarterly financial statements for the first two quarters of 2008.

**REQUEST NO. 6:** All financial statements of SPSS that refer or relate to the Trademarks.

**RESPONSE:** SPSS objects to this Request on the grounds that it is overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving any objection, SPSS will produce, at a mutually agreeable time and place, copies of its publicly available annual financial statement for 2007 and its quarterly

4

financial statement for the period ending June 30, 2008, both of which refer to the "SPSS" trademark.

**REQUEST NO. 7:** All documents referring or relating to any audits of SPSS.

**RESPONSE:** SPSS objects to this Request on the grounds that it is overbroad, unduly burdensome, vague and not reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 8:** All documents referring or relating to any audits of SPSS that refer or relate to the Trademarks.

**RESPONSE:** SPSS objects to this Request on the grounds that it is overbroad, unduly burdensome, vague and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving any objection, SPSS is not aware of any documents responsive to this Request.

**REQUEST NO. 9:** All documents referring or relating to the rate of return or profitability of all products of SPSS and its sublicensees.

**RESPONSE:** SPSS objects to this Request on the grounds that it is irrelevant, overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 10:** All documents referring or relating to the income margin of all products of SPSS and its sublicensees.

**RESPONSE:** SPSS objects to this Request on the grounds that it is irrelevant, overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 11:** All documents referring or relating to the revenue of SPSS.

**RESPONSE:** SPSS objects to this Request on the grounds that it is overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving any objection, SPSS will produce, at a mutually agreeable time and place, copies of its publicly available annual and quarterly financial statements for 2007 and its quarterly financial statements for the first two quarters of 2008.

**REQUEST NO. 12:** All documents referring or relating to the assets held by SPSS.

**RESPONSE:** SPSS objects to this Request on the grounds that it is overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving any objection, SPSS will produce, at a mutually agreeable time and place, copies of its publicly available annual and quarterly financial statements for 2007 and its quarterly financial statements for the first two quarters of 2008.

**REQUEST NO. 13:** All documents referring or relating to the net sales of SPSS.

**RESPONSE:** SPSS objects to this Request on the grounds that it is overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving any objection, SPSS will produce, at a mutually agreeable time and place, copies of its publicly available annual and quarterly financial statements for 2007 and its quarterly financial statements for the first two quarters of 2008.

**REQUEST NO. 14:** All documents referring or relating to the expected future use of the Trademarks, including any consideration of or plans to discontinue use of the Trademarks.

**RESPONSE:** SPSS objects to this Request on the grounds that it is vague and ambiguous as to the meaning of the phrase "expected future use of the Trademarks." SPSS further objects to this Request as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Finally, SPSS objects to this Request because it seeks documents that are irrelevant and immaterial to the subject matter of the pending action.

**REQUEST NO. 15:** All documents referring or relating to the remaining useful life of the Trademarks.

**RESPONSE:** SPSS objects to this Request on the grounds that it is vague and ambiguous as to the meaning of the phrase "remaining useful life of the Trademarks." SPSS further objects to this Request as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Finally, SPSS objects to this Request because it seeks documents that are irrelevant and immaterial to the subject matter of the pending action.

**REQUEST NO. 16:** Any and all documents referring or relating to SPSS's intellectual property that refer or relate to any merger, acquisition or offering involving SPSS.

**RESPONSE:** SPSS objects to this Request on the grounds that it is vague, ambiguous, overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 17:** Any and all documents referring, relating to, or reflecting trademark security agreements.

**RESPONSE:** SPSS objects to this Request on the grounds that it is vague, ambiguous, overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving any objection, SPSS has produced trademark security agreements involving Continental Bank N.A. and Foothill Capital Corporation.

**REQUEST NO. 18:** Any and all documents referring or relating to any transaction in which SPSS assigned its right to any intellectual property to any other entity.

**RESPONSE:** SPSS objects to this Request on the grounds that it is overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 19:** Any and all documents authored, prepared or reviewed by SPSS or its agents during due diligence relating to intellectual property.

**RESPONSE:** SPSS objects to this Request on the grounds that it is vague and ambiguous as to the meaning of "due diligence" and is overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 20:** Any and all trademark due diligence relating to any transaction involving SPSS.

**RESPONSE:** SPSS objects to this Request on the grounds that it is vague and ambiguous as to the meaning of the phrase "trademark due diligence." SPSS further objects to this Request as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 21:** Any and all documents referring or relating to costs that would be incurred by SPSS if SPSS ceased using one or both of the Trademarks.

**RESPONSE:** SPSS objects to this Request on the grounds that it is vague and ambiguous.

**REQUEST NO. 22:** The organization charts of SPSS from 1993 to the present.

**RESPONSE:** SPSS objects to this Request on the grounds that it is overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving any objection, SPSS will produce, at a mutually agreeable time and place, its current organization chart.

**REQUEST NO. 23:** Any and all documents referring to or relating to any employee or employees of SPSS who held responsibility for protection of SPSS's intellectual property from 1993 to the present.

**RESPONSE:** SPSS objects to this Request on the grounds that it is vague and ambiguous as to the meaning of the phrase "held responsibility for protection of SPSS's intellectual property." SPSS further objects to this Request as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

8

**REQUEST NO. 24:**  Any and all documents referring to or relating to any employee or employees of SPSS who held responsibility for protection of SPSS's rights in the Trademarks.

**RESPONSE:** SPSS objects to this Request on the grounds that it is vague and ambiguous as to the meaning of the phrase "held responsibility for protection of SPSS's rights in the Trademarks." SPSS further objects to this Request as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 25:**  Any and all documents referring to, relating to or reflecting any decision made by SPSS in reliance on any rights SPSS held with respect to the Trademarks.

**RESPONSE:** SPSS objects to this Request on the grounds that it is overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving any objection, SPSS has produced documents referring to its initial public offering in 1993, its follow-on public offering in 1995, and its business activities as a public company.

**REQUEST NO. 26:**  Any documents referring or relating to any policy or standards established by SPSS for the quality of SPSS products.

**RESPONSE:** SPSS objects to this Request on the grounds that it is vague and ambiguous, calls for irrelevant information and is overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving any objection, SPSS states that the only quality standards that would be relevant to this dispute would be quality standards that Nie and Hull provided to the Company and described as standards furnished pursuant to the License Agreement. No such standards were provided by Hull and/or Nie.

**REQUEST NO. 27:**  Any and all documents provided to Mr. Nie in connection with meetings of the Board of Directors of SPSS from 1993 to the present.

**RESPONSE:** SPSS objects to this Request on the grounds that it is overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving any objection, SPSS has produced board minutes for relevant meetings of its Board of Directors from 1993, 1994, 1997, 1998, 2004, 2007, and 2008 and has produced loan agreements involving Continental Bank N.A. and Foothill Capital Corporation that were provided to the Board.

**REQUEST NO. 28:** Any and all documents provided to Mr. Nie in connection with meetings of the Board of Directors of SPSS from 1993 to the present relating or referring to intellectual property or trademarks.

**RESPONSE:** SPSS objects to this Request on the grounds that it is overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving any objection, SPSS has produced board minutes for relevant meetings of its Board of Directors from 1993, 1994, 1997, 1998, 2004, 2007, and 2008 and has produced loan agreements involving Continental Bank N.A. and Foothill Capital Corporation that were provided to the Board.

Dated: August 15, 2008              SPSS INC.

By: _____

One of its attorneys

Robert J. Kriss
Edward H. Williams
Thomas V. Panoff
Daniel K Storino
MAYER BROWN LLP
71 South Wacker Drive
Chicago, Illinois 60606
(312) 782-0600

## CERTIFICATE OF SERVICE

I, Daniel K. Storino, an attorney, certify that I caused a copy of the foregoing

**PLAINTIFF SPSS INC.'S RESPONSES TO DEFENDANTS' SECOND REQUESTS FOR**

**PRODUCTION OF DOCUMENTS** to be served on August 15, 2008 by email and U.S. mail to

the attorneys listed below.

Peter V. Baugher
William B. Berndt
Jennifer A. Waters
Schopf & Weiss LLP
One South Wacker Drive
28th Floor
Chicago, Illinois 60606

Luther Orton
Snyder Miller & Orton LLP
111 Sutter Street, Suite 1950
San Francisco, California 94104

Daniel K. Storino

# EXHIBIT H

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| SPSS Inc., | ) |
| | ) |
|        Plaintiff, | ) |
| | ) |
|    v. | ) |
| | )   Case No. 08 C 66 |
| Norman H. Nie and C. Hadlai Hull, | ) |
| | )   Judge John W. Darrah |
|       Defendants. | ) |
| | )   Magistrate Judge Arlander Keys |
| ———————————————— | ) |
| | ) |
| Norman H. Nie, | ) |
| | ) |
|       Counterplaintiff, | ) |
| | ) |
|    v. | ) |
| | ) |
| SPSS Inc., | ) |
| | ) |
|       Counterdefendant. | ) |

## PLAINTIFF/COUNTERDEFENDANT'S RESPONSES & OBJECTIONS TO DEFENDANTS' NOTICE OF DEPOSITION PURSUANT TO RULE 30(B)(6)

Plaintiff/counterdefendant SPSS Inc. ("SPSS"), by and through its attorneys, hereby submits these Responses and Objections to Defendants' Notice of Deposition Pursuant to Rule 30(b)(6).

## GENERAL OBJECTIONS

1.      SPSS objects to the Notice of Deposition to the extent that the Matters for Examination purport to impose obligations that exceed the requirements of applicable law, including the Federal Rules of Civil Procedure and any other applicable court order or rule.

2.    SPSS objects to the Notice of Deposition to the extent that the Matters for Examination seek information protected from discovery by the attorney-client privilege, attorney work product doctrine, or any other applicable privilege or immunity from discovery. Nothing in these Objections is intended to be, or in any way should be deemed, a waiver of an applicable privilege or immunity.

3.    SPSS objects to the Notice of Deposition to the extent that SPSS should not have to produce a designated witness for a Rule 30(b)(6) deposition and as a fact witness, which would be unduly burdensome for SPSS and potentially violate Rule 30(d)(1).

4.    SPSS objects to the Notice of Deposition to the extent that the Matters for Examination seek information that does not exist, is not known to SPSS, is not reasonably available to SPSS, or is not within the custody or control of SPSS.

5.    SPSS objects to the Notice of Deposition to the extent that the Matters for Examination seek information that is already known or available to Defendants or within the custody or control of Defendants.

6.    SPSS objects to the Notice of Deposition to the extent that the Matters for Examination seek information that is duplicative of other discovery sought in this case, or calls for discovery that would be more easily obtained through other less burdensome means.

7.    SPSS objects to the Notice of Deposition to the extent that the Matters for Examination seek information that calls for a witness to testify as to a legal conclusion.

2

## SPECIFIC RESPONSES & OBJECTIONS TO MATTERS FOR EXAMINATION

SPSS incorporates each of its General Objections into its Specific Responses and Objections to Matters for Examination as if fully set forth therein.

**MATTER FOR EXAMINATION NO. 1:** Any purchase price allocation analyses under FAS 141 and 142.

**RESPONSE:** SPSS objects to this Matter for Examination on the grounds that the phrase "any purchase price allocation analyses" is vague and ambiguous and that this Matter for Examination is overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving any objection, SPSS states that it is not aware of any "purchase price allocation analyses" under FAS 141 and 142 involving the trademarks "SPSS" or "Statistical Package for the Social Sciences" (hereinafter "Trademark") and therefore cannot designate a witness to testify with respect to that topic.

**MATTER FOR EXAMINATION NO. 2:** Licensing-in or Licensing-out of the Trademark "SPSS".

**RESPONSE:** SPSS objects to this Matter for Examination on the grounds that the phrases "Licensing-in" and "Licensing-out" are vague and ambiguous. SPSS further objects to this Matter for Examination on the grounds that it is irrelevant, cumulative, overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence and requests information protected from discovery by the attorney-client privilege and attorney work product doctrine.

**MATTER FOR EXAMINATION NO. 3:** Gross profit margins, operating profit margins, contribution margins and/or incremental profit margins for various "SPSS"-branded and non-branded products.

**RESPONSE:** SPSS objects to this Matter for Examination on the grounds that the phrases "gross profit margins," "operating profit margins," "contribution margins," and "profit margins" are vague and ambiguous. SPSS further objects to this Matter for Examination on the

grounds that this Matter for Examination is overly broad, unduly burdensome, cumulative and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving any objection, SPSS states that it does not engage in segment accounting by product and therefore cannot designate a witness to testify on its behalf regarding "gross profit margins, operating profit margins, contribution margins and/or incremental profit margins" regarding each of its various products.

**MATTER FOR EXAMINATION NO. 4:** Any third-party studies of value of the Trademark "SPSS."

**RESPONSE:** SPSS objects to this Matter for Examination on the grounds that the phrase "third-party studies of value" is vague and ambiguous. SPSS further objects to this Matter for Examination on the grounds that it is overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving any objections, SPSS is not aware of any "third-party studies of the value" of the Trademark and therefore cannot designate a witness to testify with respect to that topic.

**MATTER FOR EXAMINATION NO. 5:** The value of the Trademark "SPSS."

**RESPONSE:** SPSS objects to this Matter for Examination on the grounds that the term "value" is vague and ambiguous. SPSS further objects to this Matter for Examination on the grounds that it is overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving any objections, SPSS is not aware of any valuations of the Trademark and therefore cannot designate a witness to testify with respect to that topic.

**MATTER FOR EXAMINATION NO. 6:** Complaints received by SPSS regarding products released from 2006 to the present and SPSS's responses to those complaints.

**RESPONSE:** SPSS objects to this Matter for Examination on the grounds that the phrases "complaints" and "responses to those complaints" are vague and ambiguous. SPSS

4

further objects to this Matter for Examination on the grounds that it is irrelevant, overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Complaints about the products have no apparent relevance to the issues in this case. In any event, it would be impossible for SPSS to educate a witness with respect to all customer complaints regarding its products released from 2006 to the present and SPSS's responses to each one of those complaints. In response to the court order requiring SPSS to produce documents reflecting third-party complaints, SPSS has produced a DVD containing five Microsoft Excel files:    Data Mining.xls, Dimensons.xls, Platform.xls, ShowCase.xls, and Statistics.xls. To the extent that defendants wish to examine a witness regarding the meaning of the categories of information contained in those documents, SPSS designates Richard Holada.

**MATTER FOR EXAMINATION NO. 7:** Internal bug reports relating to products released from 2006 to the present, including:

       a.     Bugs that have been fixed and when those bugs were fixed;
       b.     Bugs that have not been fixed;
       c.     Internal severity ratings of product bugs.

**RESPONSE:** SPSS objects to this Matter for Examination, including subparts (a), (b) and (c), on the grounds that the phrases "internal bug reports," "bugs that have been fixed," "bugs that have not been fixed," and "internal severity rating of product bugs" are vague and ambiguous. SPSS further objects to this Matter for Examination on the grounds that it is irrelevant, overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. "Bugs" have no apparent relevance to the issues in this case. In any event, "bugs" are included in the documents described in No. 6 above. To the extent that defendants wish to examine a witness regarding the meaning of the categories of information contained in these documents, SPSS designates Richard Holada. It would be impossible for SPSS to designate a witness to testify with respect to all specific bugs in products released from

5

2006 to present and then, for each such bug, to identify whether it has been fixed, when it was fixed and the internal severity rating for it.

Dated: August 15, 2008                    SPSS INC.

                                          By:_____
                                              One of its attorneys

                                              Robert J. Kriss
                                              Edward H. Williams
                                              Thomas V. Panoff
                                              Daniel K. Storino
                                              MAYER BROWN LLP
                                              71 South Wacker Drive
                                              Chicago, Illinois 60606
                                              (312) 782-0600

6

## CERTIFICATE OF SERVICE

I, Thomas V. Panoff, an attorney, certify that I caused a copy of the foregoing **PLAINTIFF'S RESPONSES & OBJECTIONS TO DEFENDANTS' NOTICE OF DEPOSITION PURSUANT TO RULE 30(B)(6)** to be served on August 15, 2008 by e-mail and U.S. mail to the attorneys listed below.

Peter V. Baugher
William B. Berndt
Jennifer A. Waters
Schopf & Weiss LLP
One South Wacker Drive
28th Floor
Chicago, Illinois 60606

Luther Orton
Snyder Miller & Orton LLP
111 Sutter Street, Suite 1950
San Francisco, California 94104

_____
Edward H. Williams

# EXHIBIT I

# CONFIDENTIAL MATERIAL OMITTED

# PURSUANT TO APRIL 15, 2008

# AGREED PROTECTIVE ORDER

# EXHIBIT J

**From:** Panza, Raymond
**Sent:** Wednesday, March 07, 2007 12:16 AM
**To:** Garuda, Gopal (IBK - PA)
**Subject:** Due Diligence

Gopal,

Tonight we received the attached "supplemental" request for due diligence. Obviously, everything requested can be produced – but not necessarily in the next few days – especially if we plan to finalize the documents to get the transaction done this week. Most of these items should have been requested earlier in the initial request – leases, trademarks, patents, security ownership, employee lists, subsidiaries, D&O questionnaires, invention assignment agreements – we are a public technology company. The questions regarding the "risk factors" are especially troubling – on many levels.

Would appreciate your intervention to cut through this to focus on only the most critical issues. It is difficult to believe that most of the requests are really "gating" items. While we will immediately move forward to do the best we can – the number one focus at this point is to get the documents finalized and internal issues resolved. That said, I would propose the following:

1. SEC letter - we will talk with MBR – but the issue is long dead
2. Assignment agreements - will take time (not likely to happen this week)
3. Leases – why? We will provide a list of the leases with support for the amounts shown in the Form 10K (gathering of all the leases is not likely to happen this week.)
4. Loan waiver – we have and will provide
5. Research reports – these are IDC reports (hopefully they can get these themselves)
6. Trademarks – big issue (will give a rep)
7. Patents – what are they going to do with this at this point (perhaps there is another way to satisfy the concern)
8. Security ownership – will provide
9. Employees – will provide as of December 31, 2006
10. Foreign currency – only have one forward contract – will provide a copy
11. Subsidiaries – see Form 10K
12. Acq & Divest – Systat (the deal is done – not sure what they want to confirm?)
13. D&O Questionnairs – will provide
14. Related transactions – will see what we can do
15. Risk factors – this is just troubling and a bit over-reaching at this point – perhaps best if we conduct a few interviews to get to the real concerns.

Again, would appreciate anything you can do to clear through these requests or help prioritize the list. Unfortunately we don't have the resources to deal with this right now. All hands are focused on getting the documents finalized. Simply not enough time left.

Many thanks,
Ray

SPSS 004292

SPPS, INC.

**2006 CONVERTIBLE DEBT OFFERING**

**SUPPLEMENTAL DUE DILIGENCE REQUEST LIST**

As of March 6, 2007

In connection with the proposed transaction, please furnish to Wilson Sonsini Goodrich & Rosati, counsel to Merrill Lynch, Pierce, Fenner & Smith Inc. ("**Merrill Lynch**"), copies of the documents requested below for SPSS, Inc. (the "**Company**").

1.      **Correspondence with SEC:** Please provide un-redacted copies of the letters dated September 1 and November 27, 2006 to the SEC regarding the Company's investigations of its stock options pricing.

2.      **Confidentiality and Invention Assignment Agreement:** In response to our request for employee non-disclosure and assignment agreements you have provided the Company's form of non-disclosure and assignment agreement. Please provide a schedule, if available, of employees that have signed such agreement or alternatively verify that the Company's internal policies dictate that all employees must sign form of non- disclosure and assignment agreement when they are hired.

3.      **Leases:** Please provide copies of leases for the domestic (excluding the Company's Chicago headquarters) and international locations disclosed in the 2006 \ 10-K where the Company has rented space or alternatively provide a schedule, if available, of leases for international locations containing lease location, annual lease amount, square footage, term and termination provisions.

4.      **Loan Waiver:** Please provide an executed copy of the waiver from Wells Fargo Foothill, Inc. of the covenants in the Loan Agreement dated March 31, 2003.

5.      **Research Reports:** Please provide a copy of the following reports published by International Data Corporation (IDC):
        a) Worldwide Business Intelligence Tools 2006-2010 Forecast
        b) Worldwide Business Intelligence Tools 2005 Vendor Shares
        c) Worldwide CRM Analytic Applications 2006-2010 Forecast
        d) Worldwide CRM Analytic Applications 2005 Vendor Shares

6.      **Trademarks:**

Please provide copies of assignments of trademark ownership of SPSS to the Company in the following jurisdictions:

USA: U.S. registration No.: 2864243 for the trademark SPSS which according to public registration is owned by Hadlai C. Hull and Norman H. Nie (as Individuals)

Benelux: Benelux registration No.: 360757 for the trademark SPSS which according to public registration is owned by SPSS, Inc., the Illinois corporation and predecessor to the Company (SPSS, Inc., the Delaware corporation).

France: French registration No.: 1601551 for the trademark SPSS which according to public registration is owned by SPSS, Inc., the Illinois corporation and predecessor to the Company (SPSS, Inc., the Delaware corporation).

SPSS 004293

U.K.: U.K. registration No.: B1070417 for the trademark SPSS which according to public registration is owned by SPSS, Inc. Please confirm that the Company (SPSS, Inc., the Delaware Corporation) owns the mark or provide a copy of the trademark assignment.

Germany: German trademark registration No.: 997862 for the trademark **VSPSS (with Design)** trademark which according to public registration is owned by SPSS, Inc. Please confirm that the Company (SPSS, Inc., the Delaware Corporation) owns the mark or provide a copy of the trademark assignment.

Spain: Spanish trademark registration No.: 1120763M9 for the trademark SPSS which according to public registration is owned by SPSS, Inc. Please confirm that the Company (SPSS, Inc., the Delaware Corporation) owns the mark or provide a copy of the trademark assignment. Please confirm that unlike all the other SPSS registrations referenced above (which all include related goods in Class 9--SPSS's technology offerings), this registration only covers goods in Class 16 (paper products), which does not cover SPSS Inc.'s core technology offerings. Please confirm that this registration set to expire on March 4, 2007 was renewed.

We note that the Company owns Community Trademark registration No.: 831115 for the trademark SPSS. Please indicate if trademark assignments were not filed in France, Germany or Spain because the Company was relying on this Community Trademark registration.

**B-** Please provide trademark registration numbers, trademark applications, and copies of any trademark assignments for all jurisdictions where the following trademarks are registered: Clementine and Predictive and all registered formatives of Predictive.

7.    **Patents:** Please provide a list of the Company's patent and patent application numbers and any assignments for patents not issued to the Company.

8.    **Security Ownership:** Please provide a copy of the Company's stock ledger as of March 13, 2006.

9.    **Employees:** Please provide a list of employees showing the breakdown of employees into the following functions and locations: domestic/international, full-time/part-time, sales, marketing and professional services/ R&D/ general and administrative.

10.   **Foreign Currency Forward Contracts:** Please provide copies of all currency hedging contracts between the Japanese Yen and the British Pound.

11.   **Subsidiaries:** Please provide a list of subsidiaries in addition to Significant Subsidiaries (as defined in S-X) that are material to the assets, intellectual property, or operations of the Company.

12.   **Acquisitions and Divestitures:** Please provide a copy of the divestiture agreement with Systat Software /Craines Software. (A copy of the agreement was provided in the data room but we would like to confirm certain statements made in the Company's disclosure documents that are inconsistent with our notes).

13.   **Director and Officer Questionnaires.** Copies of all director and officer questionnaires.

14.   **Related Tractions:** Please provide, if applicable, copies of agreements between the Company and Virtela Communications, Inc., copies of agreements between the Company and Persistent Systems, Inc.,

15.   **Risk Factors:** Please confirm that proposed risk factors are not applicable to the Company:

*If our competitors introduce new products and pricing strategies, it could decrease our product sales and market share, or could pressure us to reduce our product prices in a manner that reduces our margins.*

SPSS 004294

We may not be able to compete successfully against our competitors, and this inability could impair our capacity to sell our products. We primarily compete in three distinct markets: statistical tools, data mining tools and predictive analytic applications. Each of these markets is highly competitive, and we expect competition in each market to persist and intensify.

*We may not receive significant revenues from our current research and development efforts for several years, if at all.*

Developing software is expensive and the investment in product development often involves a long payback cycle. We have and expect to continue making significant investments in software research and development and related product opportunities. Accelerated product introductions and short product life cycles require high levels of expenditures for research and development that could adversely affect our operating results if not offset by revenue increases. We believe that we must continue to dedicate a significant amount of resources to our research and development efforts to maintain our competitive position. However, we do not expect to receive significant revenues from these investments for several years if at all.

*We might experience significant errors or security flaws in our products and services.*

Despite testing prior to their release, software products frequently contain errors or security flaws, especially when first introduced or when new versions are released. Errors in our software products could affect the ability of our products to work with other hardware or software products, could delay the development or release of new products or new versions of products and could adversely affect market acceptance of our products. If we experience errors or delays in releasing new products or new versions of products, we could lose revenues. Software product errors and security flaws in our products or services could expose us to product liability, performance and/or warranty claims as well as harm our reputation, which could impact our future sales of products and services. The detection and correction of any security flaws can be time consuming and costly.

*Privacy and security concerns, including evolving government regulation in the area of consumer data privacy, could adversely affect our business and operating results.*

The effectiveness of our software products relies on our customers' storage and use of data concerning their customers, including financial, personally identifying and other sensitive data. Our customers' collection and use of these data for consumer profiling may raise privacy and security concerns and negatively impact the demand for our products and services. We have implemented various features intended to enable our customers to better comply with privacy and security requirements, such as opt out messaging and checking, the use of anonymous identifiers for sensitive data, and restricted data access, but these security measures may not be effective against all potential privacy concerns and security threats. If a breach of customer data security were to occur, our products may be perceived as less desirable, which would negatively affect our business and operating results.

In addition, governments in some jurisdictions have enacted or are considering enacting consumer data privacy legislation, including laws and regulations applying to the solicitation, collection, processing and use of consumer data. This legislation could reduce the demand for our software products if we fail to design or enhance our products to enable our customers to comply with the privacy and security measures.

*SPSS may not maintain effective internal control over financial reporting which could have a material adverse effect on SPSS.*

In the event SPSS does not maintain effective internal control over financial reporting, the Company's financial statements could be inaccurate. If SPSS has inaccurate financial statements, it could have a material adverse effect on the value of the Company's common stock. [Disclose specific circumstances and facts relating to weaknesses in internal financial controls in previous years.]

SPSS 004295

*We will continue to incur significant increased costs as a result of operating as a public company, and our management will be required to devote substantial time to compliance with applicable regulations.*

We will continue to incur significant legal, accounting and other expenses relates to compliance with the Sarbanes Oxley Act, as well as new rules subsequently implemented by the SEC and The Nasdaq Global Market, that have imposed various new requirements on public companies, including requiring changes in corporate governance practices. Our management and other personnel will need to devote a substantial amount of time to these new compliance initiatives. Moreover, these rules and regulations will increase our legal and financial compliance costs and will make some activities more time consuming and costly. For example, we expect these new rules and regulations to make it more difficult and more expensive for us to obtain director and officer liability insurance, and we may be required to incur substantial costs to maintain the same or similar coverage. In addition, the Sarbanes Oxley Act requires, among other things, that we maintain effective internal controls for financial reporting and disclosure controls and procedures. Our compliance with Section 404 of the Sarbanes Oxley Act will require that we continue to incur substantial accounting expense and expend significant management efforts.

SPSS 004296

# EXHIBIT K

00001

1  STATE OF ILLINOIS  )
                      ) SS.
2  COUNTY OF COOK     )

3          IN THE UNITED STATES DISTRICT COURT

4          FOR THE NORTHERN DISTRICT OF ILLINOIS

5  SPSS Inc.,                    )

6                                )

7    Plaintiff/Counterdefendant,    )

8                                )

9      vs.            ) Case No. 08 C 66

10                               )

11  Norman H. Nie and C. Hadlai Hull,  ) Judge John W.

12                        ) Darrah

13   Defendants/Counterplaintiffs.  )

14                        ) Magistrate Judge

15                        ) Arlander Keys

16         The deposition of ANTHONY CIRO, called by the

17  Defendants/Counterplaintiffs for examination, taken

18  pursuant to notice and pursuant to the Federal Rules of

19  Civil Procedure for the United States District Courts

20  pertaining to the taking of depositions, taken before

21  Monica Kim, Certified Shorthand Reporter, Registered

22  Professional Reporter, and Notary Public, at One South

23  Wacker Drive, 28th Floor, Chicago, Illinois, commencing

24  at 10:03 a.m. on the 30th day of May, A.D., 2008.

**Anthony Ciro - May 30, 2008**                    **Page 1**

00213

1  financing?

2     A.  Merrill Lynch during their due diligence

3  process saw that this registration was under the name of

4  Hull and Nie.  And as part of that, we had to provide

5  them an explanation.

6     Q.  And who was it from Merrill Lynch in the due

7  diligence that discovered that the registration was in

8  the name of Hull and Nie?

9     A.  I don't recall.

10    Q.  Was it a lawyer or somebody from Merrill

11  Lynch, the company, or --

12    A.  I don't know.

13    Q.  How did you hear about it?

14    A.  Through Raymond Panza.

15    Q.  What did Mr. Panza tell you?

16    A.  Mr. Panza -- Mr. Panza informed me that they

17  had -- this point had come to their attention, and he

18  asked me to get involved in the matter.

19    Q.  When did that conversation with Mr. Panza take

20  place?

21    A.  I don't know.

22    Q.  Early in 2007?

23    A.  Around the time of the debt offering.  I don't

24  remember the exact date.

**Anthony Ciro - May 30, 2008**                    **Page 213**

00214

1    Q.  And he said that somebody from Merrill Lynch

2  had contacted him and said that the company's principal

3  mark was, in fact, owned by Nie and Hull?

4    A.  He said specifically -- I believe he said that

5  the registration -- they had noticed that the

6  registration is under Nie and Hull.

7    Q.  What did Merrill Lynch say about the

8  registration being under Nie and Hull?

9    A.  They had a concern that the principal mark of

10  the company was under -- was registered under these two

11  gentlemen's names.

12    Q.  What was their concern?

13    A.  That the company -- that the mark was not

14  registered in the same of SPSS.

15    Q.  Did Merrill Lynch explain to Mr. Panza why

16  they were concerned about that?

17    A.  I don't know.

18    Q.  Was there any writing between Merrill Lynch

19  and Mr. Panza on that subject?

20    A.  I don't know.

21    Q.  Did you ever search for such a writing?

22    A.  I did not.

23    Q.  No one asked you to look for such a writing?

24    A.  No.

**Anthony Ciro - May 30, 2008**                    **Page 214**

00215

1    Q.   When I say "such a writing," I mean an e-mail

2  or a letter or a memo from somebody at Merrill Lynch to

3  Mr. Panza raising this concern about the registration

4  being in the name of Nie and Hull.

5    A.   The discussions at the time were fluid

6  discussions because they were at our site doing due

7  diligence, so I don't know.  I don't know how it all

8  came about.

9    Q.   Did you make any notes on that subject?

10    A.   I did not make any notes.

11    Q.   Do you know if Mr. Panza did?

12    A.   I don't recall.

13    Q.   Do you know if the Merrill Lynch folks who

14  were on-site doing due diligence made any notes on that

15  subject?

16    A.   I don't know.

17    Q.   But in any event Merrill Lynch people talked

18  with Mr. Panza.  And what did Ray Panza ask you to do or

19  direct you to do?

20    A.   Mr. Panza asked me to explain the registration

21  under C. Hadlai Hull and Norman Nie.  And so what I did

22  is went in and explained that the mark is registered

23  under these two gentlemen's names and I provided them a

24  copy of the license agreement.

**Anthony Ciro - May 30, 2008**                    **Page 215**

00216

1    Q.  What is Mr. Panza's position at the company?

2    A.  He is executive vice president and CFO.

3    Q.  And he asked you to meet with one person from

4  Merrill Lynch, or two or was there a team, or what?

5    A.  There was a team of people that he asked me to

6  meet with.

7    Q.  Did you do that?

8    A.  I did.

9    Q.  When did that occur?

10   A.  I don't know approximately when.

11   Q.  Well --

12   A.  Around the time of the debt offering; I don't

13  know the specific date.

14   Q.  Okay.  Where did the meeting take place?

15   A.  At SPSS.

16   Q.  Where?

17   A.  In our boardroom.

18   Q.  Was anyone else present or who was present?

19   A.  I don't know -- I know that Mr. Panza was

20  present.  I know that there were members of Merrill

21  Lynch that were present and their law firm.  I don't

22  know who else was there.

23   Q.  There was more than one person from Merrill

24  Lynch?

00217

1    A.  I don't recall.  It was a room full of people

2  that I had not been fully introduced to.

3    Q.  Approximately how many people?

4    A.  Approximately -- approximately eight.

5    Q.  And who were the Merrill Lynch lawyers?

6    A.  I don't recall.  It was a California-based

7  firm.  I don't recall.

8    Q.  Were there any lawyers there representing

9  SPSS?

10    A.  I don't recall who else was in the room.

11    Q.  Who represented SPSS on this convertible debt

12  offering?

13    A.  Mayer, Brown.

14    Q.  Who from Mayer, Brown?

15    A.  There was a team of people at Mayer, Brown

16  that were involved.  The principal person was Dave

17  Schuette.

18    Q.  How do you spell that?

19    THE WITNESS:  Can you spell his name?

20  BY THE WITNESS:

21    A.  S C H, I believe, U T T E [sic].

22    Q.  Okay.  Who else from Mayer, Brown other than

23  Dave Schuette?

24    A.  I don't recall the full team, who the full

00218

1  team was.

2    Q.  Do you remember Dave Schuette being in the

3  room when you made your presentation to Merrill Lynch?

4    A.  No, I do not remember him being in the room.

5    Q.  Do you remember others from Mayer, Brown being

6  there?

7    A.  I don't remember.

8    Q.  Did anyone take notes that would enable us to

9  find out who was present?

10   A.  I don't -- I don't recall.

11   Q.  Do you know if Mr. Panza made any notes at

12  that meeting?

13   A.  I don't recall.

14   Q.  Do you know who the leader of the Merrill

15  Lynch due diligence team was?

16   A.  No, I do not.

17   Q.  Do you know what state the person was from?

18   A.  California; they were all from California.

19   Q.  Were they out of the San Francisco office?

20   A.  I think so.

21   Q.  Was there anyone else from SPSS in the

22  boardroom when you made your presentation to Merrill

23  Lynch on the license agreement?

24   A.  The only other person that I remember was Erin

**Anthony Ciro - May 30, 2008**                    **Page 218**

00219

1 McQuade.

2    Q.  Okay.  So you're in the boardroom -- this is

3 early 2007 -- Mr. Panza is there; Erin McQuade is there;

4 Merrill Lynch representatives doing due diligence and

5 Merrill Lynch lawyers and possibly someone from Mayer,

6 Brown were present?

7    A.  Yeah, I don't know.  I don't know that.

8    Q.  All right.  What did you say to the group?

9    A.  What I said to the group was that the mark was

10 registered under the name of -- I believe what I said to

11 the group was that the mark was registered under the

12 name of C. Hadlai Hull and Norman Nie.  They had the

13 registration.  I showed them a copy of the license

14 agreement.  And I informed them that we had never --

15 that Dr. Nie or Mr. Hull had never exercised any rights

16 under the license agreement and that the company had

17 been exercising full control of the products and the

18 marks.

19    Q.  And what else?

20    A.  That's all I believe I said.

21    Q.  Now, you say you showed the group in the

22 boardroom a copy of the license agreement.  Where did

23 you get that?

24    A.  Where did I get the copy of the license

**Anthony Ciro - May 30, 2008**                **Page 219**