UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SPSS INC., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>NORMAN H. NIE and C. HADLAI HULL, )<br>)<br>Defendants. )<br>)<br>——————————————————— )<br>)<br>NORMAN H. NIE, )<br>)<br>Counterplaintiff, )<br>)<br>v. )<br>)<br>SPSS INC., )<br>)<br>Counterdefendant. ) | No. 08 C 66<br><br>Judge John W. Darrah |

## MEMORANDUM OPINION AND ORDER

Plaintiff, SPSS Inc., ("SPSS" or "the Company"), brought suit against Defendants, Norman H. Nie and C. Hadlai Hull, seeking declaratory relief regarding Plaintiff's right to use certain trademarks, which, though registered to Defendants, had been used by Plaintiff for over thirty years. Defendants filed a counterclaim under the Lanham Act, alleging trademark infringement and seeking both injunctive and monetary relief.[1] Before the Court is Plaintiff's motion to strike Defendant Nie's jury demand on the Counterclaim.

---

[1] Although both Hull and Nie participated in the filing of the Counterclaim, the Amended Counterclaim was filed only on behalf of Nie. Thus, Nie is the only Counterplaintiff in the case.

## BACKGROUND

The following background is taken from the allegations in the Complaint and the Counterclaim. This section does not constitute findings of the Court.

SPSS is a leading worldwide provider of predictive analytics software and solutions. Defendants Nie and Hull are the founders of SPSS and the developers of the "Statistical Package for the Social Sciences" software (the "SPSS software"), the software for which SPSS is named. Nie and Hull began work on the SPSS software while at Stanford in 1968 and continued work on it after moving to the University of Chicago shortly thereafter. In 1975, Nie and Hull formed SPSS, becoming its sole shareholders and executive officers, with Nie becoming Chief Executive Officer.

In September 1976, Nie and Hull executed an agreement (the "License Agreement") with SPSS that granted SPSS the exclusive right to use the trademarks "SPSS" and "Statistical Package for the Social Sciences" (the "Trademarks"), royalty free, subject to the terms and conditions of the License Agreement. The License Agreement recognized that the Trademarks were and remained the sole property of Nie and Hull. The SPSS Board of Directors approved the agreement in September 1977. Days after executing the License Agreement in 1976, Nie and Hull applied to register the Trademarks in their names as owners with the United States Patent and Trademark Office ("USPTO"). The USPTO granted registration of the Trademarks to Nie and Hull in April 1978.

In 1993, SPSS became a publicly held company. The previous year, 1992, Nie had stepped down from his position as CEO. However, he stayed on as Chairman of the Board of Directors and was later hired as an outside consultant by the Company. In the years following

Nie's departure from the CEO position, Nie found himself increasingly at odds with the Company's management and other board members on the direction of the company. The Company terminated Nie's consultant agreement at the end of 2005.

In May 2007, the Company approached Nie and asked him to execute a trademark assignment, transferring his ownership of the Trademarks to the Company. In October 2007, Nie informed the Company that he would not agree to the proposed trademark assignment as written but would consider other offers. (Under the proposed assignment, Nie would have received only ten dollars for assigning his rights.) Around the same time, Nie, having been reminded of the existence of the License Agreement (which he had previously forgotten), began to assert what he considered to be his rights under that agreement. Specifically, Nie began requesting information regarding the Company's activities. The Company initially provided Nie with the information he requested but later balked at providing more detailed information concerning the identity of sub-licensees of the Trademarks and technical information regarding soon-to-be-announced software. Nie and the Company then briefly exchanged offers aimed at settling the dispute. However, no agreed level of compensation for Nie's rights to the Trademarks could be reached. On January 3, 2008, Nie tendered his resignation as Chairman and member of the SPSS Board of Directors. The same day, SPSS filed the instant suit.

## ANALYSIS

The question before the Court is whether Nie is entitled to a jury trial on his Counterclaim. The Seventh Amendment provides "[i]n suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved." The Supreme Court has explained that "the phrase 'suits at common law' refers to suits in which

3

legal rights are to be ascertained and determined, in contradistinction to those where equitable rights alone are recognized, and equitable remedies are administered." *Chauffeurs, Teamsters and Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 564 (1990) (quoting *Parsons v. Bedford*, 8 U.S. 433, 447 (1830) (internal quotations and modifications omitted)). Thus, Nie's right to a jury depends on whether his claims against SPSS are legal or equitable.

Nie seeks the following relief in his Counterclaim: (1) an injunction, preventing Plaintiff's use of the Trademarks; (2) the destruction of all labels, packaging, advertising, etc, bearing the Trademarks; (3) an accounting of Plaintiff's profits; (4) treble his actual damages; and (5) costs and attorney's fees. Of these remedies, the first two are clearly equitable. *See America's MoneyLine, Inc. v. Coleman*, 360 F.3d 782, 786 (7th Cir. 2004) (injunctive relief is an equitable remedy). The last claim, the request for costs and attorney's fees, does not entitle Nie to a jury trial. *Emmpresa Cubana Del Tabaco v. Culbro Corporation and General Cigar Co., Inc.*, 123 F.Supp.2d 203, 211 (S.D.N.Y. 2000) (*Emmpresa*) ("a claim for attorneys' fees and costs under the Lanham Act does not entitle a party to a trial by jury"). Thus, the only claims that might sound in law rather than equity are Nie's demand for (3) an accounting of Plaintiff's profits and (4) treble his actual damages.

SPSS argues that Nie's demand for a monetary award is purely equitable. The basis for the remedy Nie seeks, SPPS argues, is unjust enrichment, an equitable claim, rather than compensation, which is a legal remedy. Indeed, Nie has repeatedly framed his monetary claims in terms of unjust enrichment. Nie claimed in his response to Plaintiff's motion for summary judgment that he is "entitled to money damages under a theory of unjust enrichment." (Nie's

4

Resp. Mem., filed December 16, 2008, at 21.) Nie argued that he can "obtain damages to prevent the Company from being unjustly enriched for its continued unauthorized use of the SPSS trademarks and name." *Id.*

Furthermore, to the extent that Nie seeks monetary damages on a claim other than unjust enrichment, he has not set out a viable theory in support thereof. Nie was not in competition with SPSS, or even in the same line of business. Thus, he cannot argue that he suffered actual damage, in the form of lost profits from diversion of sales. Neither can Nie claim damages on a breach of contract theory since the License Agreement was royalty-free. In his response, Nie argues that he is seeking *actual damages*, as measured by a reasonable royalty rate, and an accounting of the Company's profits. Nie asserts that both of these are legal claims. However, Nie still does not advance a theory as to how he suffered actual damages. Rather, Nie's entire demand for monetary relief boils down to the theory that the Company was profiting unjustly from its unauthorized use of trademarks owned by Nie.

Other courts facing similar facts have concluded that a party claiming unjust enrichment in a trademark infringement case is not entitled to a jury trial. *See e.g. Emmpresa.*, 123 F.Supp.2d 203 (S.D.N.Y. 2000) (plaintiff, a Cuban cigar company, which was unable to directly compete with defendant in the United States due to the embargo, was not entitled to a jury trial on its trademark infringement claim seeking disgorgement of profits on a theory of unjust enrichment because the claim was equitable); *American Cyanamid Co. v. Sterling Drug, Inc.*, 649 F.Supp. 784 (D.N.J. 1986) (plaintiff seeking to recover defendant's unjust profits was not entitled to a jury trial because the claim was equitable); *Gibson Guitar Corp. v. Paul Reed Smith, LP*, 325 F.Supp.2d 841 (M.D. Tenn. 2004) (same); *Ringling Bros.-Barnum & Bailey Combined*

*Shows, Inc. v. Utah Division of Travel Development*, 955 F.Supp. 598, 605 (E.D. Va. 1997) (trademark-infringement plaintiff was not entitled to a jury trial where it had no evidence of actual damages).

In response, Nie argues that the simple fact that he seeks a money judgment is dispositive of the jury issue. As demonstrated by the above-cited cases, that is not so. Nie goes on to argue that he is entitled to actual damages as measured by a reasonable royalty rate. Nie cites several cases, supporting the position that a reasonable royalty rate is a proper measure of damages. Nie quotes the Seventh Circuit's statement that "the district court ought to begin with the one measure of actual damages that, if ascertained with reasonable certainty, could be said to reflect the actual loss of [plaintiff]-the cost of a reasonable royalty." *Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 34 F.3d 1340, 1350 (7th Cir. 1994). However, this argument presupposes that Nie suffered actual damages which need to be measured. As noted above, Nie has not demonstrated how he was damaged by the Company's use of the Trademark.

Nie also asserts that another remedy he seeks, an accounting of the Company's profits, is a legal claim, properly decided before a jury. Nie argues that an accounting of profits is a legal claim because it acts as a surrogate for damages. However, as discussed above, Nie has not developed a theory as to how he suffered actual damages. Rather, to the extent he is entitled to a monetary judgment, it is due to the Company's alleged unjust enrichment. Nie cannot grant himself the right to a jury trial simply by labeling his claim an accounting of profits. *See Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 478 (1962) ("the constitutional right to trial by jury cannot be made to depend upon the choice of words used in the pleadings").

## CONCLUSION

For the foregoing reasons, Plaintiff's motion to strike Defendant's jury demand is granted.

Dated: August 19, 2009

JOHN W. DARRAH
United States District Court Judge